IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,          )
                                 )
              Plaintiff,          )
                                 )    04 C 2907
         v.                       )
                                 )    Judge Shadur
PAUL HENDLEY,                     )
                                 )
              Defendant.          )

**PLAINTIFF'S PETITION FOR
ATTORNEYS' FEES UNDER 42 U.S.C. § 1988**

Arthur Loevy
Jon Loevy
Mark Reyes
Danielle Loevy
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

## Introduction

Alejandro Dominguez obtained an exceptional result in this litigation, in no small part due to vigorous efforts by his counsel on his behalf. From an *ex ante* perspective, the case was extremely risky and uncertain, which is why Mr. Dominguez was repeatedly turned away by other lawyers prior to retaining Loevy & Loevy. Indeed, Section 1983 wrongful conviction cases comprise a very specialized federal practice area, requiring mastery of complex constitutional issues and trial practice skills, and there are not many firms able or willing to risk the massive time and resources required to take on such undertakings. The fact that the defense was unwilling to put any meaningful settlement money on the table prior to trial only underscores the uphill nature of the battle.

Undeterred by the long odds, Plaintiff's counsel proceeded to litigate this case as aggressively as a case can be litigated, investing all of the considerable time and cash necessary to win. In the process, Mr. Dominguez was provided with representation on par with the type of service available to clients of the most distinguished large law firms (at which most of Plaintiff's counsel used to work before pursuing a civil rights practice). In light of the success achieved, Plaintiff's counsel are now entitled under applicable law to recover their reasonable lodestar for the services they provided.

## I. Legal Standard For Adjudicating Plaintiff's Fee Petition

Given the favorable jury verdict, Plaintiff's lawyers, Loevy & Loevy (hereafter "L&L"), are entitled to recover attorneys'

fees as the prevailing party under 42 U.S.C. § 1988. <u>Riverside v. Rivera</u>, 477 U.S. 561, 578 (1986). Under familiar lodestar principles, the amount of the fee award is calculated by multiplying reasonable hours times hourly rate. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

The number of hours, hourly rates, and total fees sought by Plaintiff's counsel are summarized in Plaintiff's portion of the Joint Local Rule 54.3 ("LR 54.3") Fee Statement, attached hereto as Exhibit A. The Court should award these amounts for the following reasons.[1]

## II. The Hours Spent Were Reasonable And Should Be Approved

In total, L&L seeks compensation for slightly more than 1,500 hours spent litigating this wrongful conviction case over the past three years, from the filing of the Complaint through the jury trial on the merits, and beyond. The amount of time spent is documented in Plaintiff's counsel's time sheets, attached hereto as Group Exhibit B.

As the defense has implicitly conceded through its silence, the time spent was reasonable and should be approved. Proving Mr. Dominguez' innocence was far easier than proving that he was framed by the police Defendants. Absent any direct evidence in Mr. Dominguez' favor, it took a lot of hard work on the part of Plaintiff's counsel to build a successful circumstantial case. Utilizing comprehensive discovery -- including multiple waves of

---

[1] As discussed below in Section IV, the Defendants have never offered any response, input, or objections to the Joint Fee Statement required by the Local Rules.

Interrogatories and document requests and requests to admit --
Plaintiff was able to expose the conspiracy to railroad him a
little bit at a time. This work also included dealing with,
*inter alia,* more than two dozen depositions, five total expert
witnesses (three friendly, two adverse), all of the Monell-
related discovery, voluminous document discovery, intensive pre-
trial preparation, and substantial post-trial motion briefing.

The result of all of this work was persuasive to the jury,
which ultimately credited Plaintiff's version over that of the
defense. Under those circumstances, counsel's fees should be
approved. See Garcia v. City of Chicago, No. 01 C 8945, 2003 WL
22175620 (N.D.Ill. Sept. 19, 2003) ("In the case at hand, were it
not for the skill and determination of Garcia's counsel [Loevy &
Loevy], the violations of Garcia's civil rights by the City
proven by the evidence at trial would not have been established.
Plaintiff achieved tremendous success in this litigation and
should be fully compensated. The lodestar figure is a reasonable
determination of this amount.").

Furthermore, unlike some cases involving discrete events,
the events in this litigation spanned decades, thereby increasing
the scope and time-intensity of the inquiries. As the Court saw
at trial, the parties discovered and litigated nearly every
meaningful event in Mr. Dominguez' life. Overall, the amount of
hours spent to that end over the past three years was reasonable,
particularly given the extraordinary success. See Petersen v.
Gibson, 2002 WL 31738798, *1 (N.D.Ill. Dec. 4, 2002) (Zagel, J.)

