IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| S. ALEJANDRO DOMINGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 2907 |
| | ) | |
| PAUL HENDLEY and | ) | JUDGE SHADUR |
| CITY OF WAUKEGAN | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ATTORNEYS FEES

| Lawyer | Hours | Rate | Totals |
|---|---|---|---|
| Jon Loevy | 648.5 | $375 | $243,187.50 |
| Arthur Loevy | 85.25 | $450 | $38,362.50 |
| Mark Reyes | 481.5 | $345 | $166,117.50 |
| Michael Kanovitz | 25.25 | $345 | $8,711.25 |
| Danielle Loevy | 117 | $325 | $38,025.00 |
| Jon Rosenblatt | 20.5 | $290 | $5,945.00 |
| Kathleen R. | 26.5 | $105 | $2,782.50 |
| Andy Thayer | 27.75 | $105 | $2,913.75 |
| Jessica S. | 40.5 | $105 | $4,252.50 |
| Ellie Cotter | 68.9 | $105 | $7,234.50 |

**TOTAL: $517,532.00**



EXHIBIT
A

EXHIBIT

tabbies

B

Jon Loevy Hours

| Date | Description | Hours |
|---|---|---|
| 3/26/04 | pc w/ J. Raley from Northwestern re: new case; disc. w/ AL & MK | .75 |
| 3/29/04 | review Clemency petition & disc. w/ AL review court appellate decision; review all press re: AD | 3.0 |
| 4/16/04 | meeting w/ Dominguez & his father w/ AL re: new case | 2.25 |
| 4/22/04 | pc w/ Jane Raley re: dominguez & retention and statute of limitation issue; pc to AD re: retention | .25 |
| 4/23/04 | draft memo re: nonretention and statute of limitation; pc w/ AD re: same; pc to ARDC re: obligation to file complaint | 1.0 |
| 7/14/04 | conf. w/ Dominguez & Dominguez father re: retention & coming into case; conf. w/ AL & MLR | 1.0 |
| 7/15/04 | conf. w/ MR re: status & plan for moving frward | .5 |
| 7/21/04 | pc to Dominguez' prior lawyer re: case review docket re: progress of case to date; review Complaint and other filings | .75 |
| 7/29/04 | review all police reports, trial transcripts & entire Northwestern file; memo re: case notes review state court proceedings & record | 6.5 |
| 7/30/04 | continue review of record; appellate briefs state court records; | 2.75 |
| 8/1/04 | cont. review file & trial transcripts re: case strategy; review Ruaysamran memo to Raley; | 4.0 |
| 8/2/04 | review draft of amended compl.; edits & revise disc & research false arrest count possible; disc. w/ AL & MLR re: whether Kraus & McKandle are defs, malicous pros. time bar problem | 4.5 |
| 8/3/04 | review discovery requests & edits w/ MLR | .75 |
| 8/4/04 | conf. w/ AL & MLR re: witnesses to find & depose; confer re: Plaintiff's RUle 26 disc.; review draft | 1.25 |
| 8/6/04 | review discovery for Defendants & Plaintiff's Rule 26(a) disclosures | .5 |

| Date | Description | Hours |
|---|---|---|
| 8/17/04 | meeting w/ co-counsel re: cobb, marquez, Kraus and security guard, whose a def. and whose out; disc. motion to dismiss w/ MLR | 1.5 |
| 8/18/04 | review mark's motion to add/drop; disc. def's motion to dismiss w/ co-c | .75 |
| 8/26/04 | conference w/ co-c re mort searchs & dep. schdlng | .5 |
| 9/3/04 | review def. answer & aff. defenses; disc. same; review SAO file re: subpoena docs; review Def. responses to interrogs | 1.5 |
| 9/9/04 | conf. w/ MLR re: john metts finding kraus & budget for same | .25 |
| 10/1/04 | conf. re: qualified immunity & today's court status; review Defendants' discovery responses | 1.0 |
| 11/1/04 | Kraus conf. re: how to approach (w/ co-counsel) | .5 |
| 11/17/04 | conf. w/ HJ re: Danley investigator expenses for Kraus | .25 |
| 12/16/04 | conf. MLR re: court status and Progress of case; dep. dates | .25 |
| 2/1/05 | pc to Dr. Gary Wells re: seeking expert | .25 |
| 2/17/05 | conf/ w/ Co-counsel re: state's attorney file and whehter to seek; same for Navy docs; conf. w/ MLR on retention Dr. Wells and amount of retainer/ scope of expert report | 1.0 |
| 3/11/05 | review Hipa order (Protective Order); followup w/ MLR re: missing page of Victim Impact | .5 |
| 3/12/05 | review complete Victim Impact fax | .25 |
| 3/14/05 | review SAO response to doc req. & objections | .25 |
| 3/28/05 | motion re: subpoena docs from Navy | 1.5 |
| 3/29/05 | conf. w/ AL & MK re: insurance of Waukegan and how to protect; | .5 |
| 4/13/05 | confer & edits re: Motion to Compel; same w/ discovery for Defendants. | .75 |
| 4/15/05 | review file from US Navy re: Kraus "Rape" | 1.25 |
| 4/19/05 | conf. w/ AL & MLR re: approach Hendley Dep. | .5 |
| 4/21/05 | review response to motion to compel by Lake County; pc w/ ML re: Hendley dep. | .7 |

| | | |
|---|---|---|
| 4/27/05 | privilege issue w/ MLR re: Lake County | .25 |
| 4/29/05 | public defender subpoena issues w/ Keith Grant letter re: receving files; search Doug Zeit, attorney | .5 |
| 5/3/05 | draft assist w/ privilege memo; review new insurance policies; disc. (flagged sections) w/ MLR | 2.0 |
| 5/10/05 | assist w/ Dep. Prep for client | 1.0 |
| 5/11/05 | disc. court status w/ co-counsel re: motion to compel | .25 |
| 5/17/05 | review SAO docs + Noonan tape from Lisa Kraus; disc. w/ AL & MLR, incl. approach Kraus | 2.0 |
| 5/22/05 | review MLR re: letter re: missing photos and handling the Lake county docs; discuss same | .25 |
| 6/1/05 | meeting w/ AL re: 2-page SAO smoking gun doc and how to proceed; review Castellano ltr. re: same | .5 |
| 6/2/05 | review Mark letter re: Catellano doc | .25 |
| 6/13/05 | review Castellano ltr re: Archbold file on Kraus; discuss provision of it to Plaintiff | .5 |
| 6/20/05 | disc. HIPA order w/ MLR | .25 |
| 6/27/05 | research re: suggstion of death by dead defs. | 1.75 |
| 7/5/05 | conf. w/ MLR re: Smith dep; review phone message records and other exhibits | .5 |
| 7/31/05 | review def. response to discovery; review Jed Stone file | 3.5 |
| 8/22/05 | review discovery responses re: Kraus angle | .25 |
| 9/23/05 | meeting w/ AL & ML re: prep for Kraus Dep. | .5 |
| 9/6/05 | conference w/ co-counsel re: status of progress of case and Kraus strategy & discovery; motion to compel deps; review same | 1.25 |
| 9/8/05 | reivew Noonan ltr re: deps | .25 |
| 9/22/05 | kraus meeting w/ AL & MLR re: stragegy to approach; debrief Moran dep. w/ AL [present] | .75 |
| 11/30/05 | disc. w/ AL re: trial date; review motion for same; disc. w/ MLR re: who to disclose as wits | .5 |

| 12/8/05 | conf/ w/ team re: trial date & FPTO schdule and court appear. | .25 |
| 12/14/05 | review MRL letter re: noonan's wits & trial; conf. w/ Mark re: policies and practices re: witnesses (written) | .25 |
| 12/15/05 | conf. w/ Gary Wells, Phd re: expert report for eyewitness ID; discuss report | 1.5 |
| 1/17/06 | conf. w/ MLR re: Kupers report; reviewed draft and comments; review psych lit. referencd by Dr. K; | 4.5 |
| 2/1/06 | review Draft FPTO; assist w/ fixing issues & trying to finalize exhibits and wits; | 6.0 |
| 2/2/06 | review latest Kupers report | 1.0 |
| 2/3/06 | meeting w/ MLR re: finalizing FPTO wits & exh. disclose wits Carter, Ruiz, Platt, etc.; review Def. additions to agreed statemnt of facts; | 1.25 |
| 2/7/06 | review all deps re: FPTO - every witness | 9.5 |
| 2/8/06 | conf w/ co-counsel re: FPTO wits & exhibs add more wits based on record review | 1.5 |
| 2/9/06 | review deps from the record re: finalizing FPTO and motions in limine; discuss addendum for Dunning Rule 26 report | 8.5 |
| 2/14/05 | Vollen C.V. and disc. re: retention; new draft of FPTO reviewed | 1.75 |
| 11/1/05 | prep w/ AL re: short Sutterland dep. | .25 |
| 11/7/05 | disc. brady issue w/ MLR & edit new discovery requests re: same | .5 |
| 12/7/05 | review Defendants' Response to discovery | .25 |
| 2/4/06 | conf. w/ MLR re: Starks issue & new discvoery | .25 |
| 2/14/06 | go through all deps and exhibits for inclusion on FPTO | 6.5 |
| 2/15/06 | revisions on FPTO re: exhibits; review all exhibs in file, incld. defense; review Def. draft for FTPO; research defense expert Smith | 8.0 |
| 2/16/06 | final edits/revisions re: FPTO; | 8.0 |

| | | |
|---|---|---|
| 2/17/06 | FPTConf. w/ court (prep and attend) | 2.5 |
| 3/2/06 | follow up about crime lab docs | .25 |
| 3/3/06 | try to locate Yong; note from dominguez | .25 |
| 3/9/06 | pinzone in law issues w/ Mark plus adding exhs. #26 & 27; review draft of Interrog. responses by client & disc. w/ Mark | .75 |
| 3/14/06 | research re: motions in lim.; review Noonan letter re: exchange MiL ideas | 3.0 |
| 3/16/06 | draft motions in limine; revise Mark's MiL's | |
| 3/18/06 | review defense's MiL's by noonan ltr; discuss; review motion to limit to no damages; research and discs. w/ Mike Kanovitz | 4.5 |
| 3/21/06 | review court's opinion re: MiL, research/disc. re: same | 1.0 |
| 3/27/06 | disc. Evaluation of Dominguez w/ co-counsel re: Plaintiff's position & scope; research Cavanagh quick search; review MLR letters to Noonan; disc production of Kupers docs sought by defens. locate Kupers report w/ Jess | .75 |
| 3/28/06 | review defense MiL response; disc. available trial dates w/ co-counsel re: Noonans dates; investigate Wasilew & defense right to more testing; disc. w/ MLR whehter Kupers agrees | 1.5 |
| 3/31/06 | responses to motions in limine -- research & draft; review North Chicago docs; edits to Jess letter re: trial availablity; sex offender issue docs; | 7.5 |
| 4/10/06 | conf/ w. MLR re: data from testing for our experts; review Vollens expert report | 3.25 |
| 4/21/06 | review all corrsepondence from week re: doming. disc. status w/ MLR; conf. w/ AL & MLR re: rebuttal to mental health exam and conditions for def. experts; whehter to agree to 3rd i/v | 2.0 |
| 4/24/06 | conf. w/ MLR re: treaters for trial; review Noonan's SAO docs; discuss treaters w/ MLR | 1.25 |
| 5/3/06 | disc. crime lab issue w/ MLR & Subp. for missing ev. | .25 |

| Date | Description | Hours |
|---|---|---|
| 5/5/06 | internet research scope of testing issue re: 2nd eval. of Plaintiff; research james glennon hired by defense (his lawsuit and one vs. him); review Health Reach docs; inkblot request by Mike Noonan drs. | 2.75 |
| 5/11/06 | conf. w/ MLR re: court and probation docs | .25 |
| 5/17/06 | review court memorandum order re: MiL's; conf. w/ client | .5 |
| 5/22/06 | review Cavanaugh report and disc. w/ AL | 1.75 |
| 5/25/06 | conf/ w. co-counsel re: Kupers needs data, probation records, etc. | .5 |
| 6/7/06 | meeting re: moving trial date; MLR to draft motion; review Kupers rebuttal to Cavanaugh | 1.0 |
| 6/12/06 | pc w/ SMP funding re: loan for client; discuss loan issue w/ AL and MLR to disc. w/ client; review Kupers report | 2.5 |
| 6/16/06 | discs. expert Dr. schedling issue w/ MLR | .25 |
| 6/15/06 | pc w/ Brzezak re: expert report; draft memo re: issues for discussion w/ Brz. points for report | 2.0 |
| 6/29/06 | review Rule 26 report of R.B.; disc. w/ co-counsel | 1.25 |
| 6/30/06 | review funding contract for Dominguez re: judgment purchase; disc. w/ AD | 1.0 |
| 8/14/06 and | review Glennon report & conf. w/ Co-counsel disc. same w/ Brzezak; review Brzezak report suggestions for edits; review Kupers final report re: rebutting Cav; review file of Noonan's letters from July; check w/ MLR re: expert issues; review Cavanaugh notes; whole day for Dominguez issues | 7.5 |
| 9/6/06 | annotate entire criminal trial w/ memo | 6.0 |
| 9/7/06 | begin outlines for all dr. experts; discuss w/ client; start draft outlines Wasilew, Cavanuagh, Vollen, Kupers; rev. all files re: Plaintiff incl. psych records for pitfalls; disc. w/ MLR & AL re: dep. prep for Plaintiff doctors | 9.0 |
| 9/8/06 | Kraus meeting w/ AL & MLR; disc. kupers report from other cases; review Client Dep. re: draft dominguez exam | 3.5 |

| | | |
|---|---|---|
| 9/11/06 | discuss Chancy mem & policy/practice claims; strategize re: how to win monell claim; Hendly exam outline | 8.0 |
| 9/12/06 | review Noonan's Moran designations for Trial reading; counter-designate; conf. w/ Richard Brzezak re: deposition; waukegan cop exams, incl. Biang, Andersen, Setterland, Moore | 8.5 |
| 9/13/06 | trial prep, conf re: noonan's control of Kraus appear; meet w/ Dominguez to attain background material; Oriatti exam; Elliot outline; Cobb exam, Stevenson from Navy; | 6.5 |
| 9/14/06 | reivew Novoselksy's motion re: statute of limitations & research re: same; conf. w/ MLR re: Kraus letter to Noonan; | 2.5 |
| 9/15/06 | review probation docs; review personnel files Hendley & moran; review all def. discovery responses for use at trial & select for trial; confer w/ MLR re: Kupers dep prep; | 10.0 |
| 9/16/06 | read deps on plane | 2.0 |
| 9/17/06 | read deps on plane | .5 |
| 9/18/06 | review Ruth Dunning Rule 26 report; notes re: assist exam; discuss Pinzone issue w/ MLR & decision re: flight in; Glennon exam; more Hendley exam; meet w/ Dominguez | 8.5 |
| 9/19/06 | conf. w/ Dominguez re: conclude draft exam; practice; assist MLR w/ adding new exhibt to FPTO, including cover page to Indictmnet and current addresses for Kraus | 8.5 |
| 9/20/06 | court re: motion to dismiss; review Cotter letter to Navy re: Elliot progress & disc. strategy to approach him; conf. w/ MLR re: confirming defense agreement to bring wits to trial; continue working w/ client re: exam | 8.5 |
| 9/21/06 | review defense new motions in limine + motion to reconsider; meet at Northwestern w/ Jane Raley for trial prep.; review MLR ltr re: Stevenson Navy issue; review motion re: same | 3.25 |

9/22/06    meet ALejandro re: trial prep.; review def.        10.0
           motion for hearing and Q.Immunity; review
           MLR's motion to compel stevenson; supplement
           to Brzezak re: Hendley SAO memo; pc w/ R.
           Brzekack re: same; draft more examinations --
           Raley, father, etc.; continue Hendly cx outline

9/23/06    trial prep re: continue outline exams             2.0

9/24/06    review confidential SAO file supplement;          8.5
           meet w/ Ellie & Jess re: finding McCandless
           Sharp, & others; pc to Dominguez re: contact
           w/ Ruiz, Lagunas, Mendoza; more trial exams:
           Archbold & pinzone; pc w/ Dominguez re:
           trial practice

9/25/06    review Noonan motion for statute of limitation    9.0
           and Moran motion; research re: same; disc.
           motion to amend FPTO w/ MN; rev. MLR motion
           to compel Tensch & amend FPTO; conf. re: adding
           Chief Hawri to close Monell loop; draft exams
           for attorneys: Perry S., Robert Carter, J.Curn.;

9/26/06    meet Dominguez at 10:00 for trial prep & exam;    9.0
           review defnse motion to dismiss Moran & Aff.
           defense; jury instruction research and drafting;
           pc w/ J.Kornak re: hendley; continue to draft
           Hendley exam & practice same; email to/from
           Pinzone

9/27/06    Idalia Dominguez meeting at noon; meet w/ Doming. 11.0
           family, including father, mother, sister; disc.
           damages w/ co-counsel; draft proposed voir dire;
           pardon research; Doming exam prep & draft

9/28/06    practice exam w/ Dominguez; voir dire conf.        9.0
           w/ Judge Shadur; prep and argue pending motions;
           discuss Stevenson arrangments w/ Ellie Cotter;
           review new insurance policy re: Scottsdale &
           disc. w/ co-counsel; review Def. juryh instruct.
           drafts

9/29/06    inv. Betty Knight/ Ciffonelli firm; pc to Noonan  9.0
           re: why new lawyers; prepare list of "Joint Trial
           names" to read to the jury; trial subpoenas w/
           MLR (final decisions); pc w/ Kim Sproule re:
           testimony & review EC memo re: same; review Doming
           exam w client;

9/30/06    work on Kraus designations and video review to    9.0
           cue up cross; practice Kraus exam; Yallely issue;
           review B. Starks articles re: proving Monell;
           i/v margaret Zyk re: Dominguez' IDOC; conf. w/
           MLR re: bette harris and john platt; review
           and create practice cross for Dominguez;

| | | |
|---|---|---|
| 10/1/06 | conf. w/ MLR about how to handle belated Wasilew disclsoure; ltr re: comply with Rule 26; review jury selection procedures; pcs w/ alibi witness' to determine whether to call at trial; meet w/ Dominguez & practice cross | 9.0 |
| 10/2/06 | prep for trial; practice openings w/ AL & DL; meeting w/ Plaintiff re: exam; conf. re: Mermel's desire not to cooperate; conf. w/ Joe Chervin & Chancey re: Chancey's knowledge; ltr to Mermel; review Mermel letter re: not testify; pc to Raley re: exam; Brzezack pc re: prep. for testimony | 13.0 |
| 10/3/06 | Jury trial begins: jury selection, openings, alejandro; prep for trial; attempt Kraus contacts w/ AL; final prep Dominguez exam; prep Chancy; pc w/ John Curynyn re: testimony | 15.0 |
| 10/4/06 | jury trial & prep for next day; secure appear for Newton Tensch; pc w/ Chancy re: memo; pc w/ Curnyn re: testimony; prep. for Chief testmony; review Dominguez dep re: cross; practice Hendley exam | 15.0 |
| 10/5/06 | jury trial & prep. for more trial; review exam Dunning exam & disc. w/ MLR; conf. w/ Cobb re: missing ev.; Hauri issue w/ Mark; conf. w/ R. Brzeczek re: testimony at trial Glennn prep w/ DL; pcs w/ Ruiz & SProule; | 15.0 |
| 10/6/06 | jury trial; meeting w/ AL, DL, & MK re: notes for closing & next week while fresh; | 12.0 |
| 10/7/06 | prep. for trial: Steve Anderson; pc w/ Agent Stevenson re: testimony & coming to Chicago; Wits: Moore, Biang, Kerkorian, Leusch, Cobb | 12.0 |
| 10/8/06 | prep for trial: witness exams, review Tensch docs; review IDOC docs; pc w/ Vollen re: trial prep; dinner w/ Dr. Vollen re: testimony; kupers pc re: testimony | 12.0 |
| 10/9/06 | prep for trial: pc w/ Dr. Oriatti re: witnes prep.; disc. need to call w/ DL; review Mark's Cavanaugh case law research re: prior test-imony; Wells dinner re: testimony prep at hotel; conf. w/ co-counsel re: interpreter; review other Hendley cases, includlng Omar complaint; review Cavanaugh literature for c-x material. | 12.0 |

| | | |
|---|---|---|
| 10/10/06 | jury trial & prep. for more trial; argue mot. for mistrial; Evaristo Ruiz prep.; conf. w/ Mark re: Rev. Coleman and Washington; prep for chancey II w/ conf. call; discuss drug use issue w/ MLR & review his cases; | 15.0 |
| 10/11/06 | jury trial & prep. for more trial; review & disc. mistrial motion; | 15.0 |
| 10/12/06 | jury trial & prep. for more trial | 15.0 |
| 10/13/06 | jury trial & prep. for more trial; review defense memos re: striking FPTO; review defense Rule 50 motions; argue motion to dismiss Waukegan on Monell; jury instruct; more closing notes re: developments | 12.0 |
| 10/14/06 | assist w/ Jury Instructions w/ MLR and Ciffoneli; review emails re: same; work on closing; review Def. latest motion for judgment; jury instructions research | 14.0 |
| 10/15/06 | work on closing; practice w/ AL & DL; review jury instructions; | 13.0 |
| 10/16/06 | trial & closing; read Def. Motion for new new trial & disc. w/ AL | 7.0 |
| 10/17/06 | court for jury question; be available closer to court; 2nd jury question; confer w/ co-c re: response & meaning of jury questions; verdict; confer w/ client; | 6.5 |
| 10/18/06 | prep re: argue defense mistrial motions | 2.0 |
| 10/20/06 | draft letter to o/c to try to resolve §1988 fee isseus; discuss w/ AL & MLR how to best settle fee issues; review prelim time | .75 |
| 10/26/06 | letter from loan funders re: inquiry on dominguez loan additional sums | .25 |
| 10/27/06 | review stay motion re: supersedeas; confer w/ AL & Alejandro; review post-trial motion; begin research re: response; begin draft fact section; jury instruction issues | 8.0 |
| 10/28/06 | continueresearching and drafting response to post-trial motion & bond motion; case law re: right to nontainted ID; ALexander case | 12.0 |
| 10/29/06 | continue researching and drafting resp. to post-trial motion & bond Motion; suggestive and reliablity cases, all jurisdictions | 3.5 |

| Date | Description | Hours |
|---|---|---|
| 10/30/06 | continue researching and drafting resp. to post-trial motion; draft section re: HEndley due process violation from trial notes; statute of limitations arg. research & respon. | 10.0 |
| 10/31/06 | continue researching and drafting resp. to post-trial motion; review Def. Motion to sub. lawyers & disc. w/ AL; begin research/draft Brady section | 6.0 |
| 11/1/06 | continue PTM response; review brzezak's final bill; review Vollen final bill; complete bond motion; ltr to Judge Shadur re: filings | 10.0 |
| 11/2/06 | court appear re: posttrial motion; continue draft & edits; | 3.0 |
| 11/6/06 | continue PTM response: prior conviction res judicata, vacated, etc.; draft & research exclusion of exhibits; dismissed claims | 8.0 |
| 11/7/06 | continue response to post-trial motion: research Def. Arg. re: exclusion of state ct. opinion; draft same; qualified immunity | 8.0 |
| 11/8/06 | continue response to post-trial motion re: qualified immunity cases | 4.5 |
| 11/9/06 | finalize PTM response; revise w/ comments from AL & MLR & DL | 5.0 |
| 11/10/06 | conf. w/ MLR re: bill of costs; review same; letter to Dan Fields confirming pc re: attempt to settle fee issues | .75 |
| 11/13/06 | court status w/ Judge Shadur re: PTM; conf. w/ Dominguez re: same | 1.25 |
| 11/20/06 | discuss Maximliano subpoena w/ MLR re: Vergera Waukegan case; review letter re: same; letter to Field re: no response to prior inquiries about bond | .25 |
| 11/22/06 | letter from J. Flesch re: Dominguez subponea in Vergera case; conf. w/ Alejandro | .25 |
| 11/27/06 | review Def. Objections to Costs motion; disc. w/ MLR how to proceed | .25 |
| 11/29/06 | pc from Steve Pearson re: Hendly's retention; review Noonan fax to Hendley; conf. w/ AL & MK re: request to stay & possible SJ re: new R59 oblig to indemnify; review bill of costs resp.; research Pepper case cited by Noonan | 1.25 |

| | | |
|---|---|---|
| 11/30/06 | pc w/ Pearson re: indemnfication, his request to stay PTM; pc w/ Alejandro re: update; cross claim review & disc. viabilty w/ AL & MLR | .75 |
| 12/1/06 | long hearing re: PTM & Indemnif; conf. w/ Pearson re: same; conf. w/ MK, AL, and MLR re: same; conf. w client | 3.0 |
| 12/4/06 | pc w/ Betty Knight re: withdraw | |
| 12/8/06 | pc w/ Pearson re: status of forebear pending adjudication of indemn.; letter to Pearson re: confirming conversation; conf. w/ AD re: status | .5 |
| 12/10/06 | pc w/ Pearson re: party in interest in indemn. strat.; conf. w/ MLR re: same; confirm no obj'n | .5 |
| 12/11/06 | pc w/ Field re: memo of judgment & noonan; draft order re: memo of judgment | .25 |
| 12/13/06 | court appearance re: indemnification; conf. w/ Pearson and Field re: where we stand; research indemnification statute re: limits; review declaratory action filed by Hendley; accept service; update for Dominguez; | 3.5 |
| 12/15/06 | ltr to D.Fields re: seeking update | .25 |
| 12/22/06 | review all time sheets; check file to ensure no missed time; research fee cases; review ltr. from Masini (waukegan) and respond | 8.0 |
| 12/27/06 | ltr to Field bond; pc from Field re: status discuss w/ AL | .5 |
| 12/28/06 | ltr from Field re: forbearance; conf. w/ AL re: how to proceed | .5 |
| 1/8/07 | pc re structured annuity for payment options; discuss w/ co-counsel | .25 |

648.5

# Alejandro Dominguez

## Billable Hours -- Mark Loevy-Reyes

| Date | Client | Activity | Time (hours) |
|---|---|---|---|
| 7/13/04 | Dominguez, Alejandro | received case, called client to set appt. | 0.25 |
| 7/14/04 | Dominguez, Alejandro | telephone call to Chris Bergen to discuss status of case | 0.25 |
| 7/14/04 | Dominguez, Alejandro | client meeting - intake interview | 0.75 |
| 7/15/04 | Dominguez, Alejandro | court hearing | 1 |
| 7/19/04 | Dominguez, Alejandro | tc/letter to Chris Bergen about receiving client file | 0.25 |
| 7/22/04 | Dominguez, Alejandro | drafted amended complaint | 2.5 |
| 7/22/04 | Dominguez, Alejandro | reviewed file from prior counsel | 5.75 |
| 7/26/04 | Dominguez, Alejandro | reviewed file from Northwestern | 1.5 |
| 8/2/04 | Dominguez, Alejandro | drafted amended complaint | 2.5 |
| 8/3/04 | Dominguez, Alejandro | documents compiled, for complaint | 0.75 |
| 8/3/04 | Dominguez, Alejandro | tc with client to advise on status of case | 0.25 |
| 8/3/04 | Dominguez, Alejandro | drafted written discovery requests | 2 |
| 8/3/04 | Dominguez, Alejandro | tc with jane raley for information about Northwestern's representation | 0 25 |
| 8/3/04 | Dominguez, Alejandro | tc with client re: drafting R26 filing | 0.5 |
| 8/4/04 | Dominguez, Alejandro | witness search, tc, fax | 0.5 |
| 8/5/04 | Dominguez, Alejandro | discovery drafted | 1.75 |
| 8/6/04 | Dominguez, Alejandro | tc with MN to inquire about who I should send discovery to | 0.25 |
| 8/6/04 | Dominguez, Alejandro | reviewed court filings | 1 |
| 8/6/04 | Dominguez, Alejandro | discovery sent out, letter | 1.25 |
| 8/17/04 | Dominguez, Alejandro | motion to add/drop parties drafted, readied | 2 |
| 8/18/04 | Dominguez, Alejandro | reviewed file, dep notice drafted/sent | 0.75 |
| 8/18/04 | Dominguez, Alejandro | received MTD, reviewed, | 0.5 |
| 8/18/04 | Dominguez, Alejandro | motion to add/drop parties edited, filed, mailed | 0.75 |
| 8/19/04 | Dominguez, Alejandro | received order, tc with Mike Noonan about order | 0.25 |
| 8/23/04 | Dominguez, Alejandro | received MN letter re: deposition dates, reviewed calendar | 0.25 |
| 8/24/04 | Dominguez, Alejandro | reviewed file/discovery | 0.75 |
| 8/26/04 | Dominguez, Alejandro | reviewed file about locating witnesses, sent e-mail to Mort Smith about finding witnesses | 0 5 |
| 8/26/04 | Dominguez, Alejandro | tc to Mike noonan re depositions of defendants, case discussion with JL about deposition scheduling. | 0 5 |
| 8/27/04 | Dominguez, Alejandro | court hearing | 1 |
| 9/1/04 | Dominguez, Alejandro | discussion about witness location with Mort, received e-mail | 0.5 |
| 9/3/06 | Dominguez, Alejandro | received answer, reviewed it | 0.75 |
| 9/9/04 | Dominguez, Alejandro | discussed with Heather, investigation serach of Kraus, McCandless, reviewed letter | 0 5 |
| 9/14/04 | Dominguez, Alejandro | dep prep | 3 |
| 9/14/04 | Dominguez, Alejandro | tc with MN about dep scheduling | 0.25 |
| 9/20/04 | Dominguez, Alejandro | tc with client to prepare for dep of Moran | 0.25 |
| 9/21/04 | Dominguez, Alejandro | dep prep for moran | 3.25 |
| 9/22/04 | Dominguez, Alejandro | depositions/prep/drive, meet with client | 6.5 |
| 9/28/04 | Dominguez, Alejandro | received aff. def. motion, reviewed | 0.75 |
| 10/1/04 | Dominguez, Alejandro | court status | 1 |
| 10/13/04 | Dominguez, Alejandro | kraus letter, re: appearing as party, looked up address leads | 0.5 |
| 11/1/04 | Dominguez, Alejandro | tc with client about status of case | 0.25 |
| 11/1/04 | Dominguez, Alejandro | letters to Lisa Kraus about being a party, reviewed addresses | 0.5 |
| 11/16/04 | Dominguez, Alejandro | tc with client about status of case | 0.25 |
| 11/17/04 | Dominguez, Alejandro | work with heather to get investigator to find kraus, reviewed letter, went over info we have and leads | 0.5 |
| 12/15/04 | Dominguez, Alejandro | court | 1 |
| 2/11/05 | Dominguez, Alejandro | compiled kraus info for investigator | 0.75 |
| 2/14/05 | Dominguez, Alejandro | ct. hearing | 1 |