3

("Could one conclude that some of the lawyers spent too much time on one matter or another? Possibly, but I am not inclined to do so. . . The bottom line is, as Petersen says, compensation is sought 'for approximately 1,000 hours of attorneys' time over five years,' and I do not find that any of the time spent is unreasonable"), *reversed on other grounds,* Peterson v. Gibson, 372 F.3d 862 (7th Cir. 2004).[2]

## III. Plaintiff's Counsels' Hourly Rates Are Reasonable And Should Be Approved

The rates sought here are reasonable and should be approved. Plaintiff explains as follows.

### A. The Hensley Factors

In considering the reasonableness of attorney rates, the Supreme Court directs courts to look to the various Hensley factors, which include the following:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is contingent or fixed; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

---

[2]  Defendants' counsel have not shared their time sheets, but Plaintiff notes that the defense has been represented by not only Mr. Noonan's firm (Noonan, Perillo & Polezani, Ltd.), but also Ms. Knight's firm (Knight, Hoppe and Kurnick), Mr. Field's firm (Scariano, Himes and Petrarca), and Mr. Pearson's firm (Meckler Bulger & Tilson LLP), not to mention other attorneys for various insurance companies. See Cooper v. Casey, 897 F. Supp. 1136, 1139 (N.D.Ill. 1995) (Shadur, J.) ("It is worth noting once again that this dispute was not treated as a one-lawyer suit by defendants either--they took a team approach to the litigation").

4

Johnny's IceHouse, Inc. v. Amateur Hockey Ass'n of Ill., 00 C
7363, 2001 WL 893840, *4 (N.D.Ill. Aug. 7, 2001), citing Hensley,
461 U.S. 429-30 n.3. Applied here, all of the Hensley factors
support high hourly rates.

## 1. "Degree Of Success Obtained"

As the Supreme Court has made clear, by far "the most
critical factor" in determining reasonableness of the fee award
"is the degree of success obtained." Farrar v. Hobby, 506 U.S.
103, 114 (1992) (quoting Hensley, 461 U.S. at 436). By any
measure, L&L were able to obtain an extremely favorable result
for their client here. Holding Defendants accountable here
required diligent and creative legal work, and given the ultimate
result, Mr. Dominguez' degree of success is undebatable. Telpro,
Inc. v. Renello, 1994 WL 380607 (N.D.Ill. July 18, 1994) ("The
degree of the plaintiff's success in relation to his claims is
the most critical factor in determining the amount of attorney's
fees awarded").

## 2. Time/Labor And Opportunity Cost

Another of the Hensley factors is "the preclusion of
employment by the attorney due to acceptance of the case."
Plaintiff devoted more than 1,500 billable hours to this case, a
sizeable chunk by any accounting. For L&L, this commitment
obviously presented a substantial opportunity cost, and this
factor thus favors the rates sought.

5

### 3. "Experience, Reputation, And Ability"

Plaintiff's counsel respectfully submit that their credentials and accomplishments stack up favorably against lawyers at the more prestigious firms in the City. See Exhibits G through L (attorney affidavits). Had they remained at big firms, the lawyers at L&L would be commanding top-tier market rates from clients. Although L&L lawyers instead pursued careers in the civil rights field, L&L's present clients are no less entitled to premium legal services.

### 4. Degree Of Novelty/Difficulty, Skill Required, And "Undesirability Of The Case"

This was not an easy case to build or win, making it correspondingly all the less desirable. The task involved multiple comprehensive rounds of discovery; more than twenty deposition sessions; and extensive trial preparation. All of this combined to make representation of Mr. Dominguez a very risky proposition. Compare Exhibit G, Loevy Aff. ¶ 27 (citing, e.g., other cases where L&L spent hundreds of thousands of dollars of their own money and thousands of hours of time in losing efforts).

As Mr. Dominguez' Affidavit attests, he had a very difficult time attracting competent counsel. See Exhibit C. He contacted at least five lawyers without success (including Jed Stone and Cochran & Montgomery, law firms that ordinarily do this sort of work) and even Northwestern was unable to help him find counsel. Id. ¶¶ 5-8. Immediately prior to the expiration of the statute of limitations, Mr. Dominguez, persuaded his boss at the

immigration center to file a complaint to preserve his rights, and L&L was not hired until after the case was filed. As with the others, these Henlsey factors also strongly favor rates at the upper range of reasonable.

### 5. Contingent Versus Fixed Fee

The fifth and sixth Hensley factors relate to the terms of attorney retention. Unlike defense counsel who got paid win or lose, L&L faced the very real possibility of earning $0/hour. Accounting for this risk helps justify a higher hourly rate. See Spina v. Forest Preserve Dist. of Cook County, 2002 WL 1770010, *3-*4 (N.D.Ill. July 31, 2002) (approving elevated fee of $350/hour for an attorney with the same level of experience as Jon Loevy because "McFadden accepted the case on a contingency basis, and is entitled to be rewarded for assuming the risk of nonpayment"), citing Blum v. Stenson, 104 S.Ct. 1541, 1551 (1984) (this bonus induces § 1983 attorneys to take meritorious cases that might not otherwise be heard).