# Alejandro Dominguez
## Billable Hours -- Mark Loevy-Reyes

| Date | Client | Activity | Time (hours) |
|------|--------|----------|------|
| 2/16/05 | Dominguez, Alejandro | tc to Gary Wells, re: retaining his services, letter to confirm his hiring | 1.25 |
| 2/16/05 | Dominguez, Alejandro | tc with Jane Raley, re: information about clemency petition | 0.25 |
| 2/16/05 | Dominguez, Alejandro | letter to defense counsel seeking hendley dep dates, outstanding discovery -- reviewed outstanding discovery | 1 |
| 2/17/05 | Dominguez, Alejandro | drafted subpoena to LCSA for prosecution docs - reviewed file for rider | 0.5 |
| 2/22/05 | Dominguez, Alejandro | sent sutpoena to LCSA, notice | 0.5 |
| 2/25/05 | Dominguez, Alejandro | tc with LCSA - castellano -- re: subpoena | 0.25 |
| 2/27/05 | Dominguez, Alejandro | tc with LCSA - castellano -- re: subpoena | 0.25 |
| 3/2/05 | Dominguez, Alejandro | received MN 2/28/05 letter reviewed | 0.25 |
| 3/9/05 | Dominguez, Alejandro | received LCSA letter and documents, initially reviewed documents | 1.25 |
| 3/11/05 | Dominguez, Alejandro | reviewed docs, subpoena to navy, tcs to LCSA re: documents, letter to defense counsel re: LCSA documents, prepared protective order to get other LCSA docs, letter to LCSA re: missing document | 3.25 |
| 3/21/05 | Dominguez, Alejandro | sent subpoena | 0.25 |
| 3/24/05 | Dominguez, Alejandro | tc with MN regarding discovery | 0.25 |
| 3/24/05 | Dominguez, Alejandro | received navy letter, reviewed | 0.25 |
| 3/28/06 | Dominguez, Alejandro | letter to MN with discovery supplement -- reviewed discovery to send from LCSA, had it copied | 1.5 |
| 3/31/05 | Dominguez, Alejandro | received MN letter about hendly dep and draft discovery responses, reviewed both | 1 |
| 4/5/05 | Dominguez, Alejandro | court, draft order for navy docs as per prior letter | 2.25 |
| 4/5/05 | Dominguez, Alejandro | drafted/fedexed letter/order to navy to obtain investigation file | 1 |
| 4/7/05 | Dominguez, Alejandro | tc with LCSA - castellano, letter to castellano about getting rest of LCSA file | 0.5 |
| 4/11/05 | Dominguez, Alejandro | received navy records, reviewed them | 1.5 |
| 4/11/05 | Dominguez, Alejandro | court status | 1 |
| 4/12/05 | Dominguez, Alejandro | draft motion to compel - lcsa docs | 1 |
| 4/13/05 | Dominguez, Alejandro | discovery drafted, sent to MN (docs) | 0.75 |
| 4/13/05 | Dominguez, Alejandro | draft/send subpoena for LCPD docs | 0.5 |
| 4/13/05 | Dominguez, Alejandro | draft motion to compel - lcsa docs | 1.5 |
| 4/19/05 | Dominguez, Alejandro | prep of hendly dep | 2.75 |
| 4/19/05 | Dominguez, Alejandro | received LCSA response -- reviewed it | 1.25 |
| 4/19/05 | Dominguez, Alejandro | received LCSA phone notes - reviewed | 0.5 |
| 4/20/05 | Dominguez, Alejandro | deposition of hendley, prep | 6.25 |
| 4/21/05 | Dominguez, Alejandro | received MN letter re: LCPD subpoena | 0.25 |
| 4/25/05 | Dominguez, Alejandro | research state's attorney discovery privilege issues | 1.5 |
| 4/26/05 | Dominguez, Alejandro | court | 1 |
| 4/26/05 | Dominguez, Alejandro | tcs with client re status | 0.25 |
| 4/26/05 | Dominguez, Alejandro | tc with MN re: dep of Plaintiff | 0.25 |
| 4/28/05 | Dominguez, Alejandro | tc with LCPub Def , received, reviewed follow up letter re: subpoena | 0.5 |
| 4/29/05 | Dominguez, Alejandro | tc with wells re: status of case, consult give info | 0.25 |
| 5/2/05 | Dominguez, Alejandro | received MN letter confirming AD dep | 0.25 |
| 5/3/05 | Dominguez, Alejandro | review file, list deponents still needed, draft memo | 3.25 |
| 5/3/05 | Dominguez, Alejandro | sent out notice of dep | 0.5 |
| 5/3/05 | Dominguez, Alejandro | tc to client re: his dep | 0.25 |
| 5/3/05 | Dominguez, Alejandro | letter to Gary Wells with deposition | 0.25 |
| 5/5/05 | Dominguez, Alejandro | tc to client: re his dep | 0.1 |
| 5/5/05 | Dominguez, Alejandro | subpoena archbold. read docs | 0.4 |

MLR hours as of 2.00 PM, 4/2/2007

# Alejandro Dominguez
## Billable Hours -- Mark Loevy-Reyes

| Date | Client | Activity | Time (hours) |
|---|---|---|---|
| 5/9/05 | Dominguez, Alejandro | dep prep | 0.75 |
| 5/10/05 | Dominguez, Alejandro | dep/prep of client | 6.5 |
| 5/11/05 | Dominguez, Alejandro | court | 1.25 |
| 5/13/05 | Dominguez, Alejandro | received and reviewed LCSA docs | 0.75 |
| 5/16/05 | Dominguez, Alejandro | received letter from MN about LK location, listened to tape | 0.75 |
| 5/22/05 | Dominguez, Alejandro | letter to counsel re: discovery disputes -- LCSA document production, info on LK whereabouts, need for photographs from investigator, subpoena/notice of dep drafted and sent for Perry Smith | 1 25 |
| 5/22/05 | Dominguez, Alejandro | notice of dep - perry smith | 0.5 |
| 5/24/05 | Dominguez, Alejandro | received letter from counsel about my 5/22 letter | 0.25 |
| 5/26/06 | Dominguez, Alejandro | notice of dep, subpoena for perry smith dep | 0.5 |
| 5/26/05 | Dominguez, Alejandro | letters to counsel - MN about photos we are looking for -- Castellano about their notes | 0.5 |
| 6/1/06 | Dominguez, Alejandro | letter from LCSA about documents that I turned over to MN -- requested to know which ones | 0.5 |
| 6/1/05 | Dominguez, Alejandro | tc with castelleno to discuss production issues | 0.25 |
| 6/2/05 | Dominguez, Alejandro | tc with wells, update on case -- consult | 0.75 |
| 6/2/05 | Dominguez, Alejandro | tc with Castellano about deps | 0.25 |
| 6/2/05 | Dominguez, Alejandro | letter to counsel re: castellano conversation | 0.25 |
| 6/6/05 | Dominguez, Alejandro | tc tlo client re: status, office discussion about Gary Wells, identification issues | 1 |
| 6/6/05 | Dominguez, Alejandro | tc with LCSA - castellano | 0.25 |
| 6/6/05 | Dominguez, Alejandro | notice of dep - archbold as per conversation with castellano re: scheduling | 0.25 |
| 6/13/05 | Dominguez, Alejandro | received castellano letter and info about new docs, tc with castellano about docs | 0 5 |
| 6/14/05 | Dominguez, Alejandro | tcs with MN/Perry Smith about Smith dep | 0.5 |
| 6/15/05 | Dominguez, Alejandro | dep scheduling prep, tc about depositions | 1.5 |
| 6/16/05 | Dominguez, Alejandro | letter to Perry smith, drafted/sent -- re: dep | 0.25 |
| 6/16/05 | Dominguez, Alejandro | dep archbold, prep | 4 |
| 6/20/05 | Dominguez, Alejandro | draft motion for po | 1.5 |
| 6/20/05 | Dominguez, Alejandro | try to find kraus get info, talk to heather | 0.5 |
| 6/23/05 | Dominguez, Alejandro | received letter from MN and photos reviewed | 0.5 |
| 6/24/06 | Dominguez, Alejandro | received motion for suggestion of death | 0.75 |
| 6/27/05 | Dominguez, Alejandro | court, subpoena drafted to St. Therese, letter to MN with order | 2 |
| 6/30/05 | Dominguez, Alejandro | dep prep - smith | 1 |
| 7/1/05 | Dominguez, Alejandro | tc with MN re: deps | 0.25 |
| 7/1/05 | Dominguez, Alejandro | dep prep, review docs | 2.5 |
| 7/5/05 | Dominguez, Alejandro | dep prep, dep - smith | 9.5 |
| 7/7/05 | Dominguez, Alejandro | discovery drafted | 4 |
| 7/8/06 | Dominguez, Alejandro | received MN letter re: investigator docs | 0.25 |
| 7/8/05 | Dominguez, Alejandro | finished discovery docs | 0.25 |
| 7/15/05 | Dominguez, Alejandro | reviewed file, subpoena to St. Therese hospital | 1.5 |
| 7/18/05 | Dominguez, Alejandro | received MN letter about WPD employee deps -- looked up non-employees | 0.75 |
| 7/25/05 | Dominguez, Alejandro | court | 1 |
| 7/25/05 | Dominguez, Alejandro | letter to counsel re: depositions of WPD employees | 0.25 |
| 8/1/05 | Dominguez, Alejandro | received letter/discovery responses -- reviewed responses/photos | 0 75 |
| 8/1/05 | Dominguez, Alejandro | discussed investigation of LK whereabouts with Heather -- reviewed file for updated info -- who will have investigator find her | 1.25 |

# Alejandro Dominguez
## Billable Hours -- Mark Loevy-Reyes

| Date | Client | Activity | Time (hours) |
|---|---|---|---|
| 8/2/05 | Dominguez, Alejandro | letter to counsel following up on photo request | 0.25 |
| 8/4/06 | Dominguez, Alejandro | received letter from St. Therese RE: subpoena | 0.5 |
| 8/4/05 | Dominguez, Alejandro | tc to client about pardon, tc to jane raley re: pardon, reviewed pardon info | 0 5 |
| 8/9/05 | Dominguez, Alejandro | written discovery drafted, sent | 1 |
| 8/25/05 | Dominguez, Alejandro | letter to counsel, discussion with co-counsel about deps | 0.5 |
| 8/29/05 | Dominguez, Alejandro | tcs to Kraus family for her location | 0.5 |
| 8/30/05 | Dominguez, Alejandro | tcs to Kraus former inlaws for her location | 0.5 |
| 9/1/05 | Dominguez, Alejandro | tcs to Kraus family for her location | 0.5 |
| 9/6/05 | Dominguez, Alejandro | draft motion to compel | 1.75 |
| 9/8/05 | Dominguez, Alejandro | tcs with MN about depositions, tc with kraus about her appearing as witness | 0 75 |
| 9/8/05 | Dominguez, Alejandro | draft subpoena for kraus, receive info on location | 0.75 |
| 9/8/05 | Dominguez, Alejandro | conference with other counsel re: Kraus as witness | 1 |
| 9/8/05 | Dominguez, Alejandro | received letter from MN about deps | 0.25 |
| 9/13/05 | Dominguez, Alejandro | tc with Kraus | 0.25 |
| 9/14/05 | Dominguez, Alejandro | tc with Kraus | 0.25 |
| 9/14/05 | Dominguez, Alejandro | letter to counsel re: kraus dep, notice of dep | 0.5 |
| 9/14/05 | Dominguez, Alejandro | discussed with Heather, making kraus travel plans | 0.5 |
| 9/20/05 | Dominguez, Alejandro | tcs with Kraus - MN about kraus dep schedule | 0.5 |
| 9/20/05 | Dominguez, Alejandro | letter to counsel re: dep. schedule, notice of dep, subpoenas | 1.5 |
| 9/22/05 | Dominguez, Alejandro | tcs with wells about LK deposition and MN about deposition | 1.5 |
| 9/22/05 | Dominguez, Alejandro | meeting about kraus (prep for kraus) -- have her picked up at airport | 3 |
| 9/23/05 | Dominguez, Alejandro | dep of kraus, arrangements | 2 |
| 9/23/05 | Dominguez, Alejandro | dep of Kraus and prep (AL) | 5 |
| 10/5/05 | Dominguez, Alejandro | tc to anderson -- witness -- about his deposition schedule | 0.25 |
| 10/5/05 | Dominguez, Alejandro | letter to counsel | 0.25 |
| 10/19/05 | Dominguez, Alejandro | tc to MN, tensch (witness) about the deposition schedules | 0.5 |
| 10/19/05 | Dominguez, Alejandro | dep scheduling | 0.5 |
| 10/25/05 | Dominguez, Alejandro | dep prep -- cops | 3.25 |
| 10/26/05 | Dominguez, Alejandro | deps - cops | 8 |
| 10/28/05 | Dominguez, Alejandro | court | 1 |
| 10/31/05 | Dominguez, Alejandro | tc with Wells - re: kraus and report needs | 0.5 |
| 10/31/05 | Dominguez, Alejandro | letter to wells with LK dep | 0.25 |
| 11/1/05 | Dominguez, Alejandro | AL-deposition - setterland, prep of dep, conference about dep | 2.5 |
| 11/7/05 | Dominguez, Alejandro | discovery read, drafted | 1 |
| 11/30/05 | Dominguez, Alejandro | tc to Wells re: report, tc to client re: kupers eval | 0.5 |
| 11/30/05 | Dominguez, Alejandro | letter to counsel, motion for trial date drafted filed | 1.75 |
| 11/30/05 | Dominguez, Alejandro | discovery supplement drafted, sent | 0.75 |
| 12/8/05 | Dominguez, Alejandro | tc to Wells re: report | 0.5 |
| 12/8/05 | Dominguez, Alejandro | court | 1 |
| 12/14/05 | Dominguez, Alejandro | e-mail to Gary Wells re: report | 0.25 |
| 12/14/05 | Dominguez, Alejandro | letter to MN re: trial scheduling, tcs to Wells experts | 1 |
| 12/15/05 | Dominguez, Alejandro | tc to kupers re: AD evaluation | 0.25 |
| 12/15/05 | Dominguez, Alejandro | letter to MN about policy guideline discovery | 0.25 |
| 12/15/05 | Dominguez, Alejandro | tc with Gary Wells, review of file, letter to Mike Noonan | 0.75 |
| 12/16/05 | Dominguez, Alejandro | received MN letter about trial | 0.25 |
| 12/16/05 | Dominguez, Alejandro | tc to kupers re: AD evaluation | 0.25 |
| 1/9/06 | Dominguez, Alejandro | received MN letter that are no policy guidelines as requested ni prior letter | 0 25 |
| 1/10/06 | Dominguez, Alejandro | tc with brzeczek, re: serving as an expert | 0.5 |
| 1/12/06 | Dominguez, Alejandro | tc with client, re: evaluation, status | 0.25 |

# Alejandro Dominguez
## Billable Hours -- Mark Loevy-Reyes

| Date | Client | Activity | Time (hours) |
|------|--------|----------|--------------|
| 1/13/06 | Dominguez, Alejandro | e-mail from Kupers re: his report status | 0.25 |
| 1/17/06 | Dominguez, Alejandro | received kupers report, reviewed, discussed with JL, conference | 1.75 |
| 1/20/06 | Dominguez, Alejandro | kupers expert report work | 2 |
| 1/26/06 | Dominguez, Alejandro | tc to Kupers re: his CV and prior testimony - he e-mailed them, I received reviewed, printed | 0.5 |
| 1/26/06 | Dominguez, Alejandro | reviewed all discovery docs for fpto | 4 |
| 1/31/06 | Dominguez, Alejandro | draft FPTO | 4 |
| 1/31/06 | Dominguez, Alejandro | subpoena drafted, sent nipcl | 0.5 |
| 2/1/06 | Dominguez, Alejandro | letter to MN that included the kupers and wells reports, received kupers docs - reviewed | 1.25 |
| 2/3/06 | Dominguez, Alejandro | discussion with JL about witnesses in FPTO and letter to MN about FPTO and witnesses | 1.25 |
| 2/5/06 | Dominguez, Alejandro | discovery drafted, sent | 0.5 |
| 2/8/06 | Dominguez, Alejandro | meeting with JL about witnesses and letter to MN to add witnesses | 0.75 |
| 2/13/06 | Dominguez, Alejandro | tcs | 1 |
| 2/13/06 | Dominguez, Alejandro | received Dunning report, consulted, reviewed | 2 |
| 2/14/06 | Dominguez, Alejandro | e-mail to Lola Vollen | 0.25 |
| 2/14/06 | Dominguez, Alejandro | received MN letter with edits to FPTO | 0.5 |
| 2/14/06 | Dominguez, Alejandro | letter to MN with FPTO and RUth Dunning expert report | 1 |
| 2/14/06 | Dominguez, Alejandro | fpto prepared | 2 |
| 2/15/06 | Dominguez, Alejandro | expungement research for vollen, sent it to her | 1.75 |
| 2/15/06 | Dominguez, Alejandro | expert tc to VOllen to confirm her work and Brzeczek, sent docs to them | 2.75 |
| 2/15/06 | Dominguez, Alejandro | FPTO - edited | 0.5 |
| 2/15/06 | Dominguez, Alejandro | edited FPTO sent to MN | 0.5 |
| 2/17/06 | Dominguez, Alejandro | letter to MN with additional docs received | 0.75 |
| 2/17/06 | Dominguez, Alejandro | fptc | 2 |
| 2/22/06 | Dominguez, Alejandro | letter to counsel with additional exhibit | 0.25 |
| 2/28/06 | Dominguez, Alejandro | discovery supplement drafted, sent to AD | 1 |
| 3/2/06 | Dominguez, Alejandro | received subpoena from MN to Court clerk, IDOC, LCSA and NCPD, kupers | 0.75 |
| 3/2/06 | Dominguez, Alejandro | letter to NICL about subpoena and evidence | 0.25 |
| 3/6/06 | Dominguez, Alejandro | received letter from MN with clean copy of 9/16 police report - reviewed reports | 0.5 |
| 3/6/06 | Dominguez, Alejandro | received letter from MN seeking petition for clemency | 0.25 |
| 3/9/06 | Dominguez, Alejandro | letter to counsel re: petition for clemency additional witnesses | 0.25 |
| 3/10/06 | Dominguez, Alejandro | discovery response drafted, sent to MN | 1.25 |
| 3/10/06 | Dominguez, Alejandro | meeting with Brzeczek | 2.5 |
| 3/10/06 | Dominguez, Alejandro | talked to Jess to send letter to brzeczek with exhibits | 0.25 |
| 3/13/06 | Dominguez, Alejandro | motions in limine drafted/filed | 2.75 |
| 3/14/06 | Dominguez, Alejandro | talked to Jess to have her send petition to MN | 0.25 |
| 3/15/06 | Dominguez, Alejandro | received MN letter about MIL, petition documents | 0.25 |
| 3/17/06 | Dominguez, Alejandro | received notice of subpoena | 0.5 |
| 3/17/06 | Dominguez, Alejandro | letter from MN about MIL agreements | 0.25 |
| 3/24/06 | Dominguez, Alejandro | e-mail exchange with Vollen about her expert report | 0.25 |
| 3/24/06 | Dominguez, Alejandro | e-mail exchange with kupers re: other reports | 0.25 |
| 3/24/06 | Dominguez, Alejandro | received MN letter about their expert | 0.25 |
| 3/27/06 | Dominguez, Alejandro | tc with MN re: kupers reports in other cases | 0.25 |
| 3/27/06 | Dominguez, Alejandro | e-mail exchange with kupers re: other reports | 0.25 |
| 3/27/06 | Dominguez, Alejandro | letter to counsel about scheduling, edits | 0.75 |
| 3/27/06 | Dominguez, Alejandro | letter from counsel about setting up AD eval | 0.25 |

MLR hours as of 2:00 PM, 4/2/2007

# Alejandro Dominguez
## Billable Hours -- Mark Loevy-Reyes

| Date | Client | Activity | Time (hours) |
|---|---|---|---|
| 3/27/06 | Dominguez, Alejandro | tcs with AD/MN about setting up AD evaluation at rush | 0.25 |
| 3/27/06 | Dominguez, Alejandro | asked ellie to send letter with kupers reports | 0.25 |
| 3/28/06 | Dominguez, Alejandro | received MN confirming letter about R35 exams | 0.25 |
| 3/28/06 | Dominguez, Alejandro | received info from MN about dates NOT available for trial | 0.25 |
| 3/29/06 | Dominguez, Alejandro | letter to judge drafted | 0.25 |
| 3/31/06 | Dominguez, Alejandro | reviewed MIL responses | 1 |
| 3/31/06 | Dominguez, Alejandro | responses drafted filed MIL | 2.25 |
| 4/3/06 | Dominguez, Alejandro | tc with MN's Office re: AD R35 exam dates | 0.25 |
| 4/3/06 | Dominguez, Alejandro | received MN letter confirming R35 dates | 0.25 |
| 4/4/06 | Dominguez, Alejandro | tc with Vollen, re: expert report | 0.25 |
| 4/5/06 | Dominguez, Alejandro | tcs with vollen, received report, reviewed | 1.25 |
| 4/7/06 | Dominguez, Alejandro | brzeczek e-mail about report status | 0.25 |
| 4/10/06 | Dominguez, Alejandro | Brzeczek e-mail to schedule conference | 0.25 |
| 4/10/06 | Dominguez, Alejandro | tc wtih TK - re: AD evals – what we need for rebuttal, AD re: R35 exam status, letter to MN | 0.75 |
| 4/10/06 | Dominguez, Alejandro | letter to MN about R35 exam procedures | 0.5 |
| 4/10/06 | Dominguez, Alejandro | received Vollen report, reviewed | 1.75 |
| 4/10/06 | Dominguez, Alejandro | asked Ellie to send Vollen report to MN | 0.25 |
| 4/13/06 | Dominguez, Alejandro | tc with MN re: expert evals | 0.25 |
| 4/17/06 | Dominguez, Alejandro | received letter from MN confirming R35 procedures | 0.25 |
| 4/17/06 | Dominguez, Alejandro | letter to counsel re: R35 evals | 0.25 |
| 4/18/06 | Dominguez, Alejandro | tc with MN re: R35 scheduling | 0.25 |
| 4/24/06 | Dominguez, Alejandro | received letter, R35 procedures | 0.25 |
| 4/24/06 | Dominguez, Alejandro | received letter , LCSA docs | 0.5 |
| 4/25/06 | Dominguez, Alejandro | reviewed file to identify treating doctors, subpoenas to treaters | 1.75 |
| 4/25/06 | Dominguez, Alejandro | letter to MN re: other treating doctors | 0.25 |
| 4/26/06 | Dominguez, Alejandro | received letter from MN about treating subpoenas | 0.25 |
| 4/26/05 | Dominguez, Alejandro | received MN letter about Glennon | 0.25 |
| 4/28/06 | Dominguez, Alejandro | received letter from MN about treaters and Jim Glennon id. | 0.25 |
| 5/2/06 | Dominguez, Alejandro | received medical docs from Healthreach | 0.25 |
| 5/2/06 | Dominguez, Alejandro | subpoena LCDPH, notice of subpoena, review of file | 0.75 |
| 5/3/06 | Dominguez, Alejandro | letter to noonan with healthreach docs | 0.25 |
| 5/3/06 | Dominguez, Alejandro | letter to counsel | 0.25 |
| 5/5/06 | Dominguez, Alejandro | received subpoena to IDOC | 0.25 |
| 5/5/06 | Dominguez, Alejandro | subpoena drafted - LCDPH, reviewed file | 0.5 |
| 5/5/06 | Dominguez, Alejandro | received letter from MN about psych testing by wicinski | 0.25 |
| 5/5/06 | Dominguez, Alejandro | tc to AD about wicinski eval - LCProbation Dept. records | 0.25 |
| 5/9/06 | Dominguez, Alejandro | received letter from MN about LCPDH records subpoena | 0.25 |
| 5/10/06 | Dominguez, Alejandro | tc with LCSA that need order to release probation docs | 0.5 |
| 5/10/06 | Dominguez, Alejandro | motion drafted, filed for order to get records | 2.25 |
| 5/11/06 | Dominguez, Alejandro | received letter from MN about getting probation docs | 0.25 |
| 5/11/06 | Dominguez, Alejandro | court | 1 |
| 5/12/06 | Dominguez, Alejandro | received letter from LCDPH that not have records | 0.25 |
| 5/15/06 | Dominguez, Alejandro | letter to LCSA with order for probation docs | 0.25 |
| 5/22/06 | Dominguez, Alejandro | received Cavanaugh expert report, reviewed | 3 |
| 5/22/06 | Dominguez, Alejandro | sent cavanaugh report to kupers | 0.25 |
| 5/22/06 | Dominguez, Alejandro | tc with kupers, needs to have raw data evaluated | 0.5 |
| 5/23/06 | Dominguez, Alejandro | tc with MN | 0.25 |
| 5/24/06 | Dominguez, Alejandro | letter to counsel | 0.25 |
| 5/25/06 | Dominguez, Alejandro | received probation records, reviewed | 1.25 |
| 5/25/06 | Dominguez, Alejandro | discussed with JL, the probation records | 0.5 |
| 5/25/06 | Dominguez, Alejandro | letter to MN with probation docs/advised we will use as exhibits | 0.5 |