### 6. The Prevailing Market Rates

An attorney's reasonable hourly rate is determined based on the market rate for the attorney's services, which is the rate charged by lawyers of similar ability and experience in the community. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999).

Like most things, the market rate for attorney billing rates has gone up over time, but the last few years in particular have witnessed a considerable spike. This recent escalation is likely

7

due at least in part to the dot.com and investment banking booms, both of which increased competition for talent. The result has been heretofore-unprecedented law firm salaries and corresponding billing rates. See, e.g., Exhibit D (articles).

As the attached affidavit of Bradly Block attests, the market presently pays top-notch, experienced litigators in the range of $400 to $700/hour. See Exhibit E. For example, recent billing rates for litigators at a large firm in the City are as follows:

1964 graduate: $685/hour
1978 graduate: $575/hour
1992 graduate: $505/hour
1999 graduate: $440/hour

See Id. ¶¶ 3-4.

As the Court is aware, the purpose and intent of §1988 is to attract talented lawyers to civil rights endeavors. By promising to award the prevailing hourly rates, lawyers who could otherwise command high billing rates in commercial pursuits are encouraged to represent clients such as Mr. Dominguez. See North Carolina Alliance For Transp'n Reform, Inc. v. United States Dept. of Transp., 168 F.Supp.2d 569, 581 (M.D.N.C. 2001) (relying upon a National Law Journal survey of billing rates, indicating that partners at North Carolina's large law firms charged between $380-$425/hour in 1998).

Indeed, rates comparable to those from the private sector were recently approved by Judge Kennelly in a civil rights case

involving the First Amendment. See Entertainment Software Ass'n v. Blagojevich, 05 C 4265, 2006 WL 3694851 (N.D.Ill. Aug. 9, 2006). A year ago, Judge Kennelly approved rates at the following levels:

    1979 graduate: $585/hour
    1996 graduate: $425/hour
    2000 graduate: $340/hour
    2001 graduate: $310/hour
    2002 graduate: $275/hour
    2003 graduate: $215/hour

Id. at *2-*3.

All of the Entertainment Software attorneys have impressive credentials to be sure, and all were practicing in constitutional law, their field of expertise. Id. But, as discussed below, both of these factors are also true for Plaintiff's counsel here. Accordingly, Judge Kennelly's recognition of the upper end of market rates in a civil rights case is important information bearing on the issue. Other useful data is discussed as follows.

## B. The Laffey Matrix

The United States Attorney's Office for the District of Columbia has created what has become known as the Laffey Matrix to provide an official guideline for "reasonable" rates in fee-shifting cases. Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 347 n.3 (6th Cir. 2000) (describing Laffey Matrix as "an official statement of market-supported reasonable attorney fee rates"). According to the United States Attorney: "The matrix is

9

intended to be used in cases in which a 'fee-shifting' statute permits the prevailing party to recover 'reasonable' attorney's fees." <u>See</u> Exhibit F, Explanatory Note #1. The matrix provides the following rate guidelines:



UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF COLUMBIA
555 4TH STREET, NW
WASHINGTON, DC 20530
(202) 514-7566

SEARCH
HOME
U.S. ATTORNEY
ABOUT US
DIVISIONS
COMMUNITY PROSECUTION
PROGRAMS

**LAFFEY MATRIX 2003 - 2006**

| Experience | 03-04 | 04-05 | 05-06 |
|---|---|---|---|
| 20+ years | 380 | 390 | 405 |
| 11-19 years | 335 | 345 | 360 |
| 8-10 years | 270 | 280 | 290 |
| 4-7 years | 220 | 225 | 235 |
| 1-3 years | 180 | 185 | 195 |
| Paralegals & Law Clerks | 105 | 110 | 115 |

A full copy of the Laffey Matrix from the United States Attorney's website, together with the explanatory notes, is attached as Exhibit F.

The Laffey Matrix "is a concession by that office [the United States Attorney] of what it will deem reasonable when a fee-shifting statute applies and its opponent prevails and seeks attorney fees. That concession relieves that office from having to litigate the market rate in the hundreds of fee-shifting cases that it defends." <u>Adolph Coors Co. v. Truck Ins. Exch.</u>, 383

10

F.Supp.2d 93, 98 (D.D.C. 2005). See also Chanel, Inc. v. Doan, 2007 WL 781976, *6 (N.D.Cal. March 13, 2007) ("It is the practice of the undersigned judge to rely on official data to determine appropriate hourly rates. One reliable official source for rates that vary by experience levels is the Laffey matrix used in the District of Columbia").