# Alejandro Dominguez
## Billable Hours -- Mark Loevy-Reyes

| Date | Client | Activity | Time (hours) |
|---|---|---|---|
| 5/26/06 | Dominguez, Alejandro | tc with MN, probation re records and raw data from R35 reports | 0.25 |
| 5/26/06 | Dominguez, Alejandro | letter to counsel | 0.25 |
| 5/30/06 | Dominguez, Alejandro | tc with MN discussing deps of psych experts | 0.25 |
| 6/5/06 | Dominguez, Alejandro | tc with Brzeczek re: expert report | 0.25 |
| 6/6/06 | Dominguez, Alejandro | received letter from MN about deps of psych docs | 0.25 |
| 6/6/06 | Dominguez, Alejandro | tc with MN, re scheduling deps | 0.25 |
| 6/7/06 | Dominguez, Alejandro | tc with MN, re: trial schedule | 0.25 |
| 6/7/06 | Dominguez, Alejandro | motion to change trial date - edit - filing | 1 |
| 6/8/06 | Dominguez, Alejandro | letter from MN about trial schedule | 0.25 |
| 6/9/06 | Dominguez, Alejandro | received MN response to trial date, reviewed | 0.5 |
| 6/12/06 | Dominguez, Alejandro | discussion with TK, rebuttal report received, discussed, letter to counsel | 2 |
| 6/14/06 | Dominguez, Alejandro | received letter from MN about psych deps | 0.25 |
| 6/14/06 | Dominguez, Alejandro | tc conference with psych - mundt | 1 |
| 6/15/06 | Dominguez, Alejandro | tcs to Brzeczek re: report, MN re: psych deps | 0.5 |
| 6/22/06 | Dominguez, Alejandro | tcs to Brzeczek re: report, MN, re: ppolice practice experts | 0.5 |
| 6/22/06 | Dominguez, Alejandro | received glennon report, reviewed | 1.5 |
| 6/26/06 | Dominguez, Alejandro | received draft brzeczek report, discussed, reviewed | 1.75 |
| 6/29/06 | Dominguez, Alejandro | brzeczek report sent to counsel | 0.25 |
| 6/29/06 | Dominguez, Alejandro | research expert testimony on westlaw | 1 |
| 7/5/06 | Dominguez, Alejandro | asked Ellie to send signed copy of kupers report to MN | 0.25 |
| 7/6/06 | Dominguez, Alejandro | wasilew dep prep | 3 |
| 7/7/06 | Dominguez, Alejandro | wasilew dep prep | 2 |
| 7/7/06 | Dominguez, Alejandro | wasilew dep | 4.5 |
| 7/14/06 | Dominguez, Alejandro | tc with MN office, psych schedule set up, received confirming letter | 0.25 |
| 7/19/06 | Dominguez, Alejandro | dep prep, dep of waysilew | 4 |
| 7/24/06 | Dominguez, Alejandro | dep prep of glennon | 1.75 |
| 7/25/06 | Dominguez, Alejandro | received letter from MN about Cavanaugh's report | 0.25 |
| 7/26/06 | Dominguez, Alejandro | letter to MN to confirm conversation with Brzeczek about producing his file | 0.5 |
| 7/26/06 | Dominguez, Alejandro | dep prep dep of glennon | 3.25 |
| 7/27/06 | Dominguez, Alejandro | letter to counsel, prep for cavanaugh | 3.25 |
| 7/27/06 | Dominguez, Alejandro | letter from MN re: brzeczek report file | 0.25 |
| 7/28/06 | Dominguez, Alejandro | received handwritten notes of cavanaugh from MN, reviewed | 1 |
| 7/31/06 | Dominguez, Alejandro | dep of cavanaugh | 5 |
| 8/21/06 | Dominguez, Alejandro | received letter from MN asking for TK other reports for us | 0.25 |
| 8/21/06 | Dominguez, Alejandro | looked for and directed Jess to pull other reports and send | 0.5 |
| 8/31/06 | Dominguez, Alejandro | received confirming letter from MN that Brzeczek dep is 9/12 | 0.25 |
| 9/6/06 | Dominguez, Alejandro | received letter confirming TK dep | 0.25 |
| 9/8/06 | Dominguez, Alejandro | letter to kraus re: attending trial | 0.25 |
| 9/8/06 | Dominguez, Alejandro | received MN letter re: moran dep, reviewed | 0.5 |
| 9/12/06 | Dominguez, Alejandro | received motion, reviewed | 0.75 |
| 9/13/06 | Dominguez, Alejandro | received letter from MN about LK at trial | 0.25 |
| 9/13/06 | Dominguez, Alejandro | office discussion about getting kraus | 0.75 |
| 9/14/06 | Dominguez, Alejandro | meeting, tc to client to set up appt, letter to counsel re: LK | 1 |
| 9/15/06 | Dominguez, Alejandro | kupers dep/prep | 2.5 |
| 9/18/06 | Dominguez, Alejandro | letters to witnesses | 0.75 |
| 9/18/06 | Dominguez, Alejandro | research evidence/trial issues | 1 |
| 9/19/06 | Dominguez, Alejandro | legal research – trial prep | 0.25 |
| 9/19/06 | Dominguez, Alejandro | letters to witnesses | 0.5 |
| 9/20/06 | Dominguez, Alejandro | letter to attorney | 0.25 |

MLR hours as of 2:00 PM, 4/2/2007

# Alejandro Dominguez
## Billable Hours -- Mark Loevy-Reyes

| Date | Client | Activity | Time (hours) |
|---|---|---|---|
| 9/21/06 | Dominguez, Alejandro | draft/file motion to compel witness for trial (navy) | 2.25 |
| 9/21/06 | Dominguez, Alejandro | received three pretrial motions, reviewed | 1.25 |
| 9/21/06 | Dominguez, Alejandro | letters to get witness from navy, motion, notice | 2.25 |
| 9/22/06 | Dominguez, Alejandro | court | 1.5 |
| 9/25/06 | Dominguez, Alejandro | draft motion to amend FPTO/Tensch | 4.25 |
| 9/26/06 | Dominguez, Alejandro | received Defense motions and reviewed, office discussion | 2.25 |
| 9/26/06 | Dominguez, Alejandro | trial prep | 4 |
| 9/27/06 | Dominguez, Alejandro | meeting with dunning | 1.5 |
| 9/27/06 | Dominguez, Alejandro | meeting with family, draft exam | 3.5 |
| 9/28/06 | Dominguez, Alejandro | witness exam prep | 3 |
| 9/28/06 | Dominguez, Alejandro | voir dire conference | 3 |
| 9/28/06 | Dominguez, Alejandro | trial exhibit prep | 3 |
| 9/29/06 | Dominguez, Alejandro | reviewed kraus dep | 0.5 |
| 9/29/06 | Dominguez, Alejandro | tc to lozano, coleman, washington, kenosha jail | 0.75 |
| 9/29/06 | Dominguez, Alejandro | exam prep | 4 |
| 9/30/06 | Dominguez, Alejandro | tcs, trial prep | 3.25 |
| 10/1/06 | Dominguez, Alejandro | trial prep | 4 |
| 10/2/06 | Dominguez, Alejandro | trial prep | 5 |
| 10/3/06 | Dominguez, Alejandro | trial | 8 |
| 10/3/06 | Dominguez, Alejandro | trial prep for next day | 1.75 |
| 10/4/06 | Dominguez, Alejandro | trial | 8 |
| 10/4/06 | Dominguez, Alejandro | trial prep for next day | 1 |
| 10/5/06 | Dominguez, Alejandro | trial | 8 |
| 10/5/06 | Dominguez, Alejandro | research - trial prep for next day | 1 |
| 10/6/06 | Dominguez, Alejandro | trial | 8 |
| 10/7/06 | Dominguez, Alejandro | trial prep | 2.25 |
| 10/8/06 | Dominguez, Alejandro | glennon trial testimony | 3 |
| 10/9/06 | Dominguez, Alejandro | trial prep | 3 |
| 10/10/06 | Dominguez, Alejandro | trial | 8 |
| 10/10/06 | Dominguez, Alejandro | trial prep for next day | 0.5 |
| 10/11/06 | Dominguez, Alejandro | trial | 8 |
| 10/12/06 | Dominguez, Alejandro | trial | 8 |
| 10/13/06 | Dominguez, Alejandro | jury instruction conference | 4.5 |
| 10/13/06 | Dominguez, Alejandro | draft jury instructions | 2 |
| 10/14/06 | Dominguez, Alejandro | draft jury instructions | 2 |
| 10/14/06 | Dominguez, Alejandro | obtain exhibit for closing | 1 |
| 10/15/06 | Dominguez, Alejandro | draft jury instructions | 2 |
| 10/16/06 | Dominguez, Alejandro | trial | 5 |
| 10/17/06 | Dominguez, Alejandro | trial jury deliberation | 3.5 |
| 10/30/06 | Dominguez, Alejandro | received post trial motions, reviewed | 2.25 |
| 11/1/06 | Dominguez, Alejandro | received Brzeczek final bill - forwarded for payment | 0.25 |
| 11/1/06 | Dominguez, Alejandro | edit response to post trial motions | 1 |
| 11/1/06 | Dominguez, Alejandro | tc to Vollen RE: bill, forward for payment | 0.5 |
| 11/2/06 | Dominguez, Alejandro | court | 1 |
| 11/8/06 | Dominguez, Alejandro | edit, research response Post trial motion | 2.25 |
| 11/9/06 | Dominguez, Alejandro | edit, research, file response post trial motion | 2 |
| 11/13/06 | Dominguez, Alejandro | fee hours | 1.5 |
| 11/16/06 | Dominguez, Alejandro | fee hours calculated | 3 |
| 12/5/06 | Dominguez, Alejandro | research on cost/fees issues | 2.5 |
| 12/7/06 | Dominguez, Alejandro | research on cost/fees issues, draft amended bill | 4.25 |
| 12/22/06 | Dominguez, Alejandro | finish bill of costs -- file | 2 |

**TOTAL HOURS:** 481.5

MLR hours as of 2:00 PM, 4/2/2007

## Billing for Arthur Loevy

| 3/26/04 | Meeting w/ JL & MK about whether to take new case (pros/cons) | .5 |
| 3/29/04 | review documents regarding Dominguez case and confer w/ other lawyers re: decision | 2.0 |
| 4/16/04 | new client meeting w/ Mr. Dominguez & son | 2.5 |
| 4/23/04 | discuss w/ JL how to handle situation w/ statute running and no client | .5 |
| 7/14/04 | conf. w/ lawyers re: new retainer w/ Dominguez | .5 |
| 8/2/04 | discuss Complaint w/ Mark Reyes, incl. theories and facts | .5 |
| 8/4/04 | firm conference about how to proceed w/ discovery plan, including Kraus, etc. | 1.0 |
| 8/17/04 | firm conference w/ co-counsel about discovery plan, which Defendants and wits. to sue and which to contact | 1.0 |
| 8/19/04 | conference w/ M. Reyes re: motion to dismiss certain Defendants and theories | .25 |
| 9/5/04 | review pleadings re: Dominguez case, including recent discovery responses | 1.0 |
| 11/1/04 | Meeting w/ JL and MR regarding Lisa Kraus, strategies for approaching | .5 |
| 2/17/05 | discuss expert witnesses w/ JL & MR, incl. eyewitness testimony and psychologist | 1.0 |
| 3/29/05 | meeting w/ firm to discuss settlement & pos. of Waukegan insurance | .5 |
| 4/19/05 | deposition preparation conf. re: Mr. Hendley | .5 |
| 4/20/05 | assist preparation attend depo of Mr. Hendley | 7.0 |
| 5/17/05 | listen to Kraus Tape from Nevada and Disc. w/ co-counsel, incl. how to approach Ms. Kraus | 1.5 |
| 6/1/05 | conf. w/ JL & MR regarding Memo from Hendley's personnel file about his prior bad acts | .5 |
| 9/21/05 | review all documents from criminal file; transcript from Mr.Dominguez' criminal trial; etc. | 5.0 |

| | | |
|---|---|---|
| 9/22/05 | prepartion to take Lisa Kraus Dep; review file, discovery, & documents; confer w/ co-counsel | 5.0 |
| 9/23/05 | Prep and take Deposition of Lisa Kraus | 6.0 |
| 9/24/05 | memo to file re: Kraus dep. for Wells report | 1.0 |
| 11/1/05 | prepare and take deposition of Ofr. Sutterland | 3.0 |
| 11/30/05 | meeting w/ co-counsel re: discovery issues & witnesses | .5 |
| 2/1/06 | review final pretrial order, discuss w/ co-counsel | 2.0 |
| 2/14/06 | review all expert reports for Dominguez case comments to co-counsel | 3.0 |
| 2/17/06 | conf. w/ co-counsel regarding Final Pretrial conference & trial strategy, incl. who will be trial counsel; | .5 |
| 3/21/06 | review Judge Shadur's order regarding the motions in limine; discuss w/ co-counsel | .5 |
| 3/27/06 | meeting w/ co-counsel about psych issues for client; review all motions in limine and responses; | 1.5 |
| 6/12/06 | conf. w/ client and counsel about need whether to recommend judgment purchase | 1.0 |
| 9/7/06 | firm meeting re: trial strategy; discuss dr. depositions; prepare to take/defend same | 1.5 |
| 9/8/06 | meeting w/ JL and MR regarding Ms. Kraus; attempt to contact; strategy re how to handle | 1.0 |
| 9/22/06 | review final Pretrial & exhibits, assist prep of trial strategy; meet w/ Dominguez about his testimony at trial | 2.0 |
| 9/27/06 | assist in meeting w/ Dominguez, sister, father, mother, regarging trial testimony etc. | 1.0 |
| 9/29/06 | discussion w/ firm regarding new counsel and implications for trial and settlement | .5 |
| 10/1/06 | observe and assist mock cross-examination of Mr. Dominguez | 1.0 |
| 10/2/06 | practice opening statemnt w/ Danielle & Jon Loevy; feedback and comments | 4.0 |

| 10/3/06 | attend openings; go to Ms. Kraus' hotel to attempt to interview her | 5.0 |
|---|---|---|
| 10/6/06 | firm meeting about trial week and themes for for the jury based on observations at trial; meeting w/ Richard Brzezack re: testimony | 2.0 |
| 10/15/06 | mock closing argument with JL, DL, MR; make suggestions and additions/deletions | 2.0 |
| 10/16/06 | attend trial and closing arguments; disc. Defendants' mistrial motions w/ co-counsel | 5.0 |
| 10/17/06 | present in court for jury verdict | 1.0 |
| 10/20/06 | meeting about settlement and fee issues | .5 |
| 10/27/06 | meeting about bond issue; review motions concerning bond issue & post-trial motion; discuss motions w/ JL | 2.0 |
| 10/31/06 | Defendants' substitute lawyers motion, review and discuss implications w/ MR & JL | .5 |
| 11/1/06 | conference w/ Andy Thayer re: review of bills of Vollen, Wells, Kupers, etc. | .5 |
| 11/9/06 | review Jon Loevy's response to the post-trial motion & assist w/ suggestions; discuss edits w/ other lawyers | 3.0 |
| 11/13/06 | conference w/ JL re: post-trial motion hrng. discuss implications for settle/bond/etc. | .5 |
| 11/29/06 | conference w/ co-counsel about new lawyers and change in strategy on indemnification | .5 |
| 12/1/06 | conference w/ co-counsel about disposition of post-trial motion and bond issue | .5 |
| 1/7/07 | review time sheets & assemble for production to opposing counsel | 1.0 |

85.25

TIME FOR DANIELLE LOEVY

| 9/21/06 | review Dominguez file to prepare for trial; FPTO, all discovery, criminal file, client history bearing on damages, incl. psych reports | 9.0 |
|---|---|---|
| 9/22/06 | review Dominguez file to prepare for trial; FPTO, all discovery, criminal file, client history bearing on damages, incl. psych reports | 9.0 |
| 9/24/06 | focus group re: fact pattern for insights for discussion w/ JL | 1.0 |
| 9/27/06 | meeting w/ Mr. and Ms. Dominguez, plus siblings and parents re: damages for trial | 4.0 |
| 9/28/06 | draft Heidi examination; edits after disc. w/ JL | 3.0 |
| 10/1/06 | assist trial prep; pc w/ Heidi Dominguez re: exam; practice Kraus & Hendley cross w/ JL | 8.0 |
| 10/2/06 | opening statment drill w/ co-counsel w/ edits; pc w/ Heidi Dominguez re: exam; practice Kraus & Hendley cross w/ JL | 8.0 |
| 10/3/06 | attend trial; assist w/ exams and prep; assist w/ witness management & preparation; meetings w/ Dominguez family; assist prep cross w/ JL and MR; conf. w/ H. Dominguez re: direct exam about damages | 9.0 |
| 10/4/06 | attend trial; assist w/ exams and prep; assist w/ witness management & preparation; meetings w/ Dominguez family; assist prep cross w/ JL and MR; conf. w/ H. Dominguez re: direct exam about damages | 9.0 |
| 10/5/06 | attend trial; assist w/ exams and prep; assist w/ witness management & preparation; meetings w/ Dominguez family; assist prep cross w/ JL and MR; conf. w/ H. Dominguez re: direct exam about damages | 9.0 |
| 10/6/06 | attend trial; assist w/ exams and prep; assist w/ witness management & preparation; meetings w/ Dominguez family; assist prep cross w/ JL and MR; conf. w/ H. Dominguez re: direct exam about damages | 5.0 |

| | | |
|---|---|---|
| 10/10/06 | attend trial; assist w/ exams and prep; assist w/ witness management & preparation; meetings w/ Dominguez family; assist prep cross w/ JL and MR; conf. w/ H. Dominguez re: direct exam about damages | 9.0 |
| 10/11/06 | attend trial; assist w/ exams and prep; assist w/ witness management & preparation; meetings w/ Dominguez family; assist prep cross w/ JL and MR; conf. w/ H. Dominguez re: direct exam about damages | 9.0 |
| 10/12/06 | attend trial; assist w/ exams and prep; assist w/ witness management & preparation; meetings w/ Dominguez family; assist prep cross w/ JL and MR; conf. w/ H. Dominguez re: direct exam about damages | 9.0 |
| 10/13/06 | attend trial; assist w/ exams and prep; assist w/ witness management & preparation; meetings w/ Dominguez family; assist prep cross w/ JL and MR; conf. w/ H. Dominguez re: direct exam about damages | 7.0 |
| 10/14/06 | review jury instructions w/ Mike K. and Mark | 3.0 |
| 10/17/06 | discuss questions and verdict w/ co-counsel and client | 1.0 |
| 11/9/06 | review Defendants' post-trial motion, motion for bond; review Plaintiff's response to both w/ edits for JL | 4.0 |
| 1/7/07 | compile time for submission | 1.0 |

117

Jon Rosenblatt time for Dominguez

| Date | Description | Hours |
|---|---|---|
| 3/17/6 | Review MIL; research "Collateral Source" issue | .75 |
| 10/10/6 | Research and memo re: "Complaining Witness Exception" issue' conf w/JL | 3.75 . |
| 10/6/6 | research add'l J.I. Due Process/Sugg. Line-up conf w/JL re: same | 2.25 |
| 10/9/6 | assist w/Dominguez prep/mock exam | 3.25 |
| 10/13/6 | Review Jury Instructions; conf w/JL re: same | 1.25 |
| 10/20/6 | Research/Review comparable verdict chart | 2.75 |
| 11/7/6 | Research post-trial issues re: Suggestive line-up; Brady; conf. w/JL | 4.75 |
| 11/8/6 | Research post-trial issues re: Brady; proof final; conf. w/JL | 1.25 |
| 12/27/6 | Compile time | .50 |
| | | 20.50 |

Time billed by Michael Kanovitz for work on <u>Dominguez v. Hendley</u>

| Date | Description | Time |
|------|-------------|------|
| 3/26/04 | Conf JL, AL re new case | .25 |
| 2/16/05 | Conf MLR re use of identification evidence expert | .25 |
| 3/27/05 | Conf JL re obtaining docs from federal entities/Touhy reg requirements | .5 |
| 3/29/05 | Conf AL, JL re insurance coverage for Waukegan | .5 |
| 1/17/06 | Conf MLR Kupers report | .25 |
| 1/20/06 | Rev draft Kupers report, make changes and comment | 2.75 |
| 10/5/06 | Legal research re due process violation for unduly suggestive identification procedure, mens rea requirements for substantive due process claim in ID context, conf JL, MLR re jury instructions | 4.25 |
| 10/6/06 | Review Def's draft jury instructions re fair trial claim, research re elements of due process claim based on tainted ID; draft jury instructions, conf MLR, JL re same; meeting with JL et al re closings | 9.5 |
| 10/7/ 06 | Conf JL re proofs under due process ID legal theories, intent element, accepting Def's instructions | 1.25 |
| 10/13/06 | Legal research re separation of claim for admission at trial of a pretrial tainted ID from claim based on tainted in-trial ID versus pretrial subsumed by in-trail ID; Conf JL MLR re jury instructions, rev instructions | 5.75 |

Total:   25.25

**Kathleen's Hours**

| Month | Day | Time | Case | Description |
|---|---|---|---|---|
| October | 13 Friday | 1 | Dominguez | Sorting exhibits redwell files for MLR - making one file with all the exhibits |
| October | 18 Wednesday | 2 | Dominguez | researching "monstrously excessive" jury verdicts and large damage awards in wrongful conviction cases. |
| October | 19 Thursday | 1.5 | Dominguez | researching "monstrously excessive" jury verdicts and large damage awards in wrongful conviction cases. |
| October | 20 Friday | 5 | Dominguez | researching "monstrously excessive" jury verdicts and large damage awards in wrongful conviction cases. |
| October | 30 Monday | 2 | Dominguez | Reformatted compensatory awards exhibit |
| October | 31 Tuesday | 4 | Dominguez | Researched instances where showups were so suggestive they violated 4th amendmnment |
| November | 1 Wednesday | 3 | Dominguez | Researched instances where showups were so suggestive they violated 4th amendmment researching "monstrously excessive" jury verdicts and large damage awards in wrongful |
| November | 2 Thursday | 3 | Dominguez | conviction cases for JL |
| November | 2 Thursday | 4 | Dominguez | researching unconstitutional show up cases. |
| November | 6 Monday | 1 | Dominguez | researching unconstitutional show up cases. |

# Eilie's Hours

| Date | Task | Time |
|---|---|---|
| 11/1/2005 | schedule court reporter for Burton Sutterlund | 0.10 |
| 11/30/2005 | elec. filing - mot. For setting trial date - courtesy & service copies | 0.25 |
| 2/1/2006 | package sent to Noonan via UPS containing copies of two expert reports for the case | 0.25 |
| 2/13/2006 | schedule court reporter for Burton Sutterlund, Perry Smith, Robert Kerkorian, Steven Anderson | 0.10 |
| 2/16/2006 | assembled and copied documents, put together package to send to Dr. Gary Wells | 0.50 |
| 2/22/2006 | contact with various personnel at the governor's office to obtain a copy of Alejandro's pardon | 1.00 |
| 2/28/2006 | letter to Alejandro Dominguez with copies of his responses to interrogatories for his review | 0.50 |
| 3/14/2006 | letter to Noonan with attachment sent via UPS containing a copy of the Petition for Executive Clemency Based on Actual Innocence | 0.50 |
| 3/27/2006 | letter to Noonan with documents regarding Kupers - copies of file | 1.00 |
| 3/31/2006 | elec filing - resp. to mot in limine - courtesy & service copies | 0.25 |
| 4/4/2006 | package sent to Vollen via UPS, assemble file for Vollen | 0.25 |
| 4/10/2006 | letter to Noonan with Vollen's report - copies | 1.00 |
| 5/3/2006 | copied documents, put together package to send to Dr. Gary Wells | 0.50 |
| 5/11/2006 | arranged courier to take documents to federal court regarding delivering Judge's courtesy copy | 0.10 |
| 5/15/2006 | letter to Joe Chervin with attachment regarding the Order to Produce Probation Documents | 0.25 |
| 6/8/2006 | elec. filing - mot continue trial date - courtesy & service copies | 0.25 |
| 7/5/2006 | letter to Noonan with attachments of Kupers' report of Dr. Cavanaugh about Dominguez | 0.25 |
| 7/26/2006 | schedule court reporter for James S. Glennon | 0.10 |
| 8/11/2006 | schedule court reporter for James S. Glennon | 0.10 |
| 8/16/2006 | drive to waukegan to look at Dominguez case file, look through file, copy documents from criminal file | 3.50 |

| Date | Description | Hours |
|---|---|---|
| 9/5/2006 | travel to federal records center to look through cases with Paul Hendley as defendant, pull documents needed copied | 4.00 |
| 9/13/2006 | schedule court reporter for James Cavanaugh, Orest Wasyliw | 0.10 |
| 9/18/2006 | begin research to locate people to testify at trial, meet with PI to help locate people, online search through databases to find exact locations of witnesses. | 3.00 |
| 9/18/2006 | research to get information on the location of Michael Stevenson, sent subpoena and letter to Naval Investigative Service, talked to various people to find exact location to send subpoena | 3.00 |
| 9/18/2006 | research to locate James Elliot, multiple phone calls to military talking to various people to discover where exactly to send subpoena and how they accept service, create subpoena, draft letter, serve opposing counsel | 4.00 |
| 9/19/2006 | packages sent to Dr. Oriatti, James Elliot, Naval Investigative Services via UPS containing their information for testifying at trial and witness fee checks | 0.25 |
| 9/20/2006 | research to locate Newt Tench, create subpoena, serve opposing counsel | 1.00 |
| 9/20/2006 | drafted, re-drafted letter to James Elliot to inform him of subpoena and wanting him to testify | 1.00 |
| 9/20/2006 | create and send subpoenas to Margaret Zyk, Kim Sprowle, Bert Setterlund, Steven Anderson, Perry Scott Smith, Robert Lee Carter, Douglas Zeit, David Asma, Louis Archbold, Michael Stevenson, and notify opposing counsel | 4.00 |
| 9/21/2006 | Contact B & R Services to serve subpoena, wrote letter in regards to the service of the subpoena, sent via UPS | 2.00 |
| 9/21/2006 | package sent UPS to Carter | 0.25 |
| 9/22/2006 | arranged courier to take documents to federal court regarding delivering Judge's courtesy copy | 0.10 |
| 9/22/2006 | spoke with Tench's wife and was told that he is in jail in Kenosha   begin research to get subpoena to him to come testify.  Spoke with people at Kenosha Jail to comply with their rules for getting Tench to Chicago | 3.00 |
| 9/22/2006 | research to locate D. Cobb, create subpoena, find process server to serve subpoena, serve opposing counsel | 2.00 |
| 9/25/2006 | elec filing - mot amend/correct pretrial order - courtesy & service copies | 0.50 |
| 9/25/2006 | speak with Laurie Vollen to plan travel, book Vollen's flight and hotel | 1.00 |
| 9/27/2006 | phone calls to Kathy Pinzone to arrange travel to Chicago and where to send subpoena for appearance at trial, serve opposing counsel, book hotel and flight; conference with Pinzone regarding Kraus | 3.00 |

| | | |
|---|---|---|
| 9/26/2006 | Research to locate Lisa Pinzone, phone calls, create subpoena | 2.00 |
| 9/26/2006 | research to locate all lake county state's attorneys, phone calls to retreive address, create subpoena, serve opposing counsel | 2.00 |
| 9/27/2006 | research to locate Ronald Hauri, phone calls, create subpoena, serve opposing counsel | 1.00 |
| 9/28/2006 | letter to Michael Stevenson to give him information on travel and check for transporation, sent by UPS | 0.50 |
| 9/29/2006 | speak with Terry Kupers to plan travel, book flight and hotel | 1.00 |
| 9/29/2006 | speak with Michael Stevenson to plan travel, book flight and hotel | 2.00 |
| 9/29/2006 | organize file to be ready for trial, make sure documents are easily accessable for attorney, all documents that are needed are in file | 4.00 |
| 9/29/2006 | organize interpreter for trial for Dominguez and family | 1.00 |
| 9/29/2006 | Contacted Bombet & Associates to serve subpoena on James Elliot, wrote letter in regards to the service of that subpoena | 1.50 |
| 9/29/2006 | trial document preparation, exhibit preparation, copying | 5.00 |
| 9/29/2006 | arranged courier to take documents various places | 0.20 |
| 10/6/2006 | letter to Kim Sproule with check for testimony | 0.25 |
| 10/6/2006 | travel to federal records center to look through cases with Paul Hendley as defendant, pull documents needed copied | 3.00 |
| 10/20/2006 | copied documents and wrote letter to Alejandro Dominguez | 0.25 |
| 11/9/2006 | elec filing - resp to combined posttrial motion - courtesy & service copies | 0.25 |
| 12/18/2006 | organize file and count papers to be ready for attorney's fees | 2.00 |
| | Total | 68.90 |