Use of the Laffey Matrix to set "reasonable" rates has been approved, either expressly or implicitly, by many of this Court's colleagues in the Northern District of Illinois. See Arch v. Glendale Nissan, 2005 WL 1421140, *1 (N.D.Ill. June 7, 2005) (Pallmeyer, J.); Selph v. Bruno et al. & Assoc., LLC, 2007 WL 433103 (N.D.Ill. Feb. 2, 2007) (Andersen, J.); Delgado v. Village of Rosemont, 2006 WL 3147695 (N.D.Ill. Oct. 31, 2006) (Leinenweber, J.); Covington-McIntosh v. Mount Glenwood Mem. Gardens S., Inc., 2004 WL 2700482, *4 (N.D.Ill. Feb. 12, 2004) (Keys, J.); Embry v. Barnhart, 2003 WL 22478769, *2 (N.D.Ill.2003) (Brown, J.).

In addition to this District, the Laffey Matrix has also been approved as the baseline for reasonable rates by courts throughout the country. See, e.g., Interfaith Community Org. v. Honeywell Intern., Inc., 426 F.3d 694, 709 (3rd Cir. 2005); Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 347 n.3 (6th Cir. 2000); Chanel, Inc. v. Doan, 2007 WL 781976, *6 (N.D.Cal. March 13, 2007); H.P. v. Knickrehm, 2005 WL 2261172, *3 (E.D.Ark. Sept. 16, 2005); In re Sulzer Hip Prosthesis, Knee Prosthesis Liability Litig., 2006 WL 3803420, *1 (N.D.Ohio Dec. 26, 2006);

Ilick v. Miller, 68 F.Supp.2d 1169, 1176 (D.Nev. 1999); Jarno v.
Department of Homeland Sec., 365 F.Supp.2d 733, 741 (E.D.Va.
2005); North Carolina Alliance For Transp'n Reform, Inc. v.
United States Dept. of Transp., 168 F.Supp.2d 569, 581 (M.D.N.C.
2001), citing Cooper v. Paychex Inc., 1998 WL 637274 (4th Cir.
Aug. 31, 1998).

Courts outside of Washington D.C. typically adjust the
Laffey Matrix for what is called the "locality pay differential."
See Chanel, Inc. v. Doan, 2007 WL 781976, *6-*7 (N.D.Cal. March
13, 2007) (adopting the Laffey Matrix rates, but adjusting them
upward by 5% due to the locality pay differential between
California and D.C.); In re HPL Technologies, Inc. Securities
Litig., 366 F.Supp.2d 912, 921 (N.D.Call. 2005) (adjusting the
Laffey Matrix upward by 9% over the Laffey Matrix figures given
the pay differential for San Francisco). The locality pay
differential for Chicago is 19.70% versus 15.98% for the D.C.
area, meriting a 4% increase over the Laffey figures. Selph,
2007 WL 433103, Appendix B at *13, citing Appendixes D & E and
data located on the United States' Office of Personnel Management
webpage at http://www.opm.gov/oca/05tables/indexGS.asp.[3]

---

[3] Some courts use the "Adjusted Laffey Matrix" rather than
the U.S. Attorney's Office Laffey Matrix. The former is
calculates annual increases by adjusting the original Laffey
Matrix for inflation as measured by the Consumer Price Index,
whereas the Adjusted Laffey Matrix uses the Legal Services Index,
which is higher. Interfaith Community Org. v. Honeywell Intern.,
Inc., 426 F.3d 694, 709 (3rd Cir. 2005) (affirming use of the
higher of the two versions); Salazar v. District of Columbia, 123
F.Supp.2d 8 (D.D.C.2000) (same).

## C. Given Their Qualifications And Accomplishments, Plaintiff's Counsel's Should Be Awarded Rates At The Upper Range Of Reasonable

Given the recent surge in legal billing rates generally, coupled with the civil rates recently awarded by Judges Kennelly and Leinenweber, plus the Laffey Matrix, Plaintiff's counsel's hourly rates are reasonable and should be approved.

### 1. Jon Loevy

Plaintiff respectfully submits that Jon Loevy's legal accomplishments justify a billing rate slightly higher than his year of graduation would suggest. He has been lead trial counsel for more than a dozen successful federal civil rights trials, resulting in combined career jury verdicts exceeding $50 million. See Affidavit of Jon Loevy, Exhibit G, ¶¶ 5-19 At one point, Jon Loevy won ten civil rights trials in a row, most involving very challenging fact patterns. Id. Seven times, he has won jury verdicts in excess of $1 million. Id. In addition to trial skills, Jon Loevy is also an accomplished appellate lawyer, having won six out of the last seven cases he has argued before the Seventh Circuit. Id. All of these highlights are set forth in more detail in Jon Loevy's affidavit. Id.

Furthermore, Jon Loevy has built a very prominent and successful civil rights law firm from scratch. Only ten years removed from Jon Loevy's start as a solo practitioner operating out of his apartment, the firm now employs twelve full-time lawyers (with a thirteenth scheduled to start in the Fall after the bar exam) and a support staff of four. Id. ¶¶ 23-24. The

13

law firm of that size is very expensive to operate (id.),
particularly given the number of *pro bono* and un-economical cases
that the firm pursues, consistent with its fundamental commitment
to civil liberties.