| DATE | TASK | TIME |
|---|---|---|
| 5/3/2006 | Prepare Lake Cty. Dept. Health Subpoena, contact office to find out service options, send cert. mail, serve opp. Council with not. of sub. | 0.50 |
| 2/1/2006 | Prepare North IL Police Crime Lab Subpoena, send cert. Mail, serve opp. Council | 0.50 |
| 5/5/2006 | Prepare Lake Cty. Adult Probation Services Subpoena, send cert. Mail, serve opp. Council | 0.50 |
| 4/26/2006 | Prepare Health Reach Clinic Subpoena, send cert. Mail, serve opp. Coucil | 0.50 |
| 4/26/2006 | Prepare Dr. Daram Reddy Subpoena, send cert. Mail, serve opp. Council | 0.50 |
| 6/16/2005 | Prepared Perry Smith Subpoena, send cert. Mail, serve opp. Council | 0.50 |
| 10/28/2006 | Attempting to locate Cmdr. James Elliot, address search, people search, military database search, phone calls to military bases | 2.00 |
| 9/20/2006 | Attempting to locate Margaret Zyk, contacted juvenille detention center, spoke with several employees re: retirement | 1.00 |
| 9/20/2006 | Attempting to locate Kim Sprawle, contacted juv. Detention center, determined employment dates | 1.00 |
| 9/19/2006 | Westlaw Case Research re: any previous cases involving Paul Hendley, previous cases with Waukegan PD | 2.50 |
| Sep-06 | Wrote letter to Noonan, re: expert reports | 0.25 |
| 9/7/2006 | Located expert reports from file to produce to Noonan | 1.00 |
| 3/10/2006 | Compiled documents for expert witness, Brzeczek | 1.00 |
| 4/13/2005 | Filed motion to compel, service copies, courtesy | 0.50 |
| 6/21/2005 | Filed motion for entry of HIPPA, serv. Copies, courtesy | 0.50 |
| 3/17/2006 | Filed mot.in limine, serv. Copies, courtesy | 1.00 |
| 5/10/2006 | Filed plain. Agreed mot. For entry of an order to prod. Prob.doc. | 0.50 |
| 9/21/2006 | Filed mot. For issuance order , serv. Copies, courtesy | 0.50 |
| 9/25/2006 | Filed mot. Compel prod.witnesses, serv. Copies, courtesy | 0.50 |
| 9/28/2006 | Trial document prep, locating docs., organizing, copies for judge, jury, opp. Council | 3.00 |

| | | |
|---|---|---|
| 9/29/2006 | Exhibit prep, locating, organizing, copies for judge, jury, opp. Council | 4.00 |
| 9/29/2006 | Locating trial exhibits, labeling, organization | 3.00 |
| 11/1/2006 | Filed resp. misc. relief, service copies, courtesy | 0.50 |
| 9/29/2006 | Travel arrangements, Gary Wells. Spoke several times regarding dates, testimony dates shifted, booked flight, had to re-book flight for diff. date, arranged hotel accomodations and adjusted as needed | 2.00 |
| 10/11/2006 | Re-organizing and copying trial documents | 1.00 |
| 9/15/2005 | Heather,attempting to locate Lisa Kraus, name searches, private investigator contacts, spoke with Kraus, interviewed and arranged for deposition date. Made flight and hotel arrangements for Lisa Kraus dep | 4.00 |
| 12/12/2005 | Travel arrangements for Alejandro to meet with Kupers, CA, arranged transportation for arrival and coordinated schedules between Alejandro and Kupers | 1.00 |
| 12/26/2005 | Travel arrangements for expert witness, Howard Adelman. Booked flight and arranged hotel accomodations | 1.00 |
| 9/22/2005 | Picked up Lisa Kraus from hotel, waited for her to meet in lobby, and drove her to office for deposition | 2.00 |
| 9/27/2006 | Sent UPS package to Lisa Kraus | 0.10 |
| 12/20/2005 | Copied documents for expert witness Terry Kupers, sent via UPS | 0.50 |
| 9/27/2006 | Arranged for courier to deliver documents to Federal Courthouse and opposing council | 0.10 |
| 3/31/2006 | Arranged for courier to deliver documents to Federal Courthouse | 0.10 |
| 2/15/2006 | Arranged for courier to deliver documents to Clerk of Court | 0.10 |
| 3/21/2006 | Arranged for courier to deliver documents to Clerk of Court | 0.10 |
| 6/8/2006 | Arranged for courier to deliver documents ot Clerk of Court | 0.10 |
| 9/13/2006 | Pre-arranged for court reporter to appear for depositon, Orest Wasyliw, Ph.D. | 0.10 |
| 7/31/2006 | Pre-arranged for court reporter to appear for depositon, Dr Cavanaugh | 0.10 |
| 9/12/2006 | Pre-arranged for court reporter to appear for depositon, Richard Brzeczek | 0.10 |

| | | |
|---|---|---:|
| 7/5/2005 | Pre-arranged for court reporter to appear for depositon, Perry Smith | 0.10 |
| 9/23/2005 | Pre-arranged for court reporter to appear for depositon, Lisa Kraus | 0.10 |
| 6/16/2005 | Pre-arranged for court reporter to appear for depositon, Louis Archbold | 0.10 |
| Nov-05 | Copy and bates stamp 381 documets for Initial Disclosure | 2.00 |
| 10/26/2005 | Pre-arranged for court reporter to appear for deposition, Mike Leusch, William Biang, Robert Kerkorian | 0.10 |
| | | 40.55 |

# Dominguez hours -- AT

| | |
|---|---|
| 8/2/04 | Dominguez, 0.5 hours, filing of amended complaint |
| 8/18/04 | Dominguez, 0.75 hours, filing plaintiff's motion for leave to add and drop parties |
| 9/9/04 | Dominguez, 0.75 hours, finding process server for out of state subpoena, writing letter re: same |
| 2/16/05 | Dominguez, 0.75 hours, copying and sending PD documents to Gary Wells |
| 2/20/05 | Dominguez, 0.5 hours, preparing and serving subpoena to Lake County State's Attorney |
| 3/17/05 | Dominguez, 0.5 hours, preparing and serving subpoenas |
| 3/28/05 | Dominguez, 0.5 hour, filing plaintiff's motion for issuance of subpoena or order compelling production of documents from 3rd party |
| 4/13/05 | Dominguez, 0.5 hours, delivering copies of summons to court |
| 4/13/05 | Dominguez, 0.5 hours, preparing and serving summons to Lake County Public Defender |
| 5/3/05 | Dominguez, 0.25 hours, Memorandum in Support of Plaintiff's Motion to Compel the Lake County State's Attorney to Comply with Subpoena |
| 5/4/05 | Dominguez, 0.5 hours, prepare and serve subpoenas |
| 5/25/05 | Dominguez, 0.5 hour, preparing subpoenas |
| 6/29/05 | Dominguez, 0.5 hours, preparing and serving subpoena on St. Therese Medical Center |
| 7/15/05 | Dominguez, 0.25 hours, preparing and serving subpoena on St. Therese Medical Center |
| 9/27/05 | Dominguez, 0.25 hours, preparing and sending out Newt Tech, Bert Setterlund and Steven Anderson subpoenas for process service |
| 10/25/05 | Dominguez, 0.75 hours – Prepare and service for Steven Anderson, Bert Sutterland and Newt Tench subpoenas |
| 12/20/05 | Dominguez, 0.5 hours: Photocopying and overnighting materials to expert witness Terry Kupers |
| 4/4/06 | Dominguez: 0.5 hour, expenses computation |
| 9/28/06 | Dominguez: 0.75, running jury instructions down to court |
| 10/2/06 | Dominguez: 1.5, preparing and shipping press release re: opening arguments |
| 10/3/06 | Dominguez: 1.5, press work |

| | | |
|---|---|---|
| 10/17/06 | Dominguez: | 3 5, press work |
| 10/18/06 | Dominguez: | 2.5, press work |
| 10/23/06 | Dominguez: | 0.25, follow up with Trib report Andrew Wong re: arrest report and Gary Wells |
| 11/7/06 | Dominguez: | 5 5, bill of costs |
| 11/10/06 | Dominguez: | 2 5, editing and filing bill of costs |

**Total Hours:** 27.75

## AFFIDAVIT OF S. ALEJANDRO DOMINGUEZ

I, S. Alejandro Dominguez, under penalties of perjury as provided by law, depose and state as follows:

1. I am over 18 years of age.

2. I am the Plaintiff in Dominguez v. Hendley, 04 C 2907, in the United States District Court for the Northern District of Illinois.

3. I work as a legal assistant at Sin Fronteras, a non-profit organization that helps immigrants.

4. Before my case was filed had great difficulty in finding competent counsel to represent me in my claims.

5. I contacted at least five lawyers before Loevy & Loevy agreed to represent me in my case.

6. I initially asked Jed Stone to represent me, but he would not accept the civil case, although he did help me clear my name in the criminal case.

7. I also contacted the law firm of Cochran and Montgomery, but they would not agree to represent me in a civil case.

8. Twice I contacted the Northwestern University School of Law to seek representation from for my case, but I was first told that they could not help me find anyone. After my case was filed, I was told to contact Loevy & Loevy.

9. Just before the statute of limitations was set to expire in April 2004, the lawyer who I work with in my job at Sin Fronteras, Chris Bergen, agreed to file the case but he could not finish the case because he does not have the experience to handle the type of case I had.

10. Finally, after the case was filed, I was able to hire Loevy & Loevy who took the case and litigated it to trial and verdict.

_3/27/07_
Date

_S. Alejandro Dominguez_
S. Alejandro Dominguez



EXHIBIT
C

Westlaw.                                                       NewsRoom

2/6/07 Chi. Trib. 3
2007 WLNR 2256516

CHICAGO TRIBUNE
Copyright 2007 Chicago Tribune Company

February 6, 2007


Section: Business


Biggest Chicago firms boosting 1st-year pay

Ameet Sachdev

Chicago's biggest law firms are matching starting **salaries** recently raised by their New York counterparts--to a degree.

Two of the city's standard-bearers, Sidley Austin and Mayer, Brown, Rowe & Maw, announced last week that they are increasing first-year associate pay to $160,000 in New York. But in Chicago and elsewhere, **salaries** will rise $10,000, to $145,000.

In an internal memo, Sidley's management committee explained the difference "as a reflection of market and cost-of-living factors." **Salaries** of more experienced associates at Sidley also went up in lock-step fashion.

With leading players establishing a $145,000 base rate here, other big firms are expected to follow suit, if they haven't already, industry experts said.

While these firms generally recruit only the best and brightest from the nation's top law schools, the salary increases are not sitting well with the corporate clients who pay the legal bills.

"People are, frankly, disgusted by it," said Susan Hackett, senior vice president of the Association of Corporate Counsel, a legal group representing **attorneys** who work in-house for companies. "The increase has nothing to do with the value provided."

She expects law firms to raise the **billing rates** to compensate for their increased labor costs. On a per-hour basis, a $145,000 salary roughly equals $200 to $250 an hour.

Most fresh law-school graduates are relegated to doing legal research, drafting

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT

D

motions and other grunt work.

"The idea that those folks are worth $200 an hour is mind-boggling," Hackett said.

She expects some companies to rebel by asking law firms to outsource research and what they consider other menial tasks to legal vendors who charge half as much.

The increase in pay also makes associates more vulnerable to layoffs if work slows down, legal recruiters said.

Frustration with the law-firm salary structure is building because starting pay went up just a year ago. Increases used to come every five years or so.

Chicago law firms are reluctant to talk about associate **salaries**, other than to say they recognize the need to remain competitive in recruiting. The silence indicates, to some, that the firms are not happy with the increases either but don't want to create a perception of not appreciating their young lawyers.

One legal consultant said the firms are having to swallow a bitter pill.

"You're told you have a disease and you have to treat it, but you just don't want to do it," said Kay Hoppe, president of Credentia Inc.

BRIEFLY: Adrienne Pitts joined Sidley's litigation practice from Winston & Strawn, where she was one of the **attorneys** defending former Gov. George Ryan in his recent seven-month corruption trial. ... Jeffrey Paquin joined Abbott Laboratories Inc. as chief operations counsel. He was senior partner at the Atlanta firm of Paquin Victor. ... Howrey named David Clough managing partner of its Chicago office. ... Paul, Hastings, Janofsky & Walker hired another lawyer from Jones Day for its Chicago office, recruiting bankruptcy lawyer Paul Harner.

----------

asachdev@tribune.com

COLUMN: INSIDE THE LEGAL PROFESSION

                    ---- INDEX REFERENCES ----

COMPANY: ABBOTT LABORATORIES

INDUSTRY:  (Legal Services (1LE31); Accounting, Consulting & Legal Services (1AC73))

REGION:  (USA (1US73); Americas (1AM92); Illinois (1IL01); North America (1NO39); New York (1NE72))

Language:  EN

OTHER INDEXING:  (ABBOTT LABORATORIES INC; ASSOCIATION OF CORPORATE COUNSEL; BIGGEST CHICAGO; BRIEFLY; CHICAGO; COLUMN; CREDENTIA INC; PAQUIN VICTOR) (Adrienne Pitts; David Clough; Frustration; George Ryan; Hackett; Howrey; Janofsky

                © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2/6/07 CHICAGOTR 3                                          Page 3

Walker; Jeffrey Paquin; Kay Hoppe; Paul Harner; Rowe Maw; Sidley; Susan Hackett)

KEYWORDS: CHICAGO; LAW; BUSINESS; SALARY; INCREASE

EDITION: Chicagoland Final

Word Count: 618
2/6/07 CHICAGOTR 3
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



# LAW.COM LARGE LAW FIRM

Select 'Print' in your browser menu to print this document.

©2007 ALM Properties, Inc.

Page printed from: http://www.law.com/jsp/llf/index.jsp

Back to Article

## Compensation Survey Shows Lofty Rewards for Firms

Carl Jones
Daily Business Review
September 29, 2006



Miami attorney Eugene Stearns may prove true the old cliche about getting what you pay for.

The plaintiffs attorney is credited with taking a teetering case against ExxonMobil and turning it around to win his clients a $1.1 billion judgment.

After the verdict, Stearns and other firms who worked on the 15-year-old case brought against the oil company by gas station owners battled over what they should be paid.

Stearns asserted his firm was instrumental in winning a case that was bogged down and going nowhere when his firm signed on 10 years ago.

U.S. District Judge Alan S. Gold agreed. He threw out a fee agreement signed when Stearns first joined the case in 1996 and awarded his firm $249 million in fees, more than triple what the firm would have received under the agreement.

In the July fee ruling, Gold called Stearns' work in the case "groundbreaking" and "highly skilled."

But Stearns is a pricey lawyer to have on your side, billing $700 an hour, the highest fee found for a south Florida attorney in the *Daily Business Review*'s first annual lawyer billing survey.

The survey found that the hourly rates of south Florida law firm partners generally range from $300 to $500, while associates generally bill between $150 and $350. But rates of some senior partners were much higher.

The *Review* examined dozens of federal and state court files, including bankruptcies, breach of contract complaints, fraud and other kinds of civil disputes in which attorneys filed fee requests with the court. The survey found hourly billing rates for more than 350 lawyers.

At the highest billing levels were partners at Greenberg Traurig and Stearns Weaver Miller Weissler Alhadeff & Sitterson.

Stearns said his firm's rates, although higher than others, reflect strong market demand for his firm's services. "We turn away work every day, and therefore I've concluded that the market is responding to the appropriateness of the rates that we charge," he said.

Greenberg said in court documents that its partners, including those in other locations, billed as much as $750 an hour. But Greenberg chief executive Cesar Alvarez said the firm's most expensive local partners bill $600 an hour.

The highest-billing Greenberg partner found by the *Review* in court filings was Miami attorney Mark Bloom, who billed $595 for representing a trustee in a bankruptcy case. Bloom is co-chair of Greenberg's national bankruptcy practice.

Alvarez defended the firm's rates, saying his attorneys are highly experienced, are available around the clock and provide excellent service.

"When you're dealing in big matters such as the ones that firms like us get involved in, the fee is not really the most important factor," Alvarez said. "The most important factor is to provide the expertise, 24/7."

Also in the top tier were firms such as Morgan, Lewis & Bockius in Miami, where partner Roger Kent billed $650 an hour. He charged that rate in defending technology company Cisco Systems against a breach of contract complaint that eventually was settled.

Bilzin Sumberg Baena Price & Axelrod said in court documents that its partners charged clients as much as $625 an hour. But the *Review* only found partner Mindy Mora's declaration that she charged $460 for her work on Chapter 11 bankruptcy cases.

Greenberg Traurig also boasted the priciest associates. Senior associates at that firm charged from $400 to $500 an hour for commercial litigation and bankruptcy cases. That was more than most partners in south Florida charged.

Recent surveys by two of the *Review*'s affiliate publications indicate that south Florida senior partners generally bill less than those in New York City and Washington, D.C. But local attorneys aren't that far behind.

*The National Law Journal* reported last December that one partner at Venable's Baltimore office, former U.S. Attorney General Benjamin Civiletti, charges $1,000 an hour. A June survey of 2005 billing rates by the *Daily Report* in Atlanta found some Manhattan firms billing more than $900 an hour, while some attorneys in Washington, Chicago and several foreign cities billed between $800 and $900 per hour.

South Florida's rates for top partners are more in line with business hubs like Chicago and Atlanta. In comparison, four top-billing Atlanta partners in the *Daily Report*'s survey charged from $610 to $645. The average hourly rate charged by the 120 Atlanta partners surveyed was $387. Atlanta associates averaged $243 an hour.

Stearns said the gap between south Florida and top markets like New York is even wider for paralegals. According to the *Review* survey, paralegals in south Florida bill as low as $75 per hour and as high as $200. Paralegals, like attorneys, typically can increase their rates as they gain experience.

The *Review* survey findings indicate what lawyers at large, medium and small law firms, as well as those in solo practice, charged clients in particular cases over the last year. The attorneys range from the most senior partners to young associates, but the survey is not comprehensive. The listed rates may or may not be typical for those lawyers, and special reduced rates or fee arrangements are common practice.

Because the U.S. Bankruptcy Code requires that lawyers attest to their usual and customary hourly billing rates, the rate data from bankruptcy filings are considered reliable. That's the source of most of the *Review* data.

Stearns and other managing partners say that looking solely at hourly rates is not a good way to shop for attorneys because a senior partner, who bills at a higher rate than an associate, might be able to complete a task or come up with a solution in a fraction of the time it would take a less-experienced lawyer.

James M. Miller, managing partner of Akerman Senterfitt's Miami office, whose lawyers were not among the top billers, also defended the high rates charged by some south Florida lawyers, saying clients get what they pay for.

"The sophisticated clients are really results-oriented, and they're less interested in what the hourly rate is than the results obtained and the total cost at the end of the engagement," Miller said.

The Akerman partners whose billings were found by the *Review* charged between $300 to $350 an hour.

**LESS PRICE-SENSITIVE**

A variety of payment schemes are available to clients, including contingency fee agreements, flat-fee charges or hybrid arrangements. Still, attorneys' hourly rates are a helpful baseline for clients in understanding legal fees in the south Florida market.

The survey found that south Florida attorneys with similar years' experience in their practice areas generally bill at hourly rates within $100 of each other. But rates spike up for attorneys at the highest levels of experience and reputation as well as for those in the most specialized practices

If a piece of legal work is routine and uncomplicated, it is considered by lawyers to be "commodity" work, such as general insurance defense, meaning that many attorneys can handle the matter and generally have to compete by offering a lower hourly rate.

"For specialized work and for quality work, price is less of a factor," said Alan Becker, a founding partner at Becker & Poliakoff in Fort Lauderdale. "At that point, the client is more interested in getting it done right, getting it done fast and getting value." The *Review* could not locate rates for any current Becker & Poliakoff partners, but did find two associates who billed at $275 and $325.

Some clients aren't necessarily put off by a lawyer's high hourly billing rate. It all depends on the lawyer, they say.

James Cassel, an attorney who founded Capitalink, a Miami financial services company that hires its own counsel, said hourly rates "have gotten to be quite, quite high." On the other hand, he said, it's critical for businesses like his to hire the right attorney for their specific legal needs -- even if that attorney costs more.

"All lawyers are not created equal," he said. Having the right lawyers on the case could cost more on the front end but end up saving millions by the time the case is over. "You could either have a $900 bill or a $4,000 bill, and chances are the $900 guy turns out to be more expensive."

Akerman's Miller said real estate work, securities litigation and other types of commercial litigation are the areas of law that are in high demand in south Florida. That means attorneys in those areas probably will charge higher hourly rates than for attorneys in other areas of law.

"In those circumstances, clients can expect to pay a premium, and they're willing to and they want to pay a premium because they want it done and they want it done right and they want it done now," Miller said.

Clients also are less price-sensitive when winning is a do-or-die matter. "You're not going to go to any law firm and hire anyone when your entire company is at risk," said Tucker Ronzetti, a partner at Kozyak Tropin & Throckmorton in Coral Gables, which focuses on complex bankruptcy and commercial law.

The *Review* survey found that former Kozyak Tropin partner Laurel M. Isicoff, who recently became south Florida's first female bankruptcy judge, billed at $450 per hour while founding partner Charles Throckmorton billed at $500.

**HOW RATES ARE SET**

Groups of partners and firm executives set the billing rates for each of their lawyers, based on the market for the lawyer's service, experience and quality of work.

Law firm leaders say they review the hourly rates for each attorney in the firm to make sure, for example, that rising stars who are doing work that's in high demand are billing appropriately and that all attorneys' rates parallel those of similar expertise at other firms.

Managing partners typically gather all this information and then use their experience and knowledge of the market to set what the executives believe is the right price for each attorney.

South Florida law firm leaders say they constantly strive to set their attorneys' hourly billing rates at levels that both maximize firm profits and don't drive clients away. Their analysis starts with the firm's cost structure, including factors such as space costs, employee compensation and benefits, malpractice insurance and technology.

Despite the image that attorneys work in extravagance, many managing partners say they are constantly trying to cut costs, just like every other business. The cuts help balance off inflation, rising employee benefit costs, soaring rent and other expenses.

"There's no firm against which I regularly compete, not one in our market, that doesn't experience an increase in malpractice rates, an increase in health insurance, rent and associate compensations," said Paul Singerman, co-chief executive of Berger Singerman in Miami.

Clients ultimately pay the price for increased law firm costs through higher billing rates. "You wait as long as you can, but you eventually have to pass some of it on," Becker said.

Singerman said he thinks rates will continue to rise due to the rising cost of doing business. "Frankly, I'm not sure

that there's much of an alternative," he said.

Even so, law firm leaders say they can't necessarily pass on all their rising costs to clients. They agree there is a threshold price where even sophisticated, deep-pocketed corporate clients might start looking for other representation. "Sometimes we do have to eat it," Ronzetti said.

Another major factor in setting hourly rates is how much competing south Florida law offices are charging for the work of comparable attorneys. Firms are constantly gathering intelligence about what competing firms are charging to determine whether they are at just the right point.

"If everybody is higher than you are, then you know you're not getting the proper return," Becker said. "If everybody is lower than you are, you're not going to get your market share."

Poor price-setting can be disastrous. Firms must calculate prices for both their commodity and specialized work. "We try to evaluate what our standard rate is and what we think is appropriate both for the market and the type of work that we do," said Jeffrey Lapin, a founding partner of the four-lawyer firm Lapin & Leichtling in Coral Gables. If those conditions have changed, a rate increase might be necessary. Lapin said he and his partner, Adam Leichtling, charge $300 an hour, while his two associates bill at $175.

Miller said lawyer billing information in court documents, along with anecdotal information, helps his firm ensure that its billing rates are in line with other similar firms. He said sometimes his firm realizes that its hourly rates are "out of balance," either too high or too low. Although that doesn't automatically mean Akerman will change its rates, the firm has to take a closer look.

"The biggest factor is what the market will bear and what other people are doing in the marketplace," Ronzetti said.

But law firm leaders say the final decision on each lawyer's hourly rate is a guess, albeit an informed one. "You have to look at a number of factors, and then you take a shot at what you think is best," Singerman said.

## BOUTIQUES CAN CHARGE MORE

In some cases, smaller firms can charge rates nearly as high as large firms.

That's particularly true if a firm can offer a specialized, high-quality service to a client that has one very specific legal need that not a lot of law firms can provide. The client can engage a boutique firm that focuses on that area of law. Its rates can rival those at larger firms.

Boutique firms say they rarely lose business charging high rates because clients know that their expertise is worth the extra money. "You have to either have a special value for the prices or you have to compete on price, and we're a value firm," Ronzetti said. The value comes in, Ronzetti said, when the firm helps companies in survival situations.

"The kind of clients that we're better suited to represent have a bigger picture of the representation and the value that a lawyer can bring to a dispute," Lapin said.

But law firm leaders say clients that have unusual, complex or intertwining legal problems should be prepared to pay higher rates. "In general, sophisticated clients are going to have sophisticated problems," said Brad Sprayberry, the executive in charge of recruiting for Gunster Yoakley & Stewart in West Palm Beach.

For example, during a bankruptcy proceeding, a debtor company may need contract specialists to interpret what responsibilities it has under its various agreements with suppliers, real estate lawyers to work out deals with landlords and commercial litigators to handle any other ongoing litigation that may affect a successful reorganization.

The larger firms say they offer a better value to clients when it comes to large cases that involve diverse areas of law. "One of the advantages of having some size is that you can put together the right type of people at the right price to get the desired outcome," Akerman Senterfitt's Miller said.

Critics say the large firms sometimes pile unnecessary lawyers onto a case, resulting in a higher total legal bill. But large firm leaders say they are careful to put together the right mix of associates and partners to ensure cost-effectiveness.

"In reality, our goal is to get the legal work to the person at the right level," Sprayberry said. "If our clients aren't happy, they're going to go to another law firm."

Miller agreed, saying that his firm tries to balance senior partners and associates. That's "so that you can accomplish

the objective in the shortest amount of time without sacrificing the outcome," he said.

No firms said that there is a shortage of legal work. Nevertheless, the large number of lawyers and law firms in south Florida helps keep hourly rates down.

*The National Law Journal* reported in December 2005 that hourly billing rates at 100 of the 250 largest U.S. law firms spiked upward between 2004 and 2005. Roughly three-quarters of the surveyed firms raised rates for partners and associates.

South Florida managing partners say rates are reviewed annually -- and most firms raise at least a few attorneys' rates every year. But not every attorney's rate will be raised every year.

Alan Becker argued that south Florida billing rates should be higher based on prices in the rest of the economy.

But law firms are afraid of losing business. "If it was keeping up with the forces of the economy, [rates] would rise even more," Becker said. "The biggest factor is timidity by lawyers."

Law firm executives predict that billing rates will continue to creep up but won't go up fast. "I don't see that rates are going to accelerate as quickly as they have in the past," Ronzetti said. "I think they're going to level off a bit because the economy is going to soften."

But Stearns said he isn't worried, regardless of what the economy does. "One good thing about being a lawyer is that it is essentially recessionproof," Stearns said. "There are good times and bad times, and lawyers tend to do well in both."

## Law Firms' Rising Billing Rates

By Anne O'Dell

**According to Rex Bossert, editor-in-chief of the legal newspaper *National Law Journal* (NLJ), attorneys' current billing rates are nothing out of the ordinary and are on par with what surgeons and professional athletes charge.**

However, the national media disagree.

Recently published NLJ survey results indicate that, for the first time, a partner in an American law firm is billing clients $1,000 per hour for his work. American news publications are fascinated.

The partner in question, Benjamin R. Civiletti—chair of Washington, DC-based law firm Venable, LLP—could not be reached for comment. However, James Shea, the managing partner of Venable, told NLJ, "That's a rate that he charges for the most extraordinary work."

Civiletti's record would suggest that his work is, indeed, extraordinary. In addition to his years of experience as a trial and appellate attorney and a pioneer in the field of private prosecution and internal investigation, he also served many years in the Justice Department and spent two years as Attorney General under President Jimmy Carter. In November, Civiletti received the American Judicature Society's 2005 Justice Award for "improving the administration of justice nationally."

NLJ quotes Ward Bower, an attorney at Philadelphia legal consulting firm Altman Weil.

"How many Ben Civilettis are there in the country? With his expertise and his contacts, his Rolodex alone must be one of the most impressive in the country.



ENLARGE

"Big-ticket litigation, hostile takeovers, internal investigation—the top people in those areas are billing at the highest rates. Those are bet-the-company types of work. [Companies] want the best, and they're willing to pay for the best."

Nevertheless, Shea doubts that Civiletti is the only partner currently charging a four-digit rate.

In last year's survey, the highest reported hourly rate for a partner was $875. This year, one unnamed Minneapolis associate reported a rate of $835. That Civiletti cannot be alone among the nation's top lawyers in charging a thousand-dollar hourly fee stands to reason.

Last year, Civiletti billed clients $810 per hour; the $190-per-hour jump is representative of industry trends.

Perhaps because of a vote of confidence in the 2004 stock market, most law firms across the country raised partners' business rates in 2005. In the NLJ's survey, 80 percent of firms that responded in 2004 and 2005 have increased their fees for partners, and 74 percent raised associates' fees.

However, there is still widespread resistance to raising rates to an extent that might be considered unreasonable by the general public. Some even suggest that law firms are exercising great restraint, even to their own detriment, in how they bill clients.

Joel Henning is a vice president and general counsel for Hildebrandt International, a law firm consultancy. He noted in NLJ, "Most of the high-end firms still have problems with partners in increasing their rates to [match] the market. Lawyers tend to be terrified of losing clients because of increased rates."