With respect to billing rates, Jon Loevy is a 1993 graduate
of Columbia Law School, where he was a senior editor on the Law
Review and the recipient of various prizes for academic
excellence. Id. ¶ 1. If Jon Loevy still worked at Sidley &
Austin (where he spent almost two years), Brad Block's affidavit
suggests his billing rate based on year of graduation alone would
be around $495/hour. See Exhibit E, ¶ 4.

The rate sought for this litigation is $375/hour. This rate
is based on a decision in 2003 by now-Chief Judge Holderman in
the case of Garcia v. Chicago, No. 01 C 8945, 2003 WL 22175620
(N.D.Ill. Sept. 19, 2003). In that case, Jon Loevy had put in
for $295/hour, an amount Judge Holderman found (nearly four years
ago) to be much too low:

> The hourly rate of $295/hour which Jon Loevy has
> requested is a bargain for his services. Jon Loevy is
> an outstanding trial lawyer. His ability belies his
> years of experience, and he certainly should not be
> held in a lock-step position based on his law school
> graduation year with regard to his hourly rate. **He
> clearly could command an hourly market rate of $325 to
> $350 because of his courtroom ability.** Not only did
> Jon Loevy display tremendous advocacy skills during the
> trial before the jury, he handled all the matters
> involved in this litigation with great aplomb. His
> case was well-organized. The evidentiary progression
> was easy to follow. His examinations of adverse
> witnesses [], and his dealing with the sometimes
> improper tactics of his opposing counsel, were highly
> professional.
> Jon Loevy's poise, analysis, and demeanor in front

14

of the jury, as well as his rappier-like cross-
examination style, are reminiscent of the trial skills
displayed by some of the nationally recognized trial
lawyers in this community when they were the age that
Jon Loevy is now.  [Footnote]  Among those nationally
recognized trial lawyers whose skills the court is
familiar with when they were Jon Loevy's age are: Royal
B. Martin of Martin, Brown and Sullivan; Michael D.
Monico of Monico, Spevack and Pavich; Thomas R. Mulroy
of McGuire Woods; Anton J. Valukas of Jenner & Block;
and Dan K. Webb of Winston & Strawn.  Additionally, Jon
Loevy's overall performance ranks among the finest
displays of courtroom work by a plaintiff's lead trial
counsel that this court has presided over in several
years.  Because the court will cap Jon Loevy's hourly
rate at the amount he requested, the court finds
$295/hour to be reasonable.

Id. at *2-*3.

Judge Holderman's statement that Jon Loevy could "clearly"
earn $350/hour in 2003 dollars is the basis for the $375/hour
rate sought here.  Using an inflation calculator, $350 in 2003
equates to $387 in 2007.[4]

In further support, Plaintiff notes that Judge Leinenweber
recently awarded $375/hour to a civil rights lawyer of very
comparable experience, David Cerda.  See Delgado v. Village of
Rosemont, No. 03 C 7050, 2006 WL 3147695 (N.D.Ill. Oct. 31,
2006).  A copy of Judge Leinenweber's decision is attached as
Exhibit M, and a copy of Mr. Cerda's affidavit (showing that he
is a 1990 graduate without the same track record for success) is
attached as Exhibit N.  If civil rights attorney Cerda recently
warranted $375/hour, there is certainly no persuasive reason why
Jon Loevy should earn less.

_____

[4] The consumer price index (CPI) adjustment was made with
the federal government's website calculator, available at:
http://data.bls.gov/cgi-bin/cpicalc.pl.

15

Likewise, in <u>Spina v. Forest Preserve Dist. of Cook County</u>, No. 98 C 1393, 2002 WL 1770010, *3-*6 (N.D.Ill. July 31, 2002) Judge Keys approved $350/hour for an civil rights attorney with the same year of graduation as Jon Loevy, and that was nearly five years ago. In present dollars, that equates to a fee award of $395/hour.[5] Similarly, Plaintiff's counsel litigated against private counsel in the discrimination case of <u>Gordon v. United Airlines</u>, No. 98 C 1378, in which defense counsel with the same graduation year as Jon Loevy charged $345/hour for her services at trial in 2002. <u>See</u> Exhibit G, Loevy Aff. ¶ 18. The lead defense trial counsel in that case (with far less trial experience than any of the L&L lawyers) billed at $425/hour.