Henning also suggested that some of the increases may have been dictated in part by higher operating costs. Still, he was quick to add that most firms with decent management still increase their profits every year.

Aside from the notable large figures, the survey's results showed across-the-board increases and regional trends.

For example, Northeastern firms showed significantly higher increases than firms with main offices elsewhere. Holland & Knight, whose offices on the East Coast constitute a strong presence, showed a markup of $65 per hour for partners. Manhattan's Brown Raysman Millstein Felder & Steiner raised its billing rate by $75. Philadelphia-based Duane Morris boosted its rate by $40, and Edwards & Angell, with its largest offices in Boston and Providence, RI, increased its rate by $50. Each firm's high-end rate for partners now hovers around $600 per hour.

On the West Coast, hourly-rate billing increases were still present but less drastic than at East Coast firms. San Francisco firm Littler Mendelson's highest-paid partners elevated their rate by $45. Thelen Reid & Priest, also in San Francisco, raised its high-end partner rate by $25. Stoel Rives, which has its largest office in Portland, OR, boosted its rate with a $35 increase; and Los Angeles-based Sheppard, Mullin, Richter & Hampton upped its high-end partner rate by just $20. Overall, West Coast firms' rates ranged from $350 to just under $600.

According to Shea, Venable and other firms will continue to increase hourly rates based on the evolution of certain areas of practice; in other words, lawyers, like everyone else, are subject to the laws of supply and demand. The best lawyers will continue to charge just as much as the market will bear.
In Great Britain, however, attorneys' billing rates have already far exceeded those of their American counterparts.

"If you look at a multinational corporation, they're used to paying that much at London law firms," said Bower.

"They're charging six, seven hundred pounds, and when you convert the pound, those lawyers are charging over $1,000."

Print Detail  Close Window

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Alejandro Dominguez,               )
                                   )
        Plaintiff,                 )
                                   )
V.                                 )        Case No. 04 C 2907
                                   )
Paul Hendley,                      )        Honorable Milton Shadur
                                   )
        Defendant.                 )

## AFFIDAVIT OF BRADLEY S. BLOCK

I, Bradley S. Block, on oath and under penalties of perjury, state that I am over 18

years of age, and have personal knowledge of the following:

1.      I am currently Managing Counsel of Litigation of McDonald's

Corporation ("McDonald's"), located in Oak Brook, Illinois. I have been a member of the

Illinois bar since 1987. I have been a lawyer in McDonald's Litigation Practice Group, in

various capacities, since 1998. In those capacities, I regularly retain outside counsel and

review legal bills in order to approve them for payment.

2.      I will soon be leaving McDonald's Corporation to join the offices of

Loevy & Loevy as an attorney.

3.      In the course of my duties at McDonald's, I often have occasion to retain

outside counsel to litigate disputes on behalf of the company. In that capacity, I have

general familiarity with the current market for hourly rates of litigation lawyers in

Chicago, including those charged by litigation lawyers at a law firm that I have regularly

retained on behalf of McDonald's. I have been informed that 2007 rates for certain of the


EXHIBIT
E

Chicago lawyers at this firm. The law firm has approximately 200 lawyers in Chicago, as well as offices in other cities in the United States.

4. The 2007 rates of these Chicago lawyers are:

    a. Senior Partner (1964 graduate of Yale Law School): $685 per hour.

    b. Partner (1978 graduate of University of Michigan Law School, magna cum laude): $575 per hour.

    c. Partner (1992 graduate of University of Miami Law School, cum laude): $505 per hour.

    d. Associate (1999 graduate of University of Michigan Law School): $440 per hour.

Further affiant sayeth not.

_____
Bradley S. Block

Subscribed and sworn before me
This 29th day of March, 2007

_____
Notary Public

"OFFICIAL SEAL"
Erin P. Sloan
Notary Public, State of Illinois
My Commission Exp. 10/18/2009



# UNITED STATES ATTORNEY'S OFFICE
## FOR THE DISTRICT OF COLUMBIA

555 4TH STREET, NW
WASHINGTON, DC 20530
(202) 514-7566

SEARCH

HOME

U.S. ATTORNEY

ABOUT US

DIVISIONS

COMMUNITY
PROSECUTION

PROGRAMS
FOR YOUTH

VICTIM WITNESS
ASSISTANCE

PARTNERSHIPS

PRESS RELEASES

EMPLOYMENT

ESPAÑOL

CONTACT US

LINKS

SITE MAP

## LAFFEY MATRIX 2003 - 2006

| Experience | 03-04 | 04-05 | 05-06 |
|---|---|---|---|
| 20+ years | 380 | 390 | 405 |
| 11-19 years | 335 | 345 | 360 |
| 8-10 years | 270 | 280 | 290 |
| 4-7 years | 220 | 225 | 235 |
| 1-3 years | 180 | 185 | 195 |
| Paralegals & | 105 | 110 | 115 |
| Law Clerks | | | |

Years (Rate for June 1 - May 31, based on prior year's CPI-U)



EXHIBIT
F
tabbies

### Explanatory Notes

1   This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia  The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees  *See, e g* , 42 U S C  § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U S C  § 552(a)(4)(E) (Freedom of Information Act); 28 U S C  § 2412 (b) (Equal Access to Justice Act)  The matrix does not apply in cases in which the hourly rate is limited by statute  See 28 U S C  § 2412(d)

2   This matrix is based on the hourly rates allowed by the District Court in *Laffey v  Northwest Airlines, Inc* , 572 F  Supp  354 (D D C  1983). *aff'd in part, rev'd in part on other grounds*, 746 F 2d 4 (D C  Cir  1984), *cert  denied*, 472 U S  1021 (1985)  It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix " The column headed "Experience" refers to the years following the attorney's graduation from law school  The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more)  *See Laffey*. 572 F  Supp  at 371

3   The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates  *See Laffey*, 572 F  Supp  at 371 (attorney rates) & 386 n 74 (paralegal and law clerk rate)  The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D C  area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5)  The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant  Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore. DC-MD-VA-WV. as announced by the Bureau of Labor Statistics for May of each year

4   Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v  Hodel*, 857 F 2d 1516, 1525 (D C  Cir  1988) (en banc)  The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by



Last Updated on
01/16/2007

the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area  See *Covington v. District of Columbia*, 57 F 3d 1101, 1105 & n 14, 1109 (D C  Cir  1995), *cert. denied*, 516 U S  1115 (1996)  Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable  *See, e g , Blackman v  District of Columbia*, 59 F  Supp  2d 37, 43 (D.D C  1999); *Jefferson v  Milvets System Technology, Inc.*, 986 F  Supp  6, 11 (D D C  1997); *Ralph Hoar & Associates v  Nat'l Highway Transportation Safety Admin.*, 985 F. Supp  1, 9-10 n 3 (D D C  1997); *Martini v. Fed  Nat'l Mtg Ass'n*, 977 F  Supp  482, 485 n 2 (D D C  1997); *Park v  Howard University*. 881 F  Supp  653. 654 (D D C  1995)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,                )
                                       )
                    Plaintiff,         )
                                       )    04 C 2907
          v.                           )
                                       )    Judge Shadur
PAUL HENDLEY,                          )
                                       )
                    Defendant.         )

EXHIBIT
G

## AFFIDAVIT OF JON LOEVY

          I, Jon Loevy, under penalties of perjury as provided by
law, depose and state as follows:

### Background

          1.   Affiant graduated from Columbia University Law
School in 1993, where he was a Senior Editor on the Columbia Law
Review.  Affiant was also a Kent Scholar (approximately top 1% of
the class) and the recipient of several awards for academic
distinction, including the Young B. Smith Prize for the student
with the top examination in torts and the Paul R. Hays Prize
given to the student with the top examination in civil procedure.

          2.   After graduating, Affiant completed a clerkship
for the Hon. Milton I. Shadur of the Northern District of
Illinois in 1994.

          3.   Thereafter, Affiant worked as an associate in the
litigation department at Sidley & Austin in Chicago for almost
two years.

          4.   After leaving Sidley & Austin, Affiant built a
successful civil rights law practice as a solo practitioner.
Thereafter, Affiant and his wife, Danielle Loevy, and father,

Arthur Loevy, formed Loevy & Loevy. The primary practice areas of the firm (which presently has 12 lawyers and another starting after the bar exam) include, among others, Section 1983 civil rights, employment discrimination, and other litigation.

### Affiant's Trial Experience

5. As lead counsel, Affiant has won more than $50 million in jury verdicts. Many, if not most, of his civil rights clients were unsympathetic from a jury perspective, and the vast majority of these trials were long-shots. Over one stretch, Affiant won ten jury trials in a row.

6. For example, Affiant was lead trial counsel in Regalado v. Chicago, 96 C 3634, a police brutality case in which the jury awarded a $28 million verdict, believed to be the largest jury verdict against the City of Chicago in the history of the City. The case was subsequently settled.

7. Affiant was also lead trial counsel in Manning v. United States, 02 C 372, a five-week jury trial before Judge Kennelly in 2004-05 which resulted in an unprecedented $6.5 million judgment against two FBI agents for framing the Plaintiff and causing 14 years of wrongful imprisonment.

8. Affiant was also lead counsel in Gordon v. United Airlines, 98 C 1378, a civil rights employment case tried before Judge Leinenweber in August 2002 defended by Mayer Brown Rowe & Mawe. After summary judgment in favor of the Defendant was reversed on appeal to the Seventh Circuit, Plaintiff prevailed after a one week trial in the amount of $200,000.

9.     Affiant was also lead counsel in <u>Waits v. City of
Chicago</u>, 00 C 4010, a police brutality abuse before Judge Hibbler
tried over more than one week in October 2002 which resulted in a
verdict of $15,000 in compensatory damages and $2,000,000 in
punitive damages.   The abuse (slaps and a knee to the groin while
Plaintiff was handcuffed) was precipitated when the Plaintiff
sprayed a police officer with his water bottle.

10.     Affiant was also lead counsel in <u>Smith v. Urbana
et al.</u>, 01 C 2209, a police brutality case before Judge Baker in
the Central District of Illinois in March 2003 which resulted in
a jury verdict in the amount of $373,000.   The case was very
difficult because the Plaintiff was drunk, involved in a domestic
disturbance, and was an African American with an all white jury.
Also, the only four eyewitnesses were police officers.

11.     Affiant was also lead counsel in <u>Garcia v. City of
Chicago</u>, 01 C 8945, a police brutality case before Judge
Holderman.   After a two-week in April 2002, Plaintiff was awarded
$1,000,000 in compensatory damages.   Plaintiff proceeded on an
difficult-to-prove theory that the City of Chicago was liable for
a beating by an off-duty police officer because the City's system
for disciplining police brutality was so broken that it actually
encouraged abuses.

12.     Affiant was also lead counsel in <u>Hamilton v.
Chicago</u>, 00 L 7993, a police shooting wrongful death  case
pending in the circuit court of Cook County.   On August 7, 2003,
the jury returned a verdict in the amount of $1,500,000.   The
case was very difficult to win because the Plaintiff was present

3

during a gang fight in Cabrini Green, and we had to persuade the jury to believe the account of two gang members over the accounts of the Chicago police officers, and that a gun had been planted.

13.    Affiant was also lead counsel in McGreal v. Village of Alsip, 98 C 3958, a First Amendment retaliation case in which Judge Norgle had initially granted summary judgment on the grounds that there was no evidence to support the Plaintiff's position.  After Affiant successfully argued an appeal, the jury trial proceeded in 2004.  At the close of Plaintiff's case, the case settled for $900,000 notwithstanding the lack of any hard damages (the Plaintiff had not been fired).

14.    Affiant was also lead trial counsel in Robinson v. Chicago, 00 L 7993, a case arising out of a police shooting in housing complex in Harvey for which the police claimed that the Plaintiff was a pointing a gun at the police.  After a victory at the first trial was reversed because of an inconsistent verdict, we won again at a second trial, resulting in a $275,000 jury award based on our theory that the police had planted the gun.

15.    Affiant was also lead trial counsel in Kunz v. City of Chicago, 02 C 372, a one week jury trial before Judge Zagel in 2005 which resulted in a $275,000 judgment against a Chicago Police Officer ($250,000 of which was punitive damages) for excessive force.  The case was made more difficult by the fact that there were seven police witnesses denying any abuse, and the fact that the Plaintiff had led the police on a high-speed chase while on heroin.

4

16. Affiant was also lead counsel in <u>Ware v. City of Chicago</u>, tried before Judge Lefkow in February 2007. The case was difficult because four police officers testified that Plaintiff had pointed a gun at them, and we alleged the gun later recovered from the car had been planted. After the jury found for Plaintiff on the liability phase, the City agreed to pay $5.25 million to resolve the case.

17. Affiant was also lead trial counsel in <u>Smith v. Chicago</u>, 01 C 4473, before Judge Castillo involving an off-duty police officer terrorizing her neighbor. The case was settled favorably shortly before closing argument.

18. Affiant was also lead trial counsel in <u>Johnson v. Popp</u>, 97 C 2230 before Judge Leinenweber, resulting in a jury verdict in excess of $100,000 (reduced by the Court to $65,000) arising out of an improper search and seizure.

19. Affiant has also won several smaller trials in state court, including <u>Burkes v. Ward</u>, 95 L 16299, and <u>Wade v. Stenson</u>, (law division).

**Affiant's Appellate Success**

20. Affiant has won six out of the last seven cases he argued in the Seventh Circuit, a difficult feat for civil rights cases. These include:

a. <u>Gordon v. United Airlines</u>, 246 F.3d 878 (7th Cir. 2001) (successfully reversing summary judgment in an employment discrimination case, United's petition for rehearing *en banc* denied);

b.   <u>Mohammed v. City of Madison</u>, 423 F.3d 763 (7th Cir. 2005) (successfully reversing summary judgment in an excessive force death case, petition for rehearing *en banc* denied);

c.   <u>Strong v. David</u>, 297 F.3d 646 (7th Cir. 2002) (successfully reversing judgment against a prisoner in a PLRA case);

d.   <u>McGreal v. Ostrov</u>, 368 F.3d 657 (7th Cir. 2005) (successfully reversing summary judgment in first amendment case);

e.   <u>Haywood v. Chicago</u>, 378 F.3d 714 (7th Cir. 2004) (successfully reversing summary judgment in case involving novel civil rights issue);

f.   <u>Manning v. United States</u>, 355 F.3d 1028 (7th Cir. 2004) (successfully defeating United States' qualified immunity appeal).

g.   <u>See</u> <u>also</u> <u>Jarecki v. Romeoville</u>, Illinois Appellate Court, 3rd District, Case No. 99-815 (successfully reversing dismissal of civil rights claim, Romeoville's petition for *certiorari* denied).

**Publications & Speaking**

21.   Last year, Affiant was invited to author an article about police brutality in the ABA's prestigious *Litigation* quarterly.  The article was published in the Winter 2006/07 edition.  Affiant was also asked to write an article in DuPage Bar Journal on Section 1983 litigation; the article was published in October 2004.

6

22. Affiant was also invited to speak at the National Lawyers' Guild's (NLG) National Police Accountability Project (NPAP) Conference in Austin, Texas in the Fall of 2006 on the topic of "How to Win Big Jury Awards in Police Abuse Cases." Affiant presented on that topic to more than 50 police abuse lawyers from around the United States.

## Affiant's Firm

23. Affiant started Loevy & Loevy out of his apartment ten years ago. Since that time, the firm has grown to employ 12 full-time lawyers, with another to start after the bar exam, as well as a support staff of four. Given its size, the law firm now spends more than $1 million/year in operating expenses.

24. Affiant's law firm is consistently willing to represent clients who no other civil rights firms will represent because the cases are either too challenging, or because there are not a lot of economic damages. Instead of just looking at the size of the compensable injuries, Affiant and his firm take cases where justice demands it. The firm also devotes hundreds of hours per year to *pro bono* cases, primarily post-conviction work.

## Billing Rate Data

25. Affiant has become familiar with the billing rates which are usual and customary for civil rights cases which generally range from $225 to $550/hr. These rates are based on the fact that these cases tend to be difficult to win, and thus require substantial expenditures of time and money without any guarantee of recouping the investment. Affiant's firm has

7

frequently invested substantial amounts of time and money in particular cases and ended up recovering absolutely nothing for the effort. In Affiant's experience, the vast majority of civil rights plaintiffs are unsuccessful at trial.

26. In Gordon v. United Airlines, 98 C 1378, a civil rights employment case tried in the Northern District of Illinois this past Summer, the defense counsel were paid by their client in the amounts of $345/hour, $425/hour, and $500/hour for their trial time. The defense attorney who earned $345/hour is also the same year out of school as Affiant.

27. In addition to his successes, Affiant has been counsel for unsuccessful cases as well. In Evans v. City of Chicago, 04 C 3570, for example, Affiant's law firm obtained an unfavorable jury verdict after investing thousands of hours of attorney time and more than $140,000 in out-of-pocket cash developing and trying the case. Leinen v. Elgin, 98 C 8225, and Young v. Aurora, No. 99 C 7137, is other example where Affiant invested substantial time and money yet recovered nothing for his firm following an unfavorable verdict.

28. In the above-captioned Dominquez case, Affiant's firm advanced more than $65,000 in costs out of the firm's cash reserves, all with the very real possibility of losing everything.

29. Affiant has reviewed the attached billing records; they are a fair and accurate depiction of the time Affiant spent working on this case and are reasonable in terms of time spent per task.

8

Further Affiant Sayeth Not.

_____
Jon Loevy
4/1/07

```
              IN THE UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,            )
                                   )
              Plaintiff,           )
                                   )    04 C 2907
          v.                       )
                                   )    Judge Shadur
PAUL HENDLEY,                      )
                                   )
              Defendant.           )
```

## AFFIDAVIT OF ARTHUR LOEVY

I, Arthur Loevy, under penalties of perjury as provided by law, depose and state as follows:

1. Affiant graduated from University of Michigan Law School in 1963 and was admitted to the Illinois bar in January 1964.

2. From 1964 to the present, Affiant has been an attorney in good standing, licensed to practice law in the State of Illinois.

3. After graduating law school in 1963, Affiant practiced labor law until 1970, when he became an elected officer of a trade union, the Amalgamated Clothing and Textile Workers Union ("ACTWU"). Affiant proceeded to serve in various elected capacities for trade unions, including Executive Vice President of ACTWU, Secretary-Treasurer of ACTWU, and, most recently, International Secretary-Treasurer of Union of Needle-Trades Industrial and Textile Employees ("U.N.I.T.E."). Affiant has also served as a member of the Executive Committee of the Amalgamated Bank of New York, as well as President and CEO of various Taft-Hartley insurance and trust funds.

EXHIBIT

H

4.     Since January 1, 1997, Affiant has resumed the practice of law in the State of Illinois on a full-time basis. Affiant has practiced law full-time without interruption since that time.

5.     In or about 1998, Affiant joined his son in the law firm of Loevy & Loevy, which specializes in 42 U.S.C. 1983 civil rights law. In the last three years Affiant has appeared in dozens of cases, and has served as trial counsel in multiple cases in the Northern District of Illinois. Affiant has served as co-counsel on many successful trials in federal court, including Regalado v. Chicago, 96 C 3634 (resulting in a $28 million jury verdict before Judge Shadur in police brutality case); Gordon v. United Airlines, 98 C 1378 (an employment discrimination case which went to trial before Judge Leinenweber and resulted in a favorable verdict in the amount of $200,000); Waits v. City of Chicago, 98 C 1378 (a difficult to prove Section 1983 police abuse case which went to trial before Judge Hibbler and resulted in a favorable verdict in the amount of $15,000 plus $2 million in punitive damages); Smith v. Urbana et al., 01 C 2209 (police brutality case before Judge Baker in the Central District of Illinois in March 2003 which resulted in a jury verdict in the amount of $373,000). Affiant was lead counsel in the successful defense at trial of Litvak v. Kagan Home for the Blind, 00 M1 222 (Cook County) tried in the Law Division.

B.     Affiant has received numerous awards in the course of his career, among them the 1986 Man of the Year Award of the Illinois Council of Latin American Advancement, the 1991 and 1992

2

Man of the Year Award of the A. Philip Randolph Institute of Chicago and Detroit respectively, and the 1993 Norman Thomas Award of the Debs Day Foundation. Affiant was also the 1991 recipient of Histadrut's "National Humanitarian Award", and he received the "Spirit of Life" award from the City of Hope in 1990.

1.     As an attorney with nearly forty years of experience in the realm of labor and employment law, Affiant has become familiar with the billing rates which are usual and customary in the civil rights field. These rates are based on the fact that these cases tend to be difficult to win, and thus require substantial expenditures of a firm's time and money without any guarantee of recouping the investment.

2.     Affiant's present billing rate is $450/hour. Based on his knowledge of the field of civil rights, labor and employment law, Affiant believes this rate to be very reasonable for work of this nature.

3.     Affiant has reviewed the attached billing records; they are a fair and accurate depiction of the time Affiant spent working on this case and are reasonable in terms of time spent per task.

FURTHER AFFIANT SAYETH NOT

_____
Arthur Loevy

3

## DECLARATION OF MICHAEL KANOVITZ

I, Michael Kanovitz, under penalties of perjury as provided by law, depose and state as follows:

### Background

1.      I graduated *cum laude* from the Cornell Law School in June 1994.

2.      I spent the first three years of my career practicing general and commercial litigation in a large Kentucky law firm named Stites & Harbison.  After three years, I left Stites & Harbison and chose to begin representing plaintiffs.  After one year as a solo practitioner, I accepted an associate attorney position in Washington, D.C. with a boutique law firm then known as Mehri, Malkin, & Ross.  While there, I started the firm's practice area in consumer protection class actions and whistleblower cases under the False Claims Act.  I worked there until September of 2001.   Since then, I have been a partner with the law firm of Loevy & Loevy.

3.      My practice areas at the firm (which presently has twelve attorneys) include, among others, Section 1983 civil rights litigation, class actions, whistleblower protection, and federal False Claims Act litigation.

### Civil Rights Accomplishments

4.      I have served as trial counsel for civil rights plaintiffs who have prevailed in a number of cases, including Waits v. Chicago, 00 C 4010 (N.D. Ill.) (jury verdict for plaintiff, over $2 million); Kunz v. City of Chicago, 01-C-1753 (N.D. Ill.) (same, portions of case still pending in trial court);  Lopez v City of Chicago, 01-1823 (N.D. Ill) (directed verdict for plaintiff granted on appeal, currently pending in trial court on remand); Smith v. City of Chicago., 01 C 4473 (N.D. Ill.) (settled during trial); Garcia v. City of Chicago, 01-C-8945 (N.D. Ill.) (jury verdict for plaintiff, over $1 million);  Manning v. Dye, 02-C-372 (N.D. Ill.) (same,



**EXHIBIT**

I

$6.5 million) <u>Smith v. City of Urbana,</u> 01 C 2209 (C.D. Ill) (same, over $300,000);  <u>Hamilton v. City of Chicago,</u> 00 L 007993 (Cook County, Law Division) (same, $1.5 million).

5.     I have also served as lead counsel in numerous civil rights cases which I have litigated to very favorable settlements prior to trial.  Among the larger settlements are <u>Kittler v. City of Chicago,</u> 03-6992 (N.D. Ill.), a wrongful conviction case which settled in 2006 for $2 million; <u>Sornberger v. City of Knxoville,</u> 02-1224 (C.D. Ill), a two-plaintiff wrongful detention case that settled in 2006 for $1 million; <u>Hurst *et al.* v. Foster Wheeler Corporation *et al.*,</u> 01 C 3056 (N.D. Ill.), a multi-plaintiff Title VII and Section 1981 which settled in 2003 for $900,000; and <u>Holmes v. Sood,</u> 02-7226 (N.D. Ill.), a deliberate indifference case which settled in 2006 for a substantial undisclosed sum.

6.     I also am the co-author of the Eighth through Tenth Editions of *Constitutional Law*, a police practices textbook published by LEXIS/NEXIS, as well as a related study guide. This text is used in law enforcement academies and degree programs throughout the country.

7.     I have also prevailed on appeal as the lead attorney in several noteworthy civil rights cases in the Seventh Circuit.  I argued and briefed <u>Sornberger *et al.* v. City of Galesburg,</u> 04-3614 (7th Cir. 2006), obtaining a decision that recognizes a right to recover for *Miranda* violations and which held that the Fifth Amendment prevents the use of a compelled statement in pretrial proceedings including at arraignment (both of which were new propositions in the Seventh Circuit).  I also argued and briefed the appeal in <u>Lopez v. City of Chicago,</u> 05-1877 (7th Cir. 2006), obtaining a decision which clarified that the Fourth Amendment (and not the Fourteenth) governs all conditions of confinement claims for pre-arraignment detainees.

8.     I am also lead counsel on two large civil rights class action cases.  I argued successfully for class certification and have been appointed as class counsel for three classes in

2

the case of <u>Dunn *et al.* v. City of Chicago</u>, 04-6804 (N.D. Ill.), which challenges the length of detentions and conditions of confinement for thousands of detainees in the custody of the Chicago Police Department. I am also litigating the putative class action case of <u>Young *et al* v. County of Cook *et al*</u>, 06-552 (N.D. Ill.), a case challenging the strip search practices at that Cook County Jail. A ruling on class certification is expected in April 2007.

9.     In addition, I was invited by Attorney Judson Miner to serve as co-counsel with him in a certified civil rights class action entitled <u>Portis *et al.* v. City of Chicago</u>, 02-3139 (N.D. Ill.). I have been working with Mr. Miner on the case for almost two years.

10.    Beyond Illinois, I am serving as lead counsel for the plaintiff in the wrongful conviction case of <u>White v. McKinley et al.</u>, 05-203 (W.D. Mo.). I represented the plaintiff and survived summary judgment in the trial court. The case is currently on an interlocutory appeal in the Eighth Circuit where I am also the lead attorney.

11.    I was also appointed by the United States Court of Appeals for the Sixth Circuit to represent a prisoner challenging the constitutionality of the *in forma pauperis* provisions of the Prison Litigation Reform Act in <u>Hampton v. Hobbs</u>, 96-3524 (6th Cir.).

## Accomplishments in Other Areas of the Law

12.    I briefed and argued the appeal in the Eight Circuit of an opt-out from a class action settlement in which my client prevailed in <u>Snell v. Allianz Life Ins. Co.</u>, 02-1396, (8th Cir.). This case resulted in a settlement worth over $600,000. I was also the chief draftsperson in briefing on behalf of the prevailing plaintiff-appellant in <u>Mattei v. Mattei</u>, 96-5443 (6th Cir.). The case adopted an expansive, pro-plaintiff reading of the ERISA retaliation provision.

3

13.     I have also represented whistleblowers in numerous cases involving complex litigation under the federal False Claims Act. I served as the lead counsel in <u>United States *ex rel.* Karen Cerricola v. Ben Franklin Bank *et al.*</u> 99-C-6311 (N.D.Ill), and <u>United States *ex rel* Coppock v. Northrop Grumman Corporation</u>, 3-98CV2143-D (N.D. Tex.). <u>Cericola</u> resulted in a recovery of approximately $100,000 for the benefit of the United States, and both <u>Cericola</u> and <u>Coppock</u> resulted in substantial settlements of undisclosed sums for the whistleblowers. I also served as counsel in <u>Trice *et al.* v. Westinghouse Hanford Company et al.</u>, 2:96-00171 (E.D. Wa.), which was also litigated to an undisclosed substantial settlement.

14.     I am also lead class counsel in the currently-pending and certified consumer class action case of <u>Solon *et al.* v. Midwest Medical Records Association, Inc.</u>, 04-CH-7119 (Cook County). I have also served as counsel on a number of consumer protection class actions including: <u>Pierce *et al.* v. Apple Computer, Inc.</u> (Cal.), involving approximately 40,000 consumers, <u>Carson v. DaimlerChrysler, Inc.</u> (Tenn.), involving approximately 70,000 consumers. I was the chief architect of the litigation strategy in <u>Farkas *et al.* v. Bridgestone/Firestone, Inc.</u> (Ky.), which obtained a nationwide temporary restraining order entitling thousands of owners of recalled tires to receive refunds for tire replacement costs.

15.     I believe that my current billing rate should be $345 per hour given my experience, skills, and accomplishments, as well as the general prices in the legal market. The 2007 billing rates of attorneys practicing litigation in firms of essentially the same size as the firm I left in order to begin representing plaintiffs are much greater than the $345 per hour that I an requesting in this case. As the affidavit of Bradley S. Block shows, a 1992 University of Miami Law School graduate who has made partner bills McDonald's Corporation $505 per hour. An associate at the same firm who graduated from University of Michigan Law School in 1999

4

bills $440 per hour. I have been practicing five years longer than the associate who bills $440 per hour and only two years less than the partner who bills $505 per hour. I am a partner in my law firm and I graduated with equivalent honors from a well-regarded law school.