Finally, in <u>Johnny's IceHouse, Inc. v. Amateur Hockey Ass'n of Ill.</u>, 00 C 7363, 2001 WL 893840, *4-*5 (N.D.Ill. Aug. 7, 2001), this Court recognized that lead counsel in certain civil rights cases ranged from $300 to $325. <u>Id.</u> Adjusted for the passage of six years, this translates almost exactly to the $375 sought here. <u>See</u> <u>also</u> <u>Moffett v. American Coal Co.</u>, 2007 WL 114011 (S.D.Ill. Jan. 9, 2007) (awarding $380/hour in employment case litigated in Southern Illinois for a lawyer six years more senior, but with much less trial experience, than lead counsel in our case); <u>Cf.</u> <u>In re Subpoenas Issued to Danze, Inc.</u>, 2006 WL 211942, *2 (N.D.Ill. Jan. 18, 2006) ($350/hour for attorney in

---

[5]    The total attorneys' fees approved in <u>Spina</u> was $854,779, nearly double the amount sought here. <u>Id.</u> Also more than 50% higher than Plaintiff's petition here was the lodestar awarded in the wrongful conviction case of <u>Newsome v. McCabe</u>, 319 F.3d 301, 303 (7th Cir. 2003) ($850,000 in attorneys' fees and costs).

16

commercial case with less years of experience than Jon Loevy).

In sum, the rate sought here by Jon Loevy is appropriate.
People Who Care v. Rockford Bd. of Ed., 90 F.3d 1307, 1313 (7th
Cir. 1996) (after Plaintiff establishes the relevant "rates
similarly experienced attorneys in the community charge paying
clients for similar work," the burden shifts back to the
Defendant to show a "good reason why a lower rate is essential").
This is particularly so in light of the new data about the
marketplace suggesting that litigators in the private sector with
Jon Loevy's experience are now billing around $500/hour, and the
reality that lead counsel in civil rights cases receive right
around the same amount sought here. Plaintiff thus respectfully
asks this Court to adopt Judge Holderman's conclusion that
$375/hour (in present dollars) is "clearly" an appropriate rate
for Jon Loevy's time.

## 2. **Arthur Loevy**

Arthur Loevy has been a member in good standing of the
Illinois bar continuously for four and a half decades since
graduating from University of Michigan Law School in 1963. See
Exhibit H, Arthur Loevy Aff. ¶¶ 1-2. Arthur Loevy practiced
labor law until 1970, at which time he became an elected officer
of a trade union, the Amalgamated Clothing and Textile Workers
Union ("ACTWU"). Id. ¶ 3.[6]

---

[6] Arthur Loevy proceeded to serve in various elected
capacities for trade unions, including Executive V.P. of ACTWU,
Secretary-Treasurer of ACTWU, and, most recently International
Secretary-Treasurer of Union of Needle-Trades Industrial and
Textile Employees ("U.N.I.T.E."). Id. ¶¶ 3-6. He has also

17

For the past ten years, Arthur Loevy has practiced law full time with Loevy & Loevy. Over that time, he has appeared in more than 230 federal civil rights cases. See Exhibit O. Though rarely serving as lead counsel at trial, he has often been trial counsel, participating in multiple trials where seven-figure jury verdicts were obtained. See Exhibit H, ¶ 5. During discovery, Arthur Loevy frequently takes the depositions of important witnesses in L&L cases, as he did here with Lisa Kraus (the alleged rape victim) and Paul Hendley, the main Defendant.[7]

Arthur Loevy is the most senior lawyer at L&L, and arguably the managing partner.[8] His accomplishments over his forty year career easily justify the $450/hour rate sought here. Indeed, the requested rate is less than two-thirds of the $685/hour rate

---

served as a member of the Executive Committee of the Amalgamated Bank of New York, as well as President and Chief Executive Officer of various Taft-Hartley insurance and trust funds. Id. He has also received numerous awards in the course of his career, among them the 1986 Man of the Year Award of the Illinois Council of Latin American Advancement, the 1991 and 1992 Man of the Year Award of the A. Philip Randolph Institute of Chicago and Detroit respectively, and the 1993 Norman Thomas Award of the Debs Day Foundation. Arthur Loevy was also the 1991 recipient of Histadrut's "National Humanitarian Award", and he received the City of Hope's "Spirit of Life" award in 1990.

[7] Our firm is quite proud of Judge Holderman's assessment: "This court has no doubt that some of the brilliance shown by Jon Loevy during the trial was due in no small measure to Arthur Loevy's pretrial analysis, planning, strategy, and discovery prowess, as well as the sage wisdom imparted by Arthur Loevy to Jon Loevy, his son." Garcia v. City of Chicago, No. 01 C 8945, 2003 WL 22175620, *2 (N.D.Ill. Sept. 19, 2003).

[8] We use the term "arguably" because our firm does not really use titles/hierarchies of that nature; Arthur Loevy shares management responsibilities over the fifteen employee operation with Jon Loevy and Mike Kanovitz.

18

commanded by big firm litigators who graduated after he did, and
also well below the amounts awarded by Judge Kennelly in
Entertainment Software for comparably experienced attorneys. The
Court should approve the rate.

### 3. Mike Kanovitz

Mike Kanovitz seeks compensation for the 25 hours he spent
on this case at a rate of $345/hour. This rate is substantially
below both the $475/hour (approximate) he would earn under the
private sector range set forth above, as well as the $440/hour
(approximate) he would earn under Judge Kennelly's Entertainment
Software scale. It is also less than what is called for under
the Laffey Matrix.