    I declare, under penalty of perjury, that the foregoing is true and correct. Executed this 30th day of March , 2007.

Michael Kanovitz

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,       )
                              )
          Plaintiff,          )
                              )
     v.                       )        No. 04 C 2907
                              )
PAUL HENDLEY and              )        JUDGE SHADUR
CITY OF WAUKEGAN              )
             Defendants.      )

**EXHIBIT J**

## AFFIDAVIT OF MARK REYES

I, Mark Reyes, under penalties of perjury as provided by law, depose and state as follows:

1.      I graduated from Cornell Law School in 1992 and was admitted to the Illinois bar in November 1992.

2.      Since 1992, I have been an attorney in good standing, licensed to practice law in the State of Illinois.

3.      I was also licensed to practice law in the State of New York in 2001 to 2005 and have been licensed to practice law in the State of Vermont from 2002 to present.

4.      After graduating law school in June 1992, my law practice has been diverse.

5.      From 1992 until 1995, I practiced family, contract, and civil rights law in a legal services office. As part of that work, I worked on a class action that challenged the policy of a local housing authority that restricted the rights of residents to associate with family and friends. I also was the lead counsel and argued before the United States Court of Appeals for Seventh Circuit in *Rodericus L. v. Waukegan School District*, which led to a ruling that articulated for the first time in this Circuit when the rights of students under the Individuals with Disabilities Education Act are first triggered.

6.      From 1995 until 2002, I worked for the City of Chicago, Department of Law practicing law in a variety of areas. I prosecuted building and general quasi-criminal ordinance code violations from 1995 until 1998 in the Cook County Circuit Court. From 1998 to 2002, I practiced labor and employment law. That work consisted of being lead counsel in dozens of

contested evidentiary hearings in arbitration, at the Illinois Labor Relations Board, and in the Cook County Circuit Court. I was promoted to Senior Counsel in 2000.

7.      From 2002 until 2004, I practiced disability law in Vermont, representing clients in state and federal court with respect to education, employment, and ADA cases. I argued before the Vermont Supreme Court in a case involving the roles of the legislative and executive branches of government related to the separation of powers doctrine under the Vermont Constitution.

8.      In May 2004, I began working in the law firm of Loevy & Loevy, which specializes in discrimination and 42 U.S.C. 1983 civil rights law. In the last three years I have appeared in dozens of cases in the United States District Court for the Northern District of Illinois. I have served as a trial counsel in three cases during that time. I was lead counsel in *McSorley v. Correctional Medical Services*, which proceeded to jury selection and opening statements, but was settled before evidence was taken. I was also the lead counsel in the discovery phases of this case and *Grant v. Blake*, which resulted in a jury verdict in favor of Plaintiff (against a Chicago Police officer) and was settled for $5.25 million. Defense counsel in *Grant v. Blake* stated to me that the focus of the discovery I conducted in that case was directly related to the success of that case at trial. I also argued (unsuccessfully) the case of *Askew v. City of Chicago* in the United States Court of Appeals for the Seventh Circuit.

9.      Based on my experience in handling a variety of cases in different jurisdictions, I have become familiar with the billing rates which are usual and customary in the civil rights field. These rates are based on the fact that these cases tend to be difficult to win, and thus require substantial expenditures of a firm's time and money without any guarantee of recouping the investment.

10.     I have reviewed the attached billing records; they are a fair and accurate depiction of the time I spent working on this case and are reasonable in terms of time spent per task.

Mark Reyes

2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,        )
                               )
              Plaintiff,       )
                               )    04 C 2907
        v.                     )
                               )    Judge Shadur
PAUL HENDLEY,                  )
                               )
              Defendant.       )

### AFFIDAVIT OF DANIELLE LOEVY

I, Danielle Loevy, under penalties of perjury as
provided by law, depose and state as follows:

1.   Affiant graduated with honors from Chicago Kent
College of Law in 1995.

2.   After graduating, Affiant worked for Pro Bono
Advocates as an advocate for victims of domestic abuse.  She then
worked for the employment law firm of Claudia Oney, P.C. from
1996 through 1997, and then Hubbard & O'Connor from 1997 to 1999.
Since that time, Affiant has been a partner in the firm of Loevy
& Loevy.

3.   The primary practice areas of the firm (which
presently has twelve attorneys with another scheduled to start in
the Fall) include, among others, Section 1983 civil rights,
employment discrimination, and commercial litigation.

4.   In addition to numerous favorable settlements for
her clients, Affiant has also served as one of the Plaintiffs'
trial attorneys in Regalado v. Chicago, 96 C 3634, which resulted
in a $28 million jury verdict in a police brutality case.



EXHIBIT
K

5.   In August 2002, Affiant was co-counsel at trial in Gordon v. United Airlines, 98 C 1378, a civil rights employment discrimination case which went to trial before Judge Leinenweber and resulted in a favorable verdict in the amount of $200,000.

6.   Affiant was also lead counsel in Waits v. City of Chicago, 00 C 4010, a police brutality case before Judge Hibbler tried over more than one week in 2002, which resulted in a verdict of $15,000 in compensatory damages and more than $2,000,000 in punitive damages.

7.   Affiant was also trial counsel in McGreal v. Village of Alsip, 98 C 3958, a trial before Judge Conlon in 2004. At the close of Plaintiff's case, the case settled for $900,000.

8.   Affiant was also trial counsel in Robinson v. Chicago, 00 L 7993, a case arising out of a police shooting in housing complex in Harvey for which the police claimed that the Plaintiff was a pointing a gun at the police. After a victory at the first trial was reversed because of an inconsistent verdict, we won again at a second trial, resulting in a $275,000 jury award based on our theory that the police had planted the gun.

9.   Affiant was also trial counsel in Ware v. City of Chicago, 04 C 2612, tried before Judge Lefkow in February 2007. After the jury found for Plaintiff on the liability phase, the City agreed to pay $5.25 million to resolve the case.

10.   Affiant has also argued a case before the Seventh Circuit (Achor v. Riverside Countryside Club) and several before the Illinois Appellate Courts.

11.   Affiant is the immediate Past-President of the Association for Conflict Resolution, Chicago-area chapter. From

2003 until 2005, she served as Vice-President of the Mediation Council of Illinois. Affiant is also a former co-chair of CBA/YLS Alternative Dispute Resolution committee, and is a certified trainer for Ford Motor Company in anti-discrimination and anti-harassment employment practices.

12. Affiant is a two-time winner of the "Trainer of the Year" award by the Center for Conflict Resolution in Chicago, an organization for which she assists as a mediator, lecturer and trainer.

13. Through her work with The Kaleidoscope Group ("KG"), Affiant designs and facilitates diversity workshops. She has led workshops for hundreds of employees, ranging from hourly workers to senior management.

14. Affiant is also a principal in Stone & Loevy, LLC, Professionals in Conflict Resolution, a boutique firm committed to helping organizations and individuals manage conflict and differences through mediation, facilitation, and consultation.

15. Affiant has reviewed the attached billing records; they are a fair and accurate depiction of the time Affiant spent working on this case and are reasonable in terms of time spent per task.

Danielle Loevy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,       )
                              )
            Plaintiff,        )
                              )
        v.                    )       No. 04 C 2907
                              )
PAUL HENDLEY and              )       JUDGE SHADUR
CITY OF WAUKEGAN              )
            Defendants.       )

### AFFIDAVIT OF JON ROSENBLATT

Affiant, Jon Rosenblatt, under penalties of perjury as provided by law, depose and state as follows:

1. I received by B.A. in History from Dartmouth College in 1994 and graduated from the University of Michigan Law School in 1999.

2. After graduating from law school, I worked from 1999 to 2001 at McDermott, Will & Emery, as a member of the litigation department. During that period, I primarily represented Phillip Morris, et al. in multiple arbitrations relating to the resolution of the Master Settlement Agreement between the tobacco industry and numerous state attorneys general.

3. Since joining Loevy & Loevy in 2001, I have served as counsel of record, including lead counsel, in 127 federal lawsuits, as well as approximately 10 state court and local Police & Fire Commission Board proceedings. In the last six



EXHIBIT
L

years, my practice has focused nearly exclusively on Section 1983 civil rights litigation.

    4. In September of 2003, when I had two years of experience in the civil rights arena and no trial or federal appellate experience, Judge Holderman set my reasonable hourly rate for work performed in Section 1983 civil rights actions at $220/hour. See Garcia v. City of Chicago, 01 C 8945, 2003 WL 22175620, at *3 (N.D. Ill. 2003). I have a strong background in the civil rights field, much of which was obtained following 2003, which I will outline below.

    5. I have served as lead counsel in dozens of federal civil rights actions. In addition to driving all aspects of pleadings and discovery, I have briefed and/or argued hundreds of motions in the Northern District of Illinois.

    6. I have served as lead counsel in briefing matters that have led to the issuance of dozens of opinions by federal district courts in both Illinois and Wisconsin, some of which have been published. Included among them are the following:

Kunz v. City of Chicago, 01 C 1753, 2007 WL 551577 (N.D. Ill. Feb. 15, 2007) (Zagel, J.): successful 2006 summary judgment motion against former Chicago Police Officer and his wife for fraudulent conveyance of assets to frustrate previously-entered Section 1983 excessive force jury verdict.

Abdullahi v. Madison, 04 C 4114, before Judge Crabb of the Eastern District of Wisconsin: unsuccessful defense of summary judgment motions in an Section 1983 excessive force/wrongful death action in Madison, Wisconsin. The district court's ruling was ultimately overturned by the Seventh Circuit.

2

Shaw v. Klinkhamer, 03 C 6748, 2005 WL 1651179 (N.D. Ill. July 1, 2005) (Lefkow, J.): successful motion to reconsider regarding district court's 2004 adverse summary judgment ruling in a Section 1983 civil rights action.

Pierce v. Ameritech, 02 C 6275, before Judge Anderson of the Northern District of Illinois: successful 2004 defense of employer's motion for summary judgment in a Title VII employment discrimination action.

Strong v. McVicar, 99-118-GPM, before Judge Miller of the Southern District of Illinois: successful 2003 defense of motion for summary judgment in a Section 1983 prisoner's civil rights action.

7. I have served as trial counsel, once as lead trial counsel, in four Section 1983 trials in the Northern and Southern Districts of Illinois and the Eastern District of Wisconsin, one of which lasted five weeks and resulted in a multi-million dollar jury verdict. I have been a member of the Northern District of Illinois federal trial bar since 2006.

8. Additionally, I have served as counsel of record or lead counsel in three oral arguments before both the Illinois and Seventh Circuit courts of appeal. My client prevailed in each of these instances, two of which overturned an adverse ruling by a lower court.

9. I have obtained numerous successful settlements for my clients in cases where I have served as lead counsel. While confidentiality clauses prevent me from disclosing full details regarding them, when combined the settlements in the following cases total over one million dollars: Shaw v. Klinkhamer, 03 C 6748; Guardino v. City of Chicago, 04 C 0045; Perez v. City of Elgin, 02 C 5487; Johnson v. Proviso Township

3

School District #209, 03 C 6066; and Saunders v. City of Harvey, 02 C 4581.

    10.  In 2006, I was asked by an attorney involved in the recent settlement of the Cook County Shakman litigation if I would accept the referral of potential claimants who may also have strong Section 1983 civil rights claims.  In making this inquiry, the attorney cited my knowledge and skill in this area of law.

    11.  I am lead counsel in numerous complex and wide-ranging Section 1983 civil rights actions in the Northern District of Illinois, including Howard v. City of Chicago, 03 C 8481 (concerning the torture and elicitation of false confessions by Commander John Burge and other Chicago police officers), McDonough v. City of Chicago, 06 C 2732 (regarding the retaliation suffered by a whistle-blower who was instrumental in exposing the Chicago Hired Truck scandal), and Holten v. City of Genoa, 02 C 50201 (regarding an unjustified shooting, and later attempt to conceal it, by members of the Genoa Police Department).

    12.  I have reviewed the attached billing records, which are a fair and accurate depiction of the time I spent working on this case and are reasonable in terms of time spent per task.

Jon Rosenblatt

4

Slip Copy, 2006 WL 3147695 (N.D.Ill.)

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
Antonio J. DELGADO and Javier M. Delgado, Plaintiffs,
v.
VILLAGE OF ROSEMONT, et al., Defendants.
No. 03 C 7050.
Oct. 31, 2006.

<u>David Alberto Cerda</u>, Sanchez & Daniels, Chicago, IL, for Plaintiffs.
<u>Joy Annette Roberts</u>, <u>John F. Donahue</u>, <u>Peter M. Rosenthal</u>, Rosenthal, Murphey, Coblentz, Janega, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

<u>LEINENWEBER</u>, J.
***1*** On September 21, 2005, a jury returned a verdict in favor of Plaintiffs Antonio Delgado and Javier Delgado (hereinafter "Plaintiffs") for $50,000 each on a claim under <u>42 U.S.C. § 1983</u> for excessive force stemming from an altercation outside the Rosemont Theater in Rosemont, Illinois. Plaintiffs had also brought a <u>§ 1983</u> *Monell* claim for indifference to the use of excessive force against the Village of Rosemont and various state law claims. Thereafter, the parties engaged in discussions to determine the amount of Plaintiffs' reasonable attorneys' fees and costs. The discussions broke down and Plaintiff filed the present Motion for Attorneys' Fees and Costs on August 16, 2006. Defendants did not respond; however, Defendants filed a Proposed Joint Statement Pursuant to Local Rule 54.3 on December 23, 2005 which catalogs Defendants' objections to Plaintiffs' asserted fees and costs. Plaintiffs' motion responds to these arguments. This Court treats the motion as fully briefed.

I. *LEGAL STANDARD*

In federal court, a prevailing party is entitled to recover "costs other than attorneys' fees ⋯ as of course." <u>FED. R. CIV. P. 54(d)</u>. Under <u>42 U.S.C. § 1988</u>, a prevailing party in a <u>§ 1983</u> action may also recover "a reasonable attorney's fee as part of the costs." A prevailing party is a party who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Id.* Defendants do not contest that Plaintiffs are prevailing parties.


EXHIBIT
M

II. *DISCUSSION*

A. Plaintiffs' Requested Attorneys' Fees

To determine a reasonable amount of attorneys' fees, courts use the "**lodestar**" method. *People Who Care v. Rockford Bd. Of Educ., 90 F.3d 1307, 1310 (7th Cir.1996)*. Under the "**lodestar**" method, the court determines the "**lodestar**" by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *People Who Care, 90 F.3d at 1310*. The award may then be adjusted. A district court, however, may not simply "eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court." *Id. at 1314.*

The movant bears the burden of documenting its fees to the satisfaction of the Court. *Tomazzoli v. Sheedy, 804 F.2d 93, 96 (7th Cir.1986)*. Once this burden is met, the fees are presumptively appropriate unless challenged by the opposing party. *Id.*

Using the "**lodestar**" method, Plaintiffs seek attorneys' fees of $444,830.00:

| Attorney/Paralegal | Hourly Rate | Hours | Total |
|---|---|---|---|
| David A. Cerda | $375.00 | 637.20 | $238,950.00 |
| John R. DeLeon | $425.00 | 168.20 | 71,485.00 |
| Peter V. Bustamante | $375.00 | 130.00 | 48,750.00 |
| David R. Breed (Paralegal) | $175.00 | 487.80 | 85,365.00 |
| Salvitore Castellano (Paralegal) | $100.00 | 2.80 | 280.00 |

B. Revised **Lodestar**

1. *Number of Hours*

a. *Reduction for Inefficient Prosecution*

**\*2** Defendants argue that the requested hours should be reduced because Plaintiffs inefficiently prosecuted this case. In determining a reasonable number of hours, a court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Defendants suggest that Plaintiffs directed discovery toward a "self-created conspiracy theory" that Defendants were withholding surveillance footage, deposed eleven individuals who did not testify at trial, and expended a great deal of time in a case that was essentially a simple assault and battery case. Plaintiffs argue that they made efficient use of attorneys' time and that they more leanly staffed the case than Defendants. Plaintiffs expended approximately half as many hours as Defendants; only one attorney attended depositions (whereas Defendants often used two attorneys) and handled discovery (whereas Defendants used seven attorneys). Plaintiffs' most expensive attorney, Mr. DeLeon, was used primarily at trial. The depositions contested by Defendants were reasonable as the Defendants had identified the deponents as fact witnesses. In general, this court believes that Plaintiffs efficiently litigated this case, especially in light of Defendants' greater expended hours. Thus, no reduction will be made on this ground alone.

Defendants also argue that a number of time entries reflect excessive time expended on certain tasks in light of Plaintiffs' attorneys' experience and the nature of the case; however, the Plaintiffs' penchant for block billing and vague entries makes such an inquiry virtually impossible. Where a court finds hours to be insufficiently documented, it may disallow those hours or reduce the entire fee award by a proportionate amount. *See Harper v. City of Chicago Heights,* 223 F.3d 593, 604-05. This concern will be addressed after a revised **lodestar** amount has been calculated.

b. *Attorneys' Non-Billable Tasks*

Defendants object to attorney time spent on non-billable tasks. A court should disallow hours spent on tasks "that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 553 (7th Cir.1999). Delegable tasks include drafting letters to court reporters, deliveries, and filings. *Heriaud v. Ryder Transp. Servs.,* 2006 WL 681041 at *3 (N.D.Ill. Mar.14, 2006); *Farfaras v. Citizens Bank & Trust Co. of Chicago,* 2005 WL 910739 at *3 (N.D.Ill. Apr.15, 2005). Plaintiffs have requested 4.30 hours for time Mr. Cerda spent on clerical tasks, including phone calls to Judge Leinenweber's clerk and filings (given Plaintiffs' penchant for block-billing, this is this Court's best estimate). As such, this court reduces Mr. Cerda's hours by 4.30 hours.

2006 WL 3147695

*c. Paralegals' Non-Billable Tasks*

Defendants also objects to hours billed by Plaintiffs' paralegals Mr. Breed and Mr. Castellano. First, Defendants argue that this court should not award Plaintiffs Mr. Breed's fees for certain tasks that were not sufficiently complex to justify their completion by a paralegal. To award paralegal fees, a court must determine "the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *Spegon,* 175 F.3d at 553 (quoting *People Who Care,* 90 F.3d at 1315). A court should disallow time spent on "clerical" or "secretarial" tasks. *Id.* Courts have found organizing file folders, preparing document, copying documents, assembling filings, electronically filing documents, sending materials, docketing or "logging" case events into an internal case tracking system, and telephoning court reporters to be clerical. *See id.; Francis v. Snyder,* 2006 WL 1236052 at *4 (N.D.Ill. May 4, 2006). In contrast, factual investigation, conducting legal research, summarizing depositions, checking citations, compiling statistical and financial data, preparing court documents, serving process, and discussing the case with attorneys are sufficiently complex. *People Who Care,* 90 F.3d at 1315; *Holland v. Barnhart,* 2004 WL 419871 at *2 (N.D.Ill. Feb.3, 2004).

**\*3** Many of Mr. Breed's hours were devoted to "selecting and analyzing information for the case database" which Plaintiffs assert "requires an understanding of the issues and facts of the case." These tasks, however, are billed as follows: "review scan and code documents and build summation database," "work on database," "re-build database," "update database with pleadings correspondence and documents," and "add documents into database." Despite Plaintiffs' protestations to the contrary, these tasks sound like ordinary maintenance of a database. One court recently allowed paralegal fees for entering information into a database; however, that court noted "it appears ⋯ that Mr. Eslinger reviewed files when he 'organized' them. Making notes during review of significant information is properly charged as attorney time, and it should be no less so if the notes are made electronically in a database." *Bamber v. Elkhart Cmty. Sch.,* 2005 WL 957331 at *6 (N.D.Ind. Mar.28, 2005). The descriptions of Mr. Breed's work do not suggest that he was doing anything akin to "making notes"; this Court finds this task to be essentially clerical and will not award fees for it. Plaintiffs' invoice for services indicates that Mr. Breed spent approximately 106.80 hours maintaining the database, and his hours will be reduced accordingly.

Additionally, Defendant objects to other hours billed by Mr. Breed for other undoubtedly clerical tasks, including phone calls with clerks, burning CDs, filing documents, mailings, and deliveries. Plaintiffs' invoice for services indicates that Mr. Breed spent approximately 23.40 hours on such tasks, and this Court will thus further reduce his hours by 23.40 hours.

Next, Defendant objects to Mr. Castellano's hours. Plaintiffs claim that Mr. Castellano assisted Mr. DeLeon with discovery in this case. No billing entries indicate that Mr. Castellano worked on discovery issues. Instead, Mr. Castellano's work appears to be telephone calls to and from Mr. Cerda lasting six to twelve minutes (with one exception for written correspondence). No calls were followed by substantive tasks. Because this Court is concerned, but cannot be certain, that Mr. Castellano's work was primarily clerical, it will award Plaintiffs only half of his 2.80 hours billed, 1.40 hours. An equal reduction to Mr. Cerda's hours will be made for these calls.

*d. Mr. Bustamonte's Fees*

Defendants argue that Mr. Bustamante's fees of $48,750.00 be denied in their entirety as unnecessary because Javier Delgado already had an attorney, Mr. DeLeon. "Use of more than one lawyer is common in legal practice." *Bohen v. City of East Chicago,* 666 F.Supp. 154, 157 (N.D.Ind.1987). Courts have granted plaintiffs' requests for attorneys fees where more than one attorney worked a case or attended trial. *See, e.g., Kurowski v. Krajewski,* 848 F.2d 767 (7th Cir.1988); *Gatreaux v. Chicago Hous. Auth.,* 2005 WL 1910849 (N.D.Ill. Aug.9, 2005). As such, this Court awards fees to compensate Mr. Bustamante's work on this case.

### e. Hours in Preparation of Fee Petition

*4 Lastly, Defendants object to hours billed on the issue of fees. Time expended in preparation of a fee petition is compensable so long as the time spent is not disproportionate to that spent on the merits of the case. *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir.1988). Courts in the Seventh Circuit repeatedly have reduced the amount of time spent in preparation of the fee petition so that that amount is less than 10% (and often below 5%) of the total hours expended in prosecution. *See Ustrak*, 851 F.2d at 988 (8.3% ratio allowed, 25% ratio rejected); *Bamber*, 2005 WL 957331 at *9 (reducing amount of time spent on fee petition to 10 hours where 865 hours were spent litigating; 1.15%); *Calkins v. Grossinger City Autocorp, Inc.*, 2003 WL 297516 at *4 (N.D.Ill. Feb.12, 2003) (where total time spent litigating was 130 hours, 15.5 hours excessive (11.9%), 4.1 hours allowed (3.1%)). In this case, Plaintiffs expended a total of 77.50 hours on the issue of fees. Plaintiffs expended a total of 1,210.3 (allowable) hours litigating this case, a ratio of approximately 6.4%.

Although this ratio has previously been permitted, this Court believes that it is too high in this case. Here, Plaintiffs' attorneys spent 28.10 hours merely working on their invoice for services and costs and 24.60 hours "working on" a single fee petition (not even including research hours that most likely were related to that petition). The remaining hours were spent on telephone calls and conferences, drafting motions to extend, research, and reviewing Defendants responses and objections. Considering that Plaintiffs filed only two virtually identical motions for fees, wrote no reply brief, repeatedly delayed the fees process, and spent a mind-boggling 28.10 hours apparently compiling their invoice for services (a document still riddled with *clearly* clerical, non-billable tasks), this Court believes that the time spent was excessive. As such, the Court reduces the hours to 4% of the total hours spent litigating the merits of the case: 49 hours. The Court believes this figure is itself generous. Each attorneys' and paralegals' hours are reduced proportionately:

Mr. Cerda: 17.50 hour reduction

Mr. DeLeon: 1.30 hour reduction

Mr. Bustamonte: 3.90 hour reduction

Mr. Breed: 5.30 hour reduction

### 2. Hourly Rates

Defendants also object to the hourly rates sought by the Plaintiffs. Specifically, Defendants proposes that the attorneys be awarded an hourly rate of $300.00 per hour, whereas Plaintiffs assert that the proper rates are as follows: David A. Cerda-$375.00 per hour; John R. DeLeon-$425.00 per hour; and Peter V. Bustamante-$375.00 per hour. The parties do not dispute that this Court may award Plaintiffs current 2006 rates rather than past rates plus interest. *Mathur v. Bd. of Tr. of Southern Illinois Univ.*, 317 F.3d 738, 744-45 (7th Cir.2003).

This Court grants Plaintiffs Mr. Cerda's and Mr. Bustamonte's requested hourly rates. In support of its requested rates, Plaintiffs submitted affidavits from a plaintiffs' petition for fees in a 2003 civil rights case that attest that in 2003, hourly rates of $340-$350 and higher were reasonable for attorneys with experience comparable to Mr. Cerda and Mr. Bustamonte. Additionally, Mr. Cerda's affidavit indicates that he was paid at an hourly rate of $325.00 in 2000 and $350.00 in 2003 in the criminal cases which preceded this case. If $350.00 per hour was reasonable in 2003, then $375.00 per hour is reasonable in 2006. Defendants assert that $375.00 is an excessive rate based on two cases; in these cases, however, the parties either agreed that a lower rate was appropriate or the plaintiff requested a lower rate and the court noted that it appeared low. *See Oviedo v. Jones*, 2004 WL 1898662 (N.D.Ill. Aug.20, 2004); *Garcia v. City of Chicago*, 2003 WL 22175620 (N.D.Ill. Sept.19, 2003). As such, this Court will award fees for Mr. Cerda and Mr. Bustamante fees at an hourly rate of $375.00.

*5 This Court grants Plaintiffs their requested hourly rate for Mr. DeLeon. Mr. DeLeon has thirty years

of legal experience. Although the bulk of this experience is in criminal defense, this Court believes that his extensive courtroom experience would be of great benefit to his clients. The affidavit provided by Plaintiffs indicates that attorneys with comparable experience commanded hourly rates of $405.00-$550.00 in 2001 and 2002. As such, an hourly rate of $425.00 today seems reasonable.

Defendant, however, argues that Mr. DeLeon should be awarded a lower rate because he was not closely involved with pretrial motions or discovery and did not appear at the depositions or most court appearances. Defendants thus argue that because Plaintiffs efficiently tried this case by using an attorney with a lower billing rate to attend status hearings and write pretrial motions, another of Plaintiffs' attorneys' hourly rate should be reduced. In support of this contention, Defendant cites *Price v. Kramer*, 993 F.Supp. 1295, 1300 (C.D.Cal.1997). In *Price,* the California district court awarded an attorney a lesser hourly rate despite his extensive experience because the attorney made a small contribution to the successful prosecution of the case, whereas the lead attorney "performed most of the work." *Id.* Even if *Price* were binding on this Court, Defendant does *not* claim that Mr. DeLeon served only a limited role at trial. Defendants thus mistake the necessary thrust of an argument under *Price;* it matters not how many case-related court appearances an attorney made, but what that attorney contributed when he was on the clock for his client. Plaintiffs note that all of their attorneys helped present their case at trial. Absent any suggestion that Mr. DeLeon's trial contribution was limited, this Court grants Plaintiffs an hourly rate of $425.00 for Mr. DeLeon's work.

Defendants also object to the $175.00 hourly rate requested by Plaintiffs for Mr. Breed's work. Plaintiffs concede that $175.00 is at the high end of paralegals' rates, but argue that it is warranted based on Mr. Breed's Ph.D. (in "theology and science") and experience with computer technology. Defendants suggest a rate of $90.00. Plaintiffs' affidavit indicates that paralegals' rates ranged from $100.00 to $260.00 in 2002 and 2003. For 2005-2006, the Laffey matrix used in Washington, D.C. suggests $115.00 per hour for a paralegal. While $175.00 is within this range, this Court believes that it is high considering that Plaintiffs' justification is wobbly: Mr. Breed's Ph.D. is in a field completely unrelated to his work on this case and this Court struck his database maintenance as clerical. Defendants' suggested $90.00 rate, however, is extremely low-lower than even the lowest rate cited in Plaintiffs' affidavit for 2002. As such, this Court will award Mr. Breed an hourly rate of $125.00 for his non-clerical work.

### 3. Revised **Lodestar**

The revised **lodestar** for Plaintiffs' attorneys' fees is:

| Attorney/Paralegal | Hourly Rate | Hours | Total |
|---|---|---|---|
| David A. Cerda | $375.00 | 614.00 | $230,250.00 |
| John R. DeLeon | $425.00 | 166.90 | 70,932.50 |
| Peter V. Bustamante | $375.00 | 126.10 | 47,287.50 |
| David R. Breed (Paralegal) | $125.00 | 352.30 | 44,037.50 |
| Salvitore Castellano (Paralegal) | $100.00 | 1.4 | 140.00 |
| TOTAL | | | $392,647.50 |

### C. Partial Success Reduction

*6 Defendants next request that this court reduce the fees it awards because Plaintiffs were only partially successful. Defendants seek a 75% reduction in hours.