Mike Kanovitz's legal career is summarized in his Affidavit,
attached as Exhibit I. His accomplishments over 13 years of
practicing law are myriad and impressive. They certainly warrant
the Laffey Matrix rate, if not more. The $345/hour rate sought
is justified, and should be approved. See also Krumwiede v.
Brighton Assoc., LLC, 05 C 3003, 2006 WL 2349985, *4 (N.D.Ill.
Aug. 9, 2006) (hourly rate of attorney Ostfeld, a 1998 law school
graduate, went from $330/hour in 2005 to $375/hour in 2006).[9]

### 4. Mark Reyes

Mark Reyes is two years senior to Mike Kanovitz (they are
fellow Cornell Law School graduates), and his legal career is
likewise full of highlights. See Affidavit of Mark Reyes,

---

[9] As is the case throughout this brief, Plaintiff's counsel
has gone to the lawyer's website to adduce year of graduation.

attached as Exhibit J. Over the course of this litigation, this Court had a front-row seat to witness Mr. Reyes' superior professionalism and outstanding work product. His 481 hours spent on discovery and trial were a large part of an exceptional win. His performance and his accomplishments warrant his requested rate of $345/hour, which -- as with Mr. Kanovitz -- is less than what would be dictated by the Laffey Matrix, the private scale, and the Entertainment Software decision. It should be granted.

## 5. Danielle Loevy

Danielle Loevy's role in the case was largely limited to serving as trial counsel -- a familiar arrangement for L&L, as her affidavit confirms. See Exhibit K, Affidavit of Danielle Loevy. Not only were her contributions an invaluable part of the team success achieved, but the defense sent three lawyers to trial, and Plaintiff was certainly entitled to the same advantage. Cf. Gary v. Sheahan, 2001 WL 1543514, *2 (N.D.Ill. Nov. 30, 2001) ("the defendant often had several lawyers present on his behalf and the plaintiff class was entitled to same advantage").

At trial, Danielle did the examination of Mr. Dominguez' wife, an important damage witness, and was integrally involved in all of the trial strategy decisions (in the absence of Arthur Loevy, the lawyer who also plays that role for L&L). The importance of this type of trial collaboration in a difficult and significant case has been recognized by numerous courts. See

20

Gregory v. Weigler, 873 F.Supp. 1189, 1195-96 (C.D.Ill. 1995)
("Although Schlosser did not vocally participate at trial, it
appeared to the Court that his attendance was necessary to
familiarize, instruct, and generally assist Metnick regarding
pertinent issues at trial. Thus, to characterize Schlosser's
preparation for and attendance of the trial as duplicative and
unnecessary is simply inaccurate."), citing Kurowski v.
Krajewski, 848 F.2d 767, 776 (7th Cir. 1988) ("The use of two (or
more) lawyers. . . may well reduce the total expenditures by
taking advantage of the division of labor. . . The scholar did
the research, the litigator the litigating").

Danielle Loevy is a 1995 graduate (with honors) from the
Chicago Kent College of Law, and her accomplishments and
qualifications are set forth in her affidavit. See Exhibit K.
Among others, she has served as trial counsel for numerous civil
rights victories totalling tens of millions of dollars. Based on
the foregoing, Danielle seeks $325/hour for the roughly 100 hours
she spent at trial. This is far less than what is called for
under the Laffey Matrix, and should be approved.

### 6. Jon Rosenblatt

Jon Rosenblatt is a 1999 graduate of the University of
Michigan Law School, after which he joined McDermott, Will &
Emery, as a member of the litigation department. See Exhibit L,
Rosenblatt Affidavit. Had he remained at McDermott, his present
billing rate would be $440/hour, and Judge Kennelly awarded
$340/hour to an attorney with less experience. That said, Jon

21

Rosenblatt's role here was limited to 20 hours of back-up support, and he seeks the Laffey Matrix figure of $290/hour. The rate is reasonable and should be approved.

### 7. Paralegals

The affidavits of L&L paralegals Andy Thayer, Jessica Sauvenagh, Kathleen Rubenstein, and Ellie Cotter are attached as Group Exhibit Q, and their time sheets are included as part of Group Exhibit A. These paralegal hours were reasonable because they reduced the amount of attorney time needed, and the hourly rate of $105/hour is more than consistent with the market for such services. See Delgado, 2006 WL 3147695, at *5 (rejecting defense argument for $90/hour as "extremely low" and instead awarding paralegal $125/hour); Curtean v. Federal Mortgage, Inc., 2005 WL 1661992, *6 (N.D.Ill. July 13, 2005) (approving $120/hour for paralegal time); Entertainment Software, 2006 WL 3694851, at *6 ($100-$110/hour fair rate for paralegals).[10]