Where a plaintiff has partially prevailed, a court may adjust lower the awarded attorneys' fees.

*Hensley*, 461 U.S. at 434-435. District courts must ask first whether the plaintiff failed to prevail on unrelated claims and second whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.* at 434.

Where a plaintiff fails to prevail on a claim that is based on different facts and legal theories than those he prevailed upon, the attorney's work will be unrelated to his work on the claim prevailed upon-and should not be deemed "expended in pursuit of the ultimate result achieved." *Id.* at 435. This Court cannot award fees expended in those circumstances. *Id.* Defendants contest the fees related to the malicious prosecution and *Monell* claims. The malicious prosecution claim was dismissed by this Court before trial. The Seventh Circuit has held that excessive force and battery claims are not related to malicious prosecution claims (which requires proof that the officers lacked probable cause). *See Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir.1987). Additionally, Defendants argue that Plaintiffs should not be awarded fees for time spent in pursuing the *Monell* claim against the Village of Rosemont because that claim required discovery of evidence not relevant or not otherwise admissible if it had not been maintained. To prevail on a *Monell* claim, a plaintiff must establish that a policy or custom, attributable to municipal policymakers, was the moving force behind a constitutional deprivation. *Concealed Carry, Inc. v. City of Chicago*, 2006 WL 2860975 at *11 (N.D.Ill. Sept.28, 2006). This Court believes that the *Monell* claim is not "distinctly different" from the central § 1983 claim against the individual defendants as both arise from the same incident and involve proof of some of the same facts. As such, Plaintiffs requested hours will be reduced only by the number of hours expended purely toward the malicious prosecution case, 4.50 hours.

Next, this Court must consider whether a plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434. Defendants here argue that Plaintiffs' fee request should be reduced by 75% due to Plaintiffs' limited success and a number of other relevant factors. Plaintiffs assert that they prevailed against the *primary* defendants and that they were awarded $100,000. Under *Hensley*, a district court ought to award an attorney a full compensatory fee where the plaintiff has obtained an excellent result (even if the plaintiff did not prevail on every contention raised). *Id.* at 435. Where, however, "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended ··· times a reasonable hourly rate may be an excessive amount." *Id.* Where an excessive amount has been reached, a district court "may simply reduce the award to account for the limited success." *Id.* at 436. A purely mathematical approach whereby the court compares the total number of issues prevailed upon to those not prevailed upon has been rejected. *Id.* at 435.

*7 In this case, Plaintiffs were awarded $50,000.00 each despite requesting a combined total of over $1.5 million. Although much of the requested damages were punitive, the jury awarded Plaintiffs only 12.5% of the requested compensatory damages (Plaintiffs together requested $1,250,000.00 in compensatory damages). Only three claims went to the jury: the § 1983 claim against the individual defendants, the state law battery claim, and the state law intentional infliction of emotional distress claim. Plaintiffs received damages only on the § 1983 claim, and even there, only against Defendants Jimenez and Minevich. Plaintiffs, however, seek a total of $444,830.00 in attorneys' fees. This appears excessive.

Additionally, Defendants argue that many of Plaintiffs' attorneys' time entries are not sufficiently documented. A petition for fees must set forth a sufficient description of the type of work performed. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir.1992). Where a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or reduce the proposed fee by a reasonable percentage. *Harper*, 233 F.3d 593 at 605. A court should not require any more than the level of detail paying clients find satisfactory. *In re Synthroid Marketing Litigation*, 264 F.3d 712, 722 (7th Cir.2001). Specifically, Defendants complain about "block-billing" and vagueness as to particular tasks' nature, subject matter, or necessity. The time entries Plaintiffs have submitted provide little detail and repeatedly block-bill. While Plaintiffs argue that their billing is satisfactory, this court has had no end of trouble attempting to deny Plaintiffs' requested attorneys' fees for clerical tasks due to the attorneys' and paralegals' penchant for block-billing. This Court was unable to ascertain what hours to attribute to the malicious prosecution claim and had to adopt the figure provided by Plaintiffs in their brief. Additionally, the repeated failure of the attorneys and paralegals to indicate what telephone calls and research concerned, even in the most general of

terms, has made it impossible for this Court to evaluate whether these fees were reasonably necessary as already noted. As such, this Court is prepared to make a proportionate reduction of the fees for insufficient description.

Defendants requested a 75% reduction, however, appears excessive. Courts vary greatly in how much they will reduce excessive **lodestars**. In *Estate of Borst v. O'Brien*, 979 F.2d 511, 516 (7th Cir.1982) a court reduced its revised **lodestar** by 40% because the jury awarded the plaintiff less than 1% of the damages sought. In *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 583 (7th Cir.1996) a district court reduced the award by 10% where the successful and unsuccessful claims were intertwined and thus time spent on the unsuccessful claims could not be ascertained. Because Plaintiffs' claims were interrelated (with the exception of the malicious prosecution claim) and thus could not be disallowed, Plaintiffs were awarded only a very small amount of the damages sought, and Plaintiffs submitted vague and block-billed time entries, this Court will reduce the revised **lodestar** amount by 35%.

*8 After this reduction, the total amount awarded to Plaintiffs in attorney fees is as follows:

| Attorney/Paralegal | Hourly Rate | Hours | Total |
|---|---|---|---|
| David A. Cerda | $375.00 | 609.00 | $228,375.00 |
| John R. DeLeon | $425.00 | 166.90 | 70,932.50 |
| Peter V. Bustamante | $375.00 | 126.10 | 47,287.50 |
| David R. Breed (Paralegal) | $125.00 | 352.30 | 44,037.50 |
| Salvitore Castellano (Paralegal) | $100.00 | 1.4 | 140.00 |
| TOTAL | | | $390,772.50 |
| TOTAL Reduced by 35%: | | | $254,002.12 |

### D. Costs

#### 1. Plaintiffs' Requested Costs

Unless a court directs otherwise, a prevailing party should be awarded costs. *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2005 WL 293512 at *2 (N.D.Ill. Feb.8, 2005) (quoting Fed.R.Civ.P. 54(d)(1)). A district court has broad discretion in determining "whether and to what extent prevailing parties may be awarded costs." *Weeks v. Samsung Heavy Indus.*, 126 F.3d 926, 945 (7th Cir.1997). The losing party bears the burden of affirmatively showing that costs are not appropriate. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir.2005). Defendants do not dispute that the Plaintiffs were a prevailing party. Plaintiffs request $24,411.22 in costs.

#### 2. Depositions

Defendants object to $4,756.28 in costs for eleven depositions undertaken because Plaintiffs believed Defendants had conspired to cover up their unlawful actions by purposely destroying the surveillance tapes from *outside* Rosemont Theater. In fact, there is no video surveillance outside Rosemont Theater and Plaintiffs' requests for these tapes were sent after the time frame for routine destruction of the tapes. Plaintiffs claim that the depositions were of defendant witnesses to the incident and others with knowledge of the incident, and that Defendants had identified the deponents as possible fact witnesses in discovery. Courts have allowed attorneys' fees and costs for depositions of deponents who did not ultimately testify at trial as long as taking the depositions was reasonable at the time. *Pawell v. Metro. Pier and Exposition Auth.*, 2005 WL 1902116 (N.D.Ill. Mar.4, 2005). The

deponents had been identified by Defendants as fact witnesses; Plaintiffs reasonably desired to gather this information during discovery. These costs are allowed.

### 3. Costs for Videotaping Depositions

Defendants also object to the $5,808.40 in costs for videotaping depositions because the depositions were taken within six months of trial absent any indication that Defendants' employees would not be available at trial. Courts in this circuit will not award costs for videotaping depositions where a transcript was also purchased. _Barber v. Ruth,_ 7 F.3d 636, 645 (7th Cir.1993); _Solon v. Kaplan,_ 2004 WL 1672909 at *2 (N.D.Ill. Jul.23, 2004). Plaintiffs have requested costs for both the transcripts and the videotaping; therefore, the costs for the videotaping are disallowed. This court thereby reduces the Plaintiffs' cost award by $5,808.40, to $18,602.82.

### III. _CONCLUSION_

**\*9** For the reasons stated herein, this Court grants, in part, Plaintiffs' motion for attorneys' fees and expenses. Plaintiffs' are awarded the sum $254,002.12 in attorneys' fees and $18,602.82 in costs. The total amount awarded to Plaintiffs is $272,604.84.

IT IS SO ORDERED.

N.D.Ill.,2006.
Delgado v. Village of Rosemont
Slip Copy, 2006 WL 3147695 (N.D.Ill.)

Motions, Pleadings and Filings (Back to top)

• 2005 WL 2869832 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Directed Verdict (Sep. 15, 2005) ⬚ Original Image of this Document (PDF)
• 2004 WL 2175686 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Motion for Sanctions (Jul. 9, 2004) ⬚ Original Image of this Document (PDF)
• 2004 WL 2175679 (Trial Pleading) Defendants' Answer to Plaintiffs' Complaint Including Defendants' Answer to Counts II. V. VI. VII (Apr. 23, 2004) ⬚ Original Image of this Document (PDF)
• 2004 WL 2175674 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Defendants' Combined Motion to Dismiss and Motion for Summary Judgment (Jan. 9, 2004) ⬚ Original Image of this Document (PDF)
• 2004 WL 2175670 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Responses to Defendants' Combined Motion to Dismiss and Motion for Summary Judgment (Jan. 2, 2004) ⬚ Original Image of this Document (PDF)
• 2003 WL 23801438 (Trial Pleading) Defendants' Answer to Count I of Plaintiffs' Complaint (Dec. 2, 2003) ⬚ Original Image of this Document (PDF)
• 2003 WL 23801424 (Trial Pleading) Complaint (Oct. 6, 2003) ⬚ Original Image of this Document (PDF)
• 1:03cv07050 (Docket) (Oct. 6, 2003)
END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTONIO J. DELGADO and )
JAVIER M. DELGADO, )
                     )      No. 03 C 7050
                     )
         Plaintiffs, )      Judge Harry D. Leinenweber
                     )
vs.                     )      Presiding Magistrate Judge Morton Denlow
                     )
VILLAGE OF ROSEMONT, et al., )
                     )
         Defendants. )

## AFFIDAVIT OF DAVID A. CERDA

     I, David A. Cerda, hereby certify, under penalties as provided by law, pursuant to 28

U.S.C. § 1746, that the following statements are true and correct:

     1.     I am a graduate of Williams College (B.A. 1983) and the University of Michigan

Law School (J.D. 1990). I am a former Associate and Contributing Editor of the *Michigan Law*

*Review* (1988-90).

     2.     Before law school, I worked as a Cook County Adult Probation Officer from

1984-87. I supervised felony probationers and prepared probation violation petitions. I presented

scores probation violation petitions in open court and gained courtroom experience as a result.

     3.     I have been licensed to practice law in the State of Illinois and Northern District of

Illinois since 1990. I formerly worked for the Chicago law firms of Barack, Ferrazzano,

Kirschbaum & Perlman; Altheimer & Gray; and Sanchez & Daniels.

     4.     In 1996, I started my own law firm working primarily in Section 1983 civil rights

litigation. My work is almost exclusively billed on a contingency fee basis. My billing rate has

EXHIBIT
N
tabbies

not yet been adjudicated.

5.    Beginning in September of 2000, I was paid at the rate of $325.00 as a criminal defense attorney in the case of *People v. Duran*. The case is staffed by two other criminal defense attorneys. I also represent plaintiffs in *Duran v. Town of Cicero*, 01 C 6858, filed in the Northern District of Illinois.

6.    In 2001, I settled a Section 1983 case entitled *Escobar v. Foster*, 98 C 4812, for $108,500.00. Ms. Escobar claimed that a defendant Chicago Police Officer directed a profanity at her and falsely arrested her and her boyfriend for disorderly conduct. The charges were dropped at the first criminal court hearing and no physical damages were alleged. The special damages were $600.00. The case is notable because it is believed to be a record settlement amount for its type (the City of Chicago paid $98,500 while Foster himself paid $10,000). The City initially made a Rule 68 Offer of Judgment in the amount of $10,000.00.

7.    This record settlement for its type in *Escobar* was achieved because the undersigned successfully compelled the City of Chicago to produce all of defendants' Complaint Registered files and to produce the original copy of these files for inspection at police headquarters. The latter achievement was unprecedented and brought about because the undersigned showed that the City of Chicago routinely fails to produce complete copies of C.R. files. The settlement was also brought about in part because of the technology used by the undersigned to litigate the case.

8.    In 2001, the undersigned successfully tried an employment discrimination case, *Menchaca v. American Medical Response, Inc.*, 98 C 0547. In *Menchaca*, plaintiffs billed approximately 1,425 hours to the defendants more than 2,000 hours. The undersigned conducted

discovery and pretrial proceedings alone against two large law firms, and was assisted by additional counsel only at trial. Defendants' top offer was a Rule 68 Offer of Judgment in the amount of $50,000, including attorneys fees. The jury returned a verdict of over $550,000. The case settled before the trial court decided the issue of plaintiffs' sizable attorneys' fees.

9.    In 2003, the undersigned successfully tried a Section 1983 case in the U.S. District Court for Puerto Rico, *Torres–Rivera v. Espada–Cruz*, 99-1972. The case was defended by counsel for the Government of Puerto Rico and a private law firm. The undersigned was lead trial counsel along with one attorney. The defendants were represented by four attorneys at trial. Defendants' top offer was $50,000, including attorneys' fees. The jury returned a verdict in the amount of $340,000. Attorneys' fees and costs are being litigated. The defendants in that case have thus far refused to disclose the number of hours billed to the case. The undersigned estimates that plaintiffs billed 50% of what the defendants billed during the pretrial and trial phase in that case.

10.    In this litigation, I have been paid more than $40,000 by Dr. Antonio Delgado at a rate of $350.00 for the related criminal litigation which is not being billed on a contingency fee basis.

11.    The vast majority of my time in this case, as in the cases cited above, was logged contemporaneously using an electronic stop watch which is part of a billing program maintained on my laptop computer. Since the vast majority of my time was logged using a stopwatch, my time is extremely accurate. In a few instances my time was not logged contemporaneously and was later inputted into my computer programs. I have reviewed the bills, rounded the bills up and down in tenths of an hour, and cut time. The amount of time contained in the bill is very

Page 3 of 4

accurate.

12.    This case included more than 35 depositions. Using the computer software program Summation, I was able to index and use depositions in a fraction of the time used by my counterparts. The transcripts in this case were all coded for issue. Later, reports were generated and inputted into direct and cross examination outlines in a fraction of the time ordinarily invested for these tasks.   Summation, Case Map, Sanction, and Amicus were some of the computer software programs used to litigate the instant action.

13.    Plaintiffs in this case were represented largely by the undersigned acting alone. Defendants were represented by two law firms, and often represented by more than one attorney at hearings and at depositions.

14.    My billing rate reflects the fact the undersigned uses technology to leverage his time and effectiveness, and has routinely billed hundreds of hours less than his opposing counsel despite the fact that his clients carry the burden of proof and persuasion in difficult cases.

15.    My bill and billable rate are reasonable given the complexities of the case.

_____
David A. Cerda

Dated: _____

# Select A Case

**This person is a party in 232 cases.**

| | | |
|---|---|---|
| 1:00-cv-00001 | Medina v. Chgo Cty of, et al | filed 01/03/00 closed 04/05/01 |
| 1:00-cv-00264 | Montalvo, et al v. Batavia, Cty of, et al | filed 01/14/00 closed 03/21/01 |
| 1:00-cv-00536 | Johnson v. Chgo, Cty of, et al | filed 01/27/00 closed 08/16/01 |
| 1:00-cv-00537 | White v. Chgo Cty of, et al | filed 01/27/00 closed 01/30/01 |
| 1:00-cv-00538 | Jackson v. Cty of Chgo, et al | filed 01/27/00 closed 10/23/01 |
| 1:00-cv-00828 | Stone v. Amer Fed of Govt, et al | filed 02/10/00 closed 04/09/01 |
| 1:00-cv-00860 | Pasulka v. Sykes | filed 02/11/00 closed 07/15/02 |
| 1:00-cv-02619 | Kies v. Aurora, Cty of, et al | filed 05/01/00 closed 05/25/00 |
| 1:00-cv-02677 | Kies, et al v. Aurora Cty of, et al | filed 05/03/00 closed 10/18/01 |
| 1:00-cv-02954 | McCure v. Claxton, et al | filed 05/16/00 closed 08/16/01 |
| 1:00-cv-03261 | Johnson v. Cty of Gurnee, et al | filed 05/30/00 closed 02/15/01 |
| 1:00-cv-05869 | Spencer v. Chgo, Cty of, et al | filed 09/25/00 closed 01/15/02 |
| 1:00-cv-06145 | Nelson, et al v. Harvey Cty of, et al | filed 10/05/00 closed 11/26/01 |
| 1:00-cv-06737 | Malik v. Aurora, Cty of, et al | filed 10/27/00 closed 09/19/01 |
| 1:00-cv-06886 | Kindle v. Harvey, Cty of, et al | filed 11/03/00 closed 07/24/02 |
| 1:00-cv-07029 | Samuels v. Chgo, City of, et al | filed 11/08/00 closed 05/16/01 |

**EXHIBIT**

O

| 1:00-cv-07351 | Gordon v. United Airlines Inc | filed 11/21/00 | closed 08/20/02 |
| 1:00-cv-07981 | Wilke v. Heart to Heart | filed 12/19/00 | closed 04/26/01 |
| 1:01-cv-00559 | Mendez v. Cicero, Twn of, et al | filed 01/26/01 | closed 12/28/04 |
| 1:01-cv-01183 | LeDay v. Cty of Chgo, et al | filed 02/21/01 | closed 01/22/02 |
| 1:01-cv-01753 | Kunz v. Chgo, Cty of, et al | filed 03/12/01 | closed 08/25/05 |
| 1:01-cv-01823 | Lopez v. Cty of Chgo, et al | filed 03/15/01 | |
| 1:01-cv-03059 | Panthera v. Oak Lawn, Vlg of, et al | filed 04/27/01 | closed 05/28/03 |
| 1:01-cv-03872 | Haywood, et al v. Chgo, Cty of, et al | filed 05/25/01 | closed 11/16/05 |
| 1:01-cv-03924 | Antonopolous v. Krainik | filed 05/25/01 | closed 11/08/01 |
| 1:01-cv-04010 | Waits v. Chgo, Cty of, et al | filed 05/31/01 | closed 07/03/03 |
| 1:01-cv-04433 | Cervantes, et al v. Metro Enforcement, et al | filed 06/12/01 | closed 08/12/02 |
| 1:01-cv-04540 | Sparks v. Chgo, Cty of, et al | filed 06/15/01 | closed 03/21/02 |
| 1:01-cv-05206 | Via, et al v. Chgo, Cty of, et al | filed 07/06/01 | closed 11/21/01 |
| 1:01-cv-06671 | Stobinske-Sawyer v. Vlg of Alsip, et al | filed 08/28/01 | closed 12/16/02 |
| 1:01-cv-06672 | Harding, et al v. Cty of Chgo, et al | filed 08/28/01 | closed 01/16/03 |
| 1:01-cv-08502 | Pantojas, et al v. Chgo, Cty of, et al | filed 11/05/01 | closed 11/18/02 |
| 1:01-cv-08945 | Garcia v. Chgo, Cty of, et al | filed 11/20/01 | closed 11/03/03 |
| 1:01-cv-08947 | Jackson, et al v. Chgo, Cty of, et al | filed 11/20/01 | closed 03/13/03 |

| | | | |
|---|---|---|---|
| 1:01-cv-08948 | Mayfield, et al v. Chgo, Cty of, et al | filed 11/20/01 | closed 07/09/02 |
| 1:01-cv-09555 | Zapata v. Summit, Vlg of, et al | filed 12/14/01 | closed 10/04/02 |
| 1:02-cv-00118 | Smith, et al v. New Rogers Pontiac, et al | filed 01/04/02 | closed 12/10/02 |
| 1:02-cv-00193 | Lee v. Chgo, Cty of, et al | filed 01/08/02 | closed 08/20/03 |
| 1:02-cv-00231 | Johnson v. Riverdale Vlg of, et al | filed 01/09/02 | closed 01/20/05 |
| 1:02-cv-00246 | Sornberger, et al v. 1st MW Bancorp Inc, et al | filed 01/10/02 | closed 05/30/02 |
| 1:02-cv-00372 | Manning, et al v. Dye, et al | filed 01/16/02 | closed 09/28/06 |
| 1:02-cv-01811 | Hasecic v. Chgo Cty of, et al | filed 03/11/02 | closed 10/09/02 |
| 1:02-cv-02438 | Fox, et al v. Tortoriello, et al | filed 04/04/02 | closed 07/03/03 |
| 1:02-cv-03403 | Anderson, et al v. H & M Intl Trans Inc | filed 05/10/02 | closed 01/21/03 |
| 1:02-cv-03473 | McClinton v. Chgo, Cty of, et al | filed 05/14/02 | closed 04/09/03 |
| 1:02-cv-03474 | Damato, et al v. Chgo, Cty of, et al | filed 05/14/02 | closed 02/27/03 |
| 1:02-cv-03475 | Woolridge, et al v. Chgo, Cty of, et al | filed 05/14/02 | closed 01/02/03 |
| 1:02-cv-03771 | Zurita v. Cty of Chgo, et al | filed 05/28/02 | closed 09/15/03 |
| 1:02-cv-04405 | Graham v. Niles Vlg of, et al | filed 06/19/02 | closed 12/15/03 |
| 1:02-cv-04581 | Saunders v. Harvey, Cty of, et al | filed 06/26/02 | closed 05/05/04 |
| 1:02-cv-04917 | Briggs v. Hargrett, et al | filed 10/09/02 | closed 02/28/06 |
| 1:02-cv-05130 | Moore, et al v. Chgo Cty of, et al | filed 07/19/02 | |

| 1:02-cv-05413 | Green, et al v. Chgo, Cty of, et al | filed 07/31/02 | closed 05/15/03 |
| 1:02-cv-05487 | Perez v. Elgin PD, et al | filed 08/08/02 | closed 12/15/03 |
| 1:02-cv-05546 | Howard, et al v. Chgo, Cty of, et al | filed 08/06/02 | closed 09/02/03 |
| 1:02-cv-06275 | Pierce v. Ameritech Corp | filed 09/03/02 | closed 10/27/06 |
| 1:02-cv-07266 | Holmes v. Ward, et al | filed 10/09/02 | closed 08/31/06 |
| 1:02-cv-07339 | Hernandez, et al v. Chgo Cty of, et al | filed 10/11/02 | closed 09/24/03 |
| 1:02-cv-07955 | Daval v. Chgo, Cty of, et al | filed 11/04/02 | closed 01/23/04 |
| 1:02-cv-07956 | Thomas v. Waukegan, Cty of, et al | filed 11/04/02 | closed 01/21/03 |
| 1:02-cv-07957 | Valle, et al v. Chgo, Cty of, et al | filed 11/04/02 | closed 04/29/03 |
| 1:02-cv-08896 | Parker, et al v. Chgo, Cty of, et al | filed 12/09/02 | closed 07/31/03 |
| 1:02-cv-08899 | Collins v. Chgo, Cty of, et al | filed 12/09/02 | closed 06/17/03 |
| 1:02-cv-09534 | Kidd v. Cty of Chgo, et al | filed 12/31/02 | closed 12/08/03 |
| 1:03-cv-00816 | Martin, et al v. Chgo, Cty of, et al | filed 02/04/03 | closed 09/24/03 |
| 1:03-cv-01464 | Yates v. Chgo, Cty of, et al | filed 02/27/03 | closed 12/12/03 |
| 1:03-cv-01486 | Majors v. Kruesi, et al | filed 02/27/03 | closed 09/10/03 |
| 1:03-cv-01636 | Callahan v. Waukegan, Cty of, et al | filed 03/05/03 | closed 03/25/05 |
| 1:03-cv-01754 | Becerra, et al v. Cicero, Twn of, et al | filed 03/11/03 | closed 04/14/04 |
| 1:03-cv-02908 | Freeman, et al v. Doe, et al | filed 04/30/03 | |

1:03-cv-03674   Pointer v. Chgo, Cty of, et al          filed 05/29/03   closed 11/26/03

1:03-cv-03676   Claeys v. Brookfield, Vlg of, et al     filed 05/29/03   closed 04/26/05

1:03-cv-03678   Hobley v. Burge, et al                  filed 05/29/03

1:03-cv-03884   Martin v. Dolton, Cty of, et al         filed 06/06/03   closed 05/04/04

1:03-cv-03929   Middleton v. Ramsey, et al              filed 06/09/03   closed 06/16/04

1:03-cv-04388   Williams, et al v. Chgo Cty of, et al   filed 06/24/03

1:03-cv-05077   Williams v. Nine Fifty Ltd, et al       filed 07/22/03   closed 01/06/05

1:03-cv-05853   Scarlett v. Family Dollar Inc, et al    filed 08/21/03   closed 03/22/04

1:03-cv-06066   Johnson v. Proviso Twn Dist 209, et al  filed 08/28/03   closed 06/02/04

1:03-cv-06295   Givens v. Hunter, et al                 filed 09/08/03   closed 02/10/05

1:03-cv-06296   Galloway v. Cty of Chgo, et al          filed 09/08/03   closed 01/12/04

1:03-cv-06642   Stenson v. Cicero, Twn of, et al        filed 09/18/03   closed 08/30/05

1:03-cv-06748   Shaw v. Klinkhamer, et al               filed 09/24/03   closed 12/22/05

1:03-cv-06992   Kittler v. Cty of Chgo, et al           filed 10/02/03   closed 01/11/06

1:03-cv-07092   Gayles, et al v. Cty of Chgo, et al     filed 10/07/03   closed 05/07/04

1:03-cv-07341   Garcia v. Vlg of Melrose Park, et al    filed 10/16/03   closed 07/08/04

1:03-cv-07414   Bell v. Cicero, Town of, et al          filed 10/20/03   closed 04/05/04

1:03-cv-07416   Cooperwood, et al v. Chgo, Cty of, et al  filed 10/20/03   closed 05/19/04

1:03-cv-07571  Talbert v. Cty of Chgo, et al                    filed 10/24/03  closed 03/21/07

1:03-cv-07711  King, et al v. Cty of Chgo, et al                filed 10/30/03  closed 03/17/04

1:03-cv-08481  Howard v. Cty of Chgo, et al                     filed 11/24/03

1:03-cv-08980  Conner, et al v. Chgo, Cty of, et al             filed 12/12/03  closed 11/09/04

1:03-cv-09142  Butler v. Chgo, Cty of, et al                    filed 12/18/03  closed 07/15/04

1:03-cv-09250  Jenkins v. Maywood Vlg of, et al                 filed 12/22/03  closed 03/09/04

1:03-cv-09411  Shedrich v. Williams, et al                      filed 12/30/03  closed 01/06/06

1:04-cv-00045  Guardino, et al v. City of Chicago, et al        filed 01/05/04  closed 11/21/05

1:04-cv-00325  Bitton, et al v. City of Chgo, et al             filed 01/16/04  closed 03/02/05

1:04-cv-00797  Doles, et al v. Harvey Cty of, et al             filed 01/30/04  closed 01/13/06

1:04-cv-00919  Abron v. Chgo Cty of, et al                      filed 02/06/04  closed 07/07/04

1:04-cv-01014  Mayfield, et al v. City of Chicago, et al        filed 02/09/04  closed 09/07/04

1:04-cv-01041  Kasper v. Chgo, Cty of, et al                    filed 02/10/04  closed 12/17/04

1:04-cv-01077  Wilson v. Murphy, et al                          filed 07/01/04  closed 12/30/04

1:04-cv-01529  Hill, et al v. Chgo Cty of, et al                filed 02/26/04  closed 03/03/05

1:04-cv-01530  Hooks v. Forest Park Vlg IL, et al               filed 02/26/04  closed 06/30/04

1:04-cv-02347  Renteria v. Chgo, Cty of, et al                  filed 03/31/04  closed 09/20/04

1:04-cv-02611  West, et al v. Chgo, Cty of, et al               filed 04/12/04  closed 09/27/04

1:04-cv-02612  Ware v. Chgo, Cty of, et al                     filed 04/12/04

1:04-cv-02613  Bernstein, et al v. Cty of Chgo, et al          filed 04/12/04   closed 08/04/04

1:04-cv-02727  Parker v. Chgo, Cty of, et al                   filed 04/15/04   closed 08/14/04

1:04-cv-02774  Soriano v. Cicero, Twn of, et al                filed 04/16/04   closed 02/14/05

1:04-cv-02834  Hamilton v. Chgo Cty of, et al                  filed 04/20/04   closed 05/02/05

1:04-cv-02840  Underwood v. Chgo, Cty of, et al                filed 04/20/04   closed 06/30/05

1:04-cv-02907  Dominguez v. Hendley, et al                     filed 04/23/04   closed 10/17/06

1:04-cv-02997  Cox v. Chgo, Cty of, et al                      filed 04/27/04   closed 12/09/04

1:04-cv-03046  Blakely, et al v. Chgo, Cty of, et al           filed 04/28/04   closed 07/12/04

1:04-cv-03327  Graves v. Chgo Cty of, et al                    filed 05/11/04   closed 06/24/05

1:04-cv-03375  Hines v. Chgo Cty of, et al                     filed 05/13/04   closed 05/27/05

1:04-cv-03570  Evans, et al v. Chgo, Cty of, et al             filed 05/24/04   closed 08/08/06

1:04-cv-03663  Sellers v. Bragg, et al                         filed 05/26/04   closed 12/12/05

1:04-cv-03742  Simmons, et al v. Chgo, Cty of, et al           filed 06/01/04

1:04-cv-03863  Askew v. Chgo Cty of, et al                     filed 06/07/04   closed 04/06/05

1:04-cv-03915  Hampton, et al v. City of Chicago, et al        filed 06/09/04   closed 12/17/04

1:04-cv-03916  Thompson v. Chgo, Cty of, et al                 filed 06/09/04   closed 08/15/05

1:04-cv-04339  Rashid v. Chgo Cty of, et al                    filed 06/29/04   closed 07/19/05

| | | |
|---|---|---|
| 1:04-cv-04635 | Ryan v. Walker, et al | filed 07/15/04 closed 01/31/06 |
| 1:04-cv-04663 | Finwall v. Chgo, Cty of, et al | filed 07/15/04 |
| 1:04-cv-04721 | Patrick v. Chgo Cty of, et al | filed 07/19/04 closed 03/09/05 |
| 1:04-cv-04722 | Watkins v. Chgo, Cty of, et al | filed 07/19/04 closed 01/14/05 |
| 1:04-cv-04956 | Swygert v. Chgo, Cty of, et al | filed 07/28/04 closed 12/23/04 |
| 1:04-cv-05356 | Harmon, et al v. Cty of Chgo, et al | filed 08/13/04 closed 06/10/05 |
| 1:04-cv-05770 | Qadri v. Evanston Cty of, et al | filed 09/02/04 closed 12/21/04 |
| 1:04-cv-05882 | McSorley v. Del Re, et al | filed 09/08/04 closed 01/25/06 |
| 1:04-cv-05972 | Manning v. USA | filed 09/13/04 closed 11/05/04 |
| 1:04-cv-06352 | McGee v. Chgo, Cty of, et al | filed 09/30/04 |
| 1:04-cv-06371 | Booker v. Cty of Chgo, et al | filed 10/01/04 |
| 1:04-cv-06804 | Dunn, et al v. City of Chicago | filed 10/21/04 |
| 1:04-cv-06868 | Defibaugh, et al v. City of Chicago, et al | filed 10/26/04 |
| 1:04-cv-06963 | Allen v. City of Chicago, et al | filed 10/28/04 closed 10/27/05 |
| 1:04-cv-06964 | Chapman, et al v. Chgo Cty of, et al | filed 10/28/04 closed 05/31/05 |
| 1:04-cv-07156 | McLaughlin, et al v. Chgo, Cty of, et al | filed 11/04/04 closed 09/29/05 |
| 1:04-cv-07157 | Moniewski v. River Grove, Vlg of, et al | filed 11/04/04 closed 04/04/05 |
| 1:04-cv-07421 | Pressoir v. Pinnacle Corp | filed 11/16/04 closed 07/05/05 |

| | | | |
|---|---|---|---|
| 1:04-cv-07423 | Ortiz, et al v. Chgo, Cty of, et al | filed 11/16/04 | |
| 1:04-cv-07981 | Nix v. City of Chicago, et al | filed 12/09/04 | closed 09/08/05 |
| 1:05-cv-00040 | Darko v. Cty of Chgo, et al | filed 01/04/05 | closed 06/08/05 |
| 1:05-cv-00041 | Scott v. Cty of Chgo, et al | filed 01/04/05 | closed 03/25/05 |
| 1:05-cv-00317 | Ramirez et al v. City of Chicago et al | filed 01/18/05 | |
| 1:05-cv-00366 | Roden-Kacmarek et al v. Village of Lyons et al | filed 01/20/05 | closed 01/11/07 |
| 1:05-cv-00473 | E et al v. Sperlik et al | filed 01/26/05 | |
| 1:05-cv-00628 | Deborah K et al v. Sperlik et al | filed 02/02/05 | closed 04/03/06 |
| 1:05-cv-00811 | B. et al v. Sperlik et al | filed 02/09/05 | closed 04/03/06 |
| 1:05-cv-01014 | Johnson v. City Of Chicago et al | filed 02/18/05 | closed 09/29/05 |
| 1:05-cv-01041 | A.S. v. Sperlik et al | filed 02/22/05 | closed 04/03/06 |
| 1:05-cv-01856 | Koranda v. City of Chicago et al | filed 03/31/05 | closed 08/02/05 |
| 1:05-cv-02117 | Dye v. Briley et al | filed 05/17/05 | closed 09/30/05 |
| 1:05-cv-02262 | Carter v. City of Chicago et al | filed 04/15/05 | closed 11/22/05 |
| 1:05-cv-02522 | Sloan v. City of Chicago et al | filed 04/27/05 | closed 01/20/06 |
| 1:05-cv-02591 | Hudson et al v. City of Chicago et al | filed 04/29/05 | closed 10/05/05 |
| 1:05-cv-02810 | Davis v. City Of Chicago et al | filed 05/10/05 | closed 08/22/05 |
| 1:05-cv-02812 | James v. City of Chicago Heights et al | filed 05/10/05 | closed 07/11/06 |

| | | |
|---|---|---|
| 1:05-cv-03229 | B. v. Sperlik et al | filed 05/31/05  closed 04/03/06 |
| 1:05-cv-03231 | Moore v. City Of Chicago et al | filed 05/31/05  closed 02/07/06 |
| 1:05-cv-03411 | Williams v. City Of Chicago et al | filed 06/09/05  closed 10/12/05 |
| 1:05-cv-03487 | Leaks et al v. City Of Chicago et al | filed 06/14/05  closed 03/16/06 |
| 1:05-cv-03614 | Darlington v. United States Of America et al | filed 06/21/05  closed 11/17/05 |
| 1:05-cv-03712 | Warfield et al v. City of Chicago et al | filed 06/24/05  closed 04/11/06 |
| 1:05-cv-03932 | Hicks et al v. City of Chicago et al | filed 07/06/05  closed 10/27/05 |
| 1:05-cv-04124 | Dawson v. City Of Harvey et al | filed 07/18/05 |
| 1:05-cv-04401 | Borsellino et al v. Goldman Sachs Group, Inc. | filed 08/01/05  closed 01/24/06 |
| 1:05-cv-04632 | Zubov v. Village of Villa Park et al | filed 08/12/05  closed 03/06/07 |
| 1:05-cv-04761 | Mansour v. City Of Chicago et al | filed 08/18/05  closed 08/16/06 |
| 1:05-cv-05466 | Ireland et al v. Village of Bellwood et al | filed 09/22/05  closed 09/05/06 |
| 1:05-cv-05940 | Arias v. Allegretti et al | filed 10/14/05 |
| 1:05-cv-06260 | Lucas v. City of Chicago et al | filed 10/31/05  closed 05/11/06 |
| 1:05-cv-06544 | Edmond et al v. City Of Chicago et al | filed 11/17/05 |
| 1:05-cv-06545 | Johnson v. City of Chicago et al | filed 11/17/05 |
| 1:05-cv-06745 | Coffie v. City of Chicago et al | filed 11/29/05 |
| 1:06-cv-00552 | Young et al v. County of Cook et al | filed 01/30/06 |

| 1:06-cv-00738 | Ragland v. City of Chicago et al | filed 02/08/06 | closed 10/05/06 |
| 1:06-cv-00785 | Martinez v. City of Chicago et al | filed 02/10/06 | closed 01/26/07 |
| 1:06-cv-00820 | Manning v. Quid et al | filed 02/14/06 | closed 08/17/06 |
| 1:06-cv-00864 | Brisco et al v. City of Chicago | filed 02/15/06 | closed 05/24/06 |
| 1:06-cv-00938 | Taylor v. Village of Phoenix et al | filed 02/21/06 | closed 04/11/06 |
| 1:06-cv-01415 | Pavilon v. City of Chicago et al | filed 03/15/06 | closed 02/20/07 |
| 1:06-cv-01567 | Williams v. City Of Chicago et al | filed 03/21/06 | |
| 1:06-cv-01838 | Horowitz v. Johnson et al | filed 04/03/06 | closed 12/07/06 |
| 1:06-cv-02117 | Rogers et al v. City of Chicago et al | filed 04/14/06 | |
| 1:06-cv-02284 | Harris v. NCO Financial Systems, Inc. | filed 04/24/06 | closed 08/08/06 |
| 1:06-cv-02732 | McDonough v. City Of Chicago et al | filed 05/16/06 | |
| 1:06-cv-02910 | McDermott v. City of Chicago | filed 05/25/06 | |
| 1:06-cv-03177 | Brown v. City of Chicago et al | filed 07/05/06 | closed 02/20/07 |
| 1:06-cv-03528 | Vetter et al v. Dozier et al | filed 06/29/06 | |
| 1:06-cv-04362 | Brisco v. City of Chicago et al | filed 08/11/06 | |
| 1:06-cv-05307 | Easley v. City of Chicago et al | filed 09/29/06 | |
| 1:06-cv-05572 | Burress v. City of Chicago et al | filed 10/13/06 | |
| 1:06-cv-05769 | Presi v. Kaupas et al | filed 10/24/06 | |

| | | |
|---|---|---|
| <u>1:06-cv-06111</u> | Petrovic v. City of Chicago et al | filed 11/08/06 |
| 1:06-cv-06252 | Lopez v. City Of Chicago et al | filed 11/15/06 |
| 1:06-cv-06342 | Gentry v. Village Of Bolingbrook et al | filed 11/20/06 |
| 1:06-cv-06772 | Hill v. City Of Chicago et al | filed 12/07/06 |
| <u>1:06-cv-06964</u> | Vance v. Rumsfeld | filed 12/18/06 |
| <u>1:07-cv-00203</u> | Centera v. City Of Chicago et al | filed 01/11/07 closed 03/19/07 |
| <u>1:07-cv-00204</u> | Bailey v. City Of Chicago | filed 01/11/07 |
| <u>1:07-cv-00406</u> | Martin v. City Of Chicago et al | filed 01/22/07 |
| <u>1:07-cv-00477</u> | N. v. City of Elgin et al | filed 01/25/07 |
| 1:07-cv-00648 | Welding v. City of Chicago et al | filed 02/02/07 |
| <u>1:07-cv-01015</u> | Guerrero et al v. Finnigan et al | filed 02/21/07 |
| <u>1:07-cv-01168</u> | Jackson v. City of Chicago et al | filed 02/28/07 |
| <u>1:07-cv-01207</u> | Irvin v. City of Chicago et al | filed 03/01/07 |
| 1:07-cv-01265 | Overly v. City of Chicago et al | filed 03/06/07 |
| 1:07-cv-01290 | Thayer v. Chiczewski et al | filed 03/07/07 |
| 1:07-cv-01406 | Lyttle v. Killackey et al | filed 03/13/07 |
| 1:07-cv-01751 | Montgomery et al v. City of Chicago et al | filed 03/29/07 |
| <u>1:96-cv-03634</u> | Regalado, et al v. Chgo, Cty of, et al | filed 06/14/96 closed 10/25/99 |

| | | | |
|---|---|---|---|
| 1:97-cv-08035 | Montano, et al v. Cty of Chgo, et al | filed 11/19/97 | closed 03/21/06 |
| 1:98-cv-00547 | Menchaca v. Amer Med Response IL, et al | filed 01/28/98 | closed 05/02/02 |
| 1:98-cv-03958 | McGreal v. Ostrov, et al | filed 06/26/98 | closed 10/01/04 |
| 1:98-cv-05232 | Hanania, et al v. Loren-Maltese, et al | filed 08/24/98 | closed 08/16/05 |
| 1:98-cv-05552 | Alvarez v. Unknown Police Ofc, et al | filed 09/04/98 | closed 02/28/07 |
| 1:98-cv-06714 | Ben Franklin Bk of v. Envoy Capital Corp, et al | filed 10/23/98 | closed 03/22/02 |
| 1:98-cv-07949 | Brown, et al v. Chgo, Cty of, et al | filed 12/11/98 | closed 03/20/07 |
| 1:98-cv-08224 | Peterson v. Household Fin Corp, et al | filed 12/22/98 | closed 11/16/99 |
| 1:98-cv-08225 | Leinen v. Elgin, Cty of, et al | filed 12/22/98 | closed 01/18/01 |
| 1:99-cv-03696 | Robinson v. Harvey, Cty of, et al | filed 06/03/99 | closed 07/30/02 |
| 1:99-cv-04774 | Johnson v. Household Fin Corp | filed 07/22/99 | closed 02/10/00 |
| 1:99-cv-06311 | Cericola, et al v. Ben Franklin Bk, et al | filed 09/24/99 | closed 03/10/04 |
| 1:99-cv-07187 | Young, et al v. Aurora Cty of, et al | filed 11/04/99 | closed 09/07/00 |
| 1:99-cv-07574 | Shekar v. Hoffman Est Vlg of, et al | filed 11/19/99 | closed 09/06/00 |
| 3:02-cv-50021 | Hamm v. Kishwaukee Auto, et al | filed 01/18/02 | closed 04/26/02 |
| 3:02-cv-50201 | Holton v. Cty of Genoa, et al | filed 05/22/02 | |
| 3:05-cv-50044 | Hallett v. Village of Richmond et al | filed 03/14/05 | |
| 3:94-cv-50202 | Reiter, et al v. Sears Roebuck And Co, et al | filed 07/05/94 | closed 04/21/99 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/02/2007 10:58:15 | | | |
| **PACER Login:** | ll0390 | **Client Code:** | |
| **Description:** | Search | **Search Criteria:** | Last Name: Loevy First Name: Arthur Type: aty |
| **Billable Pages:** | 7 | **Cost:** | 0 56 |

# LOEVY & LOEVY
## ATTORNEYS AT LAW

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
Amanda Antholt

312 N. May Street
Suite 100
Chicago, Illinois 60607

Danielle Loevy
Kurt Feuer
Russell Ainsworth
Mark Loevy-Reyes
Samantha Liskow

Telephone 312.243.5900
Facsimile 312.243.5902

Website www.loevy.com
E-mail loevylaw@loevy.com

October 20, 2006

*By Facsimile*
Michael Noonan
Noonan, Perillo & Polezani, Ltd.
25 North County Street
Waukegan, IL 60085

  *Re: Dominguez v. Hendley, Case No. 04 C 2907*

Dear Mr. Noonan:

  I write regarding the §1988 fee petition to be filed on Plaintiff's behalf.

  As you know, under the Local Rules of the Northern District of Illinois, fee litigation can sometimes take on a life of its own, creating additional expense and attorneys' fees for both sides.  In the hopes of avoiding potentially protracted fee litigation, we write to communicate an offer to resolve all of the fee and cost issues in the case.

  Specifically, Plaintiff would resolve his §1988 attorneys' fees claim in this case for $575,000, inclusive of all out of pocket costs.  This amount would cover all attorneys' fees and costs up through any filing of a notice of appeal.  An agreement along these lines would obviously be without prejudice to your client's right to appeal the jury's verdict; this offer obviously does not have anything to do resolution of the jury's verdict.

  We look forward to your client's response.  In the event we cannot reach a resolution on the fee issues, we should talk about a timetable for exchanging the Local Rule 54.3 materials.

  As always, thank you for your cooperation.

        Sincerely,

        Jon Loevy



EXHIBIT

P

# LOEVY & LOEVY
## ATTORNEYS AT LAW

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
Amanda Antholt

312 N. May Street
Suite 100
Chicago, Illinois 60607

Danielle Loevy
Kurt Feuer
Russell Ainsworth
Mark Loevy-Reyes
Samantha Liskow

Telephone 312.243.5900
Facsimile 312.243.5902

Website www.loevy.com
E-mail loevylaw@loevy.com

November 10, 2006

*By Facsimile*
Daniel P. Field
Scariano, Himes and Petrarca
209 West Madison
Waukegan, IL 60085

  *Re: Dominguez v. Hendley, Case No. 04 C 2907*

Dear Mr. Field:

  As we discussed on the phone, enclosed is the letter I previously sent to Mr. Noonan on October 20. Although I do not want to step on Mr. Noonan's toes, given the timetable set forth in the Local Rules, both sides will need to decide fairly quickly whether or not we are going to be litigating the fee issues.

  Accordingly, please pass along to your client that our offer is withdrawn if we do not hear back by the end of next week.

  As always, thank you for your cooperation.

        Sincerely,

        Jon Loevy

# LOEVY & LOEVY
## ATTORNEYS AT LAW

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
Amanda Antholt

312 N. May Street
Suite 100
Chicago, Illinois 60607

Danielle Loevy
Kurt Feuer
Russell Ainsworth
Mark Loevy-Reyes
Samantha Liskow

Telephone  312.243.5900
Facsimile   312.243.5902

Website  www.loevy.com
E-mail  loevylaw@loevy.com

November 20, 2006

*By Facsimile*
Daniel P. Field
Scariano, Himes and Petrarca
209 West Madison
Waukegan, IL 60085

  *Re:  Dominguez v. Hendley, Case No. 04 C 2907*

Dear Mr. Field:

  As we communicated to you last Monday, we had hoped to hear back by last week regarding the progress your client has made in securing a bond or a suitable alternative.  Please let us know where we stand.

  Also, on the issue of fees and costs, it is our understanding that our offer was rejected by your client.  Is your client interested in making a counter-offer?  If so, we would respond, and perhaps resolve that part of it without additional expenditure of attorneys' fees.

  If we don't speak before then, happy Thanksgiving.

    Sincerely,

    Jon Loevy

# LOEVY & LOEVY
## ATTORNEYS AT LAW

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
Amanda Antholt

312 N. May Street
Suite 100
Chicago, Illinois 60607

Danielle Loevy
Kurt Feuer
Russell Ainsworth
Mark Loevy-Reyes
Samantha Liskow

Telephone  312.243.5900
Facsimile   312.243.5902

Website  www.loevy.com
E-mail  loevylaw@loevy.com

January 9, 2007

*By First Class Mail*
Daniel P. Field
Scariano, Himes and Petrarca
209 West Madison
Waukegan, IL 60085

　　　*Re:  Dominguez v. Hendley, Case No. 04 C 2907*

Dear Mr. Field:

　　　Having heard nothing back in response to our repeated efforts to get a response to our demand to settle the attorneys' fees issue, we have gone ahead and spent the time compile our hours.  I enclose our timesheets with this letter.

　　　I am also enclosing a summary of the hours and rates claimed by Plaintiff's counsel.  They are based on the Judge Holderman's opinion regarding Loevy & Loevy's hourly rates in <u>Garcia v. City of Chicago</u>, Case No. 01-8945, 2003 WL 22175620 (N.D.Ill. Sept. 19, 2003), as adjusted for inflation.  Plaintiff also relies on the recent case of <u>Delgado v. Rosemont</u>, Case No. 03 C 7050, 2006 WL 3147695 (N.D.Ill. Oct. 31, 2006).

　　　We are still going over our records looking for more time, and we reserve the right to supplement.  We also intend to provide you additional support for our billing rates.

　　　In the meantime, we intend to file a motion with Judge Shadur asking to set a schedule for adjudication of Plaintiff's petition.  Please let me know when it would be convenient for your side to comply with your obligations under Local Rule 54.3.

　　　As always, thank you for your cooperation.

　　　　　　　　　　　　　　Sincerely,


　　　　　　　　　　　　　　Jon Loevy


Steven Pearson

# LOEVY & LOEVY
## ATTORNEYS AT LAW

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
Amanda Antholt

312 N. May Street
Suite 100
Chicago, Illinois 60607

Danielle Loevy
Kurt Feuer
Russell Ainsworth
Mark Loevy-Reyes
Samantha Liskow

Telephone 312.243.5900
Facsimile 312.243.5902

Website www.loevy.com
E-mail loevylaw@loevy.com

January 12, 2007

*By First Class Mail*
Daniel P. Field
Scariano, Himes and Petrarca
209 West Madison
Waukegan, IL 60085

        *Re: Dominguez v. Hendley, Case No. 04 C 2907*

Dear Mr. Field:

        I write to confirm our conversation this afternoon as follows.

        First, Plaintiff has agreed to delay initiation of the collection proceedings until one week from today unless we hear something back from your client that justifies putting it off further.

        Second, we discussed a schedule for the attorneys' fees. Here is a proposal consistent with the time line set forth in the Local Rule:

        Movant provided the materials required by LR 54(d)(1)-(4)    by January 9, 2007.

        Respondent to provide the materials required by LR 54(d)(5) by February 31, 2007.

        Parties to specify objections, if any, per LR 54(d)(5) by February 14, 2007.

        Joint Statement required by LR 54(e) to be prepared by February 21, 2007.

        Fee Motion to be filed by February 28, 2007.

        Please let me know if this works for you, and I will move to have it entered by the Court. As always, thank you for your cooperation.

                                Sincerely,

                                Jon Loevy

Steven Pearson

# LOEVY & LOEVY
## ATTORNEYS AT LAW

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
Amanda Antholt

312 N. May Street
Suite 100
Chicago, Illinois 60607

Danielle Loevy
Kurt Feuer
Russell Ainsworth
Mark Loevy-Reyes
Samantha Liskow

Telephone 312.243.5900
Facsimile 312.243.5902

Website www.loevy.com
E-mail loevylaw@loevy.com

January 19, 2007

*By First Class Mail*
Daniel P. Field
Scariano, Himes and Petrarca
209 West Madison
Waukegan, IL 60085

    *Re: Dominguez v. Hendley, Case No. 04 C 2907*

Dear Mr. Field:

    Thank you for your letter regarding the bond.

    Based on your representations, we will continue to hold off on initiating collection until the end of the month.

    As for the amount of security, it must cover the judgment, plus interest, plus attorneys' fees. Accordingly, Plaintiff would accept a bond or letter of credit in the amount of $9.5 million, although the interest is almost certainly going to exceed $10 million by the time the appeal is resolved.

    Finally, we have not heard back on my letter of January 12 regarding the time table for resolution of the fee issue. Please let me know if the dates look good, and I will have them entered by the Court.

    As always, thank you for your cooperation.

               Sincerely,

               Jon Loevy

Steven Pearson

# LOEVY & LOEVY
### ATTORNEYS AT LAW

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
Amanda Antholt

312 N. May Street
Suite 100
Chicago, Illinois 60607

Danielle Loevy
Kurt Feuer
Russell Ainsworth
Mark Loevy-Reyes
Samantha Liskow

Telephone 312.243.5900
Facsimile 312.243.5902

Website www.loevy.com
E-mail loevylaw@loevy.com

February 27, 2007

*By First Class Mail*
Daniel P. Field
Scariano, Himes and Petrarca
209 West Madison
Waukegan, IL 60085

    *Re: Dominguez v. Hendley, Case No. 04 C 2907*

Dear Mr. Field:

    It is now well past the date by which we had agreed you would
send over any billing records, materials, and/or objections upon which
you intend to rely in opposing our fee petition. We have not received
anything, nor any indication that anything is in fact forthcoming.

    Given the passage of time since the verdict last August, we do
intend to file a fee petition in three weeks, *i.e,* on March 21, 2006.
If you get us all of Defendants' counsels' billing records and Local
Rule 54.3 materials by that date, we will include them in our
submission.

    Finally, we enclose a copy of the affidavit relied upon by David
Cerda in support of his billing rate in the materials previously
provided.

                              Sincerely,



                              Jon Loevy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,     )
                                      )
         Plaintiff,             )
                                        )
            v.                  )      No. 04 C 2907
                                        )
PAUL HENDLEY and              )      JUDGE SHADUR
CITY OF WAUKEGAN           )
            Defendants.        )

## AFFIDAVIT OF ELLIE COTTER

I, Ellie Cotter, under penalties of perjury as provided by law, depose and state as follows:

1.      I graduated from the University of Wisconsin - Eau Claire with a Bachelors degree in English in December 2003.

2.      After graduating in December 2003, I advanced my English and grammatical skills through teaching English overseas for two years.

3.      I have been working at Loevy & Loevy as a paralegal/project assistant for one and a half years.

4.      While working at Loevy & Loevy I have been one of the lead paralegals on some of the firm's landmark cases. Each case involved extensive work through multi-tasking and aiding the attorneys with anything they needed throughout the case with quick turn-a-round rates for trial preparation and presentation. At different points while working on any case, I would be given projects in which I had to figure out how to achieve an end result in a timely manner.

5.      I was the lead paralegal on the Alejandro Dominguez case.

6.      I have prepared the attached billing records; they are a fair and accurate depiction of the time I spent working on this case and are reasonable in terms of time spent per task.

                                                    _____

                                                    Ellie Cotter



EXHIBIT
Q

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,   )
             )
   Plaintiff,     )
             )
   v.        )  No. 04 C 2907
             )
PAUL HENDLEY and    )  JUDGE SHADUR
CITY OF WAUKEGAN    )
     Defendants.  )

## AFFIDAVIT OF KATHLEEN RUBENSTEIN

I, Kathleen Rubenstein, under penalties of perjury as provided by law, depose and state as follows:

1. I graduated from the University of Chicago with a Bachelors of Arts in History in June 2006. I graduated with honors in History, general honors, and as a member of Phi Beta Kappa.

2. During the summer of 2004, I was employed as an investigator at the Public Defender Service for the District of Columbia. During the summer of 2005, I worked as an intern at the Texas Defender Service, where I worked on the death penalty retrial of Max Sofar. Both of these jobs included legal research and trial preparation work.

3. I have been working at Loevy & Loevy as a paralegal/project assistant for seven months.

4. I have prepared the attached billing records; they are a fair and accurate depiction of the time I spent working of this case and are reasonable in terms of time spent per task.

Kathleen Rubenstein
Kathleen Rubenstein

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,      )
     )
     Plaintiff,      )
     )
     v.      )      No. 04 C 2907
     )
PAUL HENDLEY and      )      JUDGE SHADUR
CITY OF WAUKEGAN      )
     Defendants.      )

## AFFIDAVIT OF JESSICA SAUVAGEAU

I, Jessica Sauvageau, under penalties of perjury as provided by law, depose and state as follows:

1. I graduated from the University of Wisconsin - Eau Claire with a Bachelors degree in Social Work, *cum laude*, in August 2003.

2. After graduating in August 2003, I worked as a program manager/independent living-skills manager with persons who suffered traumatic brain injuries.

3. I have been working at Loevy & Loevy as a paralegal/project assistant for two years.

4. While working at Loevy & Loevy I have been one of the lead paralegals on some of the firm's landmark cases. Each case involved extensive work through multi-tasking and aiding the attorneys with anything they needed throughout the case with quick turn-a-round rates for trial preparation and presentation. At different points while working on any case, I would be given projects in which I had to figure out how to achieve an end result in a timely manner.

5. I have prepared the attached billing records; they are a fair and accurate depiction of the time I spent working on this case and are reasonable in terms of time spent per task.

Jessica Sauvageau

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| S. ALEJANDRO DOMINGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 2907 |
| | ) | |
| PAUL HENDLEY and | ) | JUDGE SHADUR |
| CITY OF WAUKEGAN | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF ANDY THAYER

I, Andy Thayer, under penalties of perjury as provided by law, depose and state as follows:

1.     I graduated from Northwestern University with a Bachelors of Arts degree in History with a concentration in African Studies in June 1985.

2.     Before and since graduating from Northwestern, I have worked in a variety of positions as an administrative assistant, project assistant, office management and paralegal for a cumulative period of 25 years.

3.     I have been working at Loevy & Loevy for nearly 4 years.

4.     I have prepared the attached billing records; they are a fair and accurate depiction of the time I spent working on this case and are reasonable in terms of time spent per task.

_____
Andy Thayer