## IV. The Defendant City of Waukegan Has Failed To Object To Any Of The Foregoing

As set forth in the set of correspondence attached as Group Exhibit P, Plaintiff's counsel made numerous attempts to solicit the City of Waukegan's participation in the Joint Fee Statement

---

[10]   Prior to filing this fee Petition, in an attempt to resolve the fee issues without the need for more litigation, Plaintiff's counsel served lower proposed rates upon defense counsel for attorneys and paralegals, compromise rates which were less than the fair market rates sought here.  As explained below, the defense declined to engage in any meet and confer; having been unable to reach any settlement on the fee issues, Plaintiff's counsel have elected to seek their full rates in this Petition.

required by the Local Rules. Despite those opportunities, the defense failed to lodge any objections or disclose any of their own fee-related materials. The failure to participate in the process of lodging specific objections justifies granting Plaintiff's fee petition in and of itself. See Hardwick v. Airway Freight Sys., Inc., 2000 WL 263687, *4 (N.D.Ill. Feb. 28, 2000) ("Plaintiff's counsel, as required by Local Rule 54.3(d), submitted to Defendant's counsel a detailed billing of the hours worked, the materials in support of the hourly rate claimed for this work, and all other evidence that Plaintiff's intended to utilize in support of this petition. Defendant did not respond to plaintiffs' submission and therefore has not objected to any hours claimed by the plaintiffs nor the hourly rates sought").

Indeed, it is well-established that the Local Rules are not mere formalities. As this Court has observed, the "[Northern District] has established a carefully structured procedure in its LR 54.3 that serves to implement Rule 54(d) in addressing fee awards stemming from the entry of judgment." Johnny's Ice House, Inc. v. Amateur Hockey Ass'n of Ill., 2001 WL 893840, *5-*7 (N.D.Ill. Aug. 7, 2001). "Statements and designations required by local rules provide 'road maps' without which the court should not have to proceed." Bradley v. Work, 154 F.3d 704, 707-08 (7th Cir. 1998). Thus, the Seventh Circuit has consistently upheld strict application of the requirement of Statements under the Local Rules, such as the one governing Statements relating to summary judgment. See Parra v. Trustees of Univ. of Ill., 2001

23

WL 114721 (7th Cir. 2001) ("this circuit has consistently upheld the strict application of Local Rule 56.1 and other similar rules"); see also Sattar v. Motorola, 138 F.3d 1164, 1171-72 (7th Cir. 1998) (affirming denial of motion to compel for counsel's failure to submit statement required by Local Rule governing discovery motions).[11]

Thus, if a party can lose a discovery motion for no reason other than failure to comply with the Local Rules, and a party can even lose a summary judgment motion for no reason other than failure to comply with the Local Rules, it certainly stands to reason that a party can lose a fee motion for failure to comply with the Local Rules. See H. K. Mallak, Inc. v. Fairfield FMC Corp., 209 F.3d 960, 963 (7th Cir. 2000) ("We have repeatedly held that district courts are entitled to insist on compliance with local rules" which are designed to make the process of resolving motions "operate more smoothly, and there is nothing in this case that warrants an exception to that principle"). Plaintiff's Motion should be granted in full on this ground alone. Mitchell v. Allied Interst., Inc., 1999 WL 1100961, *1 (N.D.Ill. Dec. 2, 1999) (objections to plaintiff's fee request "would be barred because of the defendants' noncompliance with Local Rule 47 [predecessor to 54.3(d)])").

_____

[11]  Summary judgment provides the best analogy because the Court requires the parties to distill the disputed issues by means of exchanging LR 56.1 Statements. Under well-established precedent, an entire motion can rise or fall based on a party's failure to respond to the opponent's Local Rule 56.1 Statement. E.g., Jupiter Alum. Corp. v. Home Ins., 225 F.3d 868, 871 (7th Cir. 2000).

24

## Conclusion

The degree of success achieved for the client is widely-recognized as the most important of the Hensley factors, and that factor strongly supports Plaintiff's fee petition. Also instructive here is the undesirability of the case, evidenced by Mr. Dominguez' great difficulty in attracting competent counsel. Indeed, in pursuing this case vigorously on behalf of their client, Plaintiff's counsel took a very real risk that a substantial amount of attorney time might have gone completely uncompensated. There can be no serious dispute that this was not an easy case to win, and had the jury gone the other way, counsel would have received literally nothing in exchange for three years of labor, and no reimbursement for nearly $65,000 in out-of-pocket expenses paid by counsel's firm.

There is a flip-side to the extensive risk associated with representing clients like Mr. Dominguez: when their clients are fortunate enough to prevail, counsel are entitled under the law to the reasonable lodestar. This is such a case. The hours counsel expended are proportionate to the results achieved, and the rates are appropriate, particularly given the recent surge in attorneys' billing rates. For all of these reasons, Plaintiff respectfully requests that the Court approve the lodestar sought in the Plaintiff's fee petition.

RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